UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| DAVID GASSMAN, individually and on behalf of all others similarly situated,<br><br>v.<br><br>GUARDIAN CREDIT UNION,<br><br>Defendant. | Case No. 2:25-CV-00176<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT** |

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT


Amber C. Coisman (Wis. Bar. No. 1102371)
Melissa A. Siebert
Corey T. Hickman
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
T: (312) 474-4490
F: (312) 300-5645
acoisman@cozen.com
msiebert@cozen.com
chickman@cozen.com

*Counsel for Defendant,*
*Guardian Credit Union*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

FACTUAL ALLEGATIONS .............................................................................................. 3

ARGUMENT ................................................................................................................ 4

I. Plaintiff's Own Allegations Confirm That THE Alleged Pixels Did Not Track or Disclose any Personally Identifiable Information ........................................................... 4

II. Plaintiff Knowingly Asserts a Litany of Frivolous Claims ........................................... 8

a. Plaintiff's Invasion of Privacy – Disclosure of Private Facts Claim (Count III) Lacks Merit Because No Disclosure to the Public is Alleged and Any Alleged Disclosure Was Not "Highly Offensive" ........................................................... 9

b. Conversion and Trespass to Chattels (Counts IV and V) Do Not Apply to Intangible Property.............................................................................................. 10

c. Personally Identifiable Information Cannot Create a Bailment (Count IX)......... 11

d. Plaintiff's Consumer Protection Act Claim (Count XI) is Meritless.................... 11

1. Wis. Stat. § 423.301 Does Not Apply Because the Alleged Misrepresentations Do Not Relate to the Extension of Credit................. 11

2. Guardian Did Not Make any Misleading Statements in the Privacy Policy ............................................................................................................. 12

e. Plaintiff's Wis. Stat. § 968.34 Claim (Count XIII) is Meritless Because by Definition, Guardian Did Not Use a "Pen Register" .......................................... 13

f. Plaintiff's Deceptive Trade Practices Act Claim (Count X) is Meritless ............. 13

1. Wis. Stat. § 100.18(1) Does Not Apply Because Guardian Does Not Sell "Merchandise" ......................................................................................... 13

2. Plaintiff Cannot Establish Reliance or Pecuniary Harm........................... 14

3. Guardian Did Not Make any False or Misleading Statements in the Privacy Policy ......................................................................................... 15

g. Plaintiff's Stored Communications Act Claim (Count XVI) Fails Because Guardian is Not an "Electronic Communication Service" and Did Not Divulge any "Communication" ..................................................................................... 15

h. Plaintiff's Computer Fraud and Abuse Act Claim (Count XVII) Fails Because Plaintiff Does Not Allege Unauthorized Access to His Computer, or Any Viable Damages............................................................................................................ 17

i. Plaintiff's Federal Statutory Claims (Counts XIV, XV, XVI, and XVII) are Barred by the Two-Year Statute of Limitations ............................................................ 18

III. Plaintiff's Negligence (Count I) and Negligence *Per Se* (Count II) Claims Fail ............. 19

a. There is No Duty to Protect the Information Plaintiff Claims Was Shared.......... 19

b. Plaintiff Has Not Pled a Breach of Duty.......................................................... 20

c. Plaintiff's Negligence Per Se Claim Fails and is Preempted Because it is Based on Federal Statutes with No Associated Private Rights of Action ............................ 22

d. Plaintiff's Claims Are Barred by the Economic Loss Doctrine ........................... 23
e. Plaintiff Pleads No Viable Injury as Courts Routinely Reject Claims for the Purported Damages Plaintiff Seeks ........................................................................ 24

IV. Plaintiff's Breach of Express and Implied Contract ClaimS (CountS VI and VII) Fail ... 26

a. Privacy Policies Are Not Contracts ........................................................................ 26
b. No Consideration Exists to Support a Contract ...................................................... 27
c. Plaintiff Fails to Allege any Breach of Contract or Damages ............................. 28

V. Plaintiff Cannot Plead Unjust Enrichment (Count VIII) Because He Incorporates Allegations of a Contractual Relationship and Fails to Allege any Benefit Conferred on Guardian ........................................................................................................................ 28

VI. Plaintiff's Wisconsin Wiretapping Claims (Counts XII and XIII) and Federal Wiretapping Claims (Counts XIV and XV) Fail Because Guardian was a Party to the Alleged Communications ........................................................................................ 29

CONCLUSION ........................................................................................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Novant Health, Inc.*,
1:22-CV-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ....15

*Alsteen v. Wauleco, Inc.*,
2011 WI App 105, 335 Wis. 2d 473, 802 N.W.2d 212 ....25

*Anderson v. Cont'l Ins. Co.*,
85 Wis. 2d 675, 271 N.W.2d 368 (1978)....25

*Archey v. Osmose Utilities Services*,
20-CV-05247, 2021 WL 3367156 (N.D. Ill. Aug. 3, 2021) ....24, 25

*Beaman v. Bank of Am., N.A.*,
2:21-CV-20561, 2024 WL 3219224 (D.N.J. June 28, 2024)....22

*Brahm v. Hosp. Sisters Health Sys*.,
23-CV-444-WMC, 2024 WL 3226135 (W.D. Wis. June 28, 2024)....10

*Daanen & Janssen, Inc. v. Cedarapids, Inc.*,
216 Wis. 2d 395, 573 N.W.2d 842 (1998)....23

*Dahl v. St. Paul Fire & Marine Ins. Co.*,
36 Wis. 2d 420, 153 N.W.2d 624 (1967)....11

*Dieffenbach v. Barnes & Noble, Inc.*,
887 F.3d 826 (7th Cir. 2018) ....24

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) ....25

*Domann v. Summit Credit Union*,
18-CV-167-SLC, 2018 WL 4374076 (W.D. Wis. Sept. 13, 2018) ....28

*Dyer v. Nw. Airlines Corps.*,
334 F. Supp. 2d 1196 (D.N.D. 2004)....16, 26

*El Paso Disposal, LP v. Ecube Labs Co.*,
EP-24-CV-97-KC, 2025 WL 517656 (W.D. Tex. Feb. 17, 2025)....15

*Fox v. Iowa Health Sys.*,
399 F. Supp. 3d 780 (W.D. Wis. 2019) ....24

*Gallego v. Wal-Mart Stores, Inc.*,
2005 WI App 244, 288 Wis. 2d 229, 707 N.W.2d 539 ....................13

*Greenlee v. Rainbow Auction/Realty Co.*,
202 Wis. 2d 653, 553 N.W.2d 257 (Ct. App. 1996) ....................28

*Griffey v. Magellan Health Inc.*,
562 F. Supp. 3d 34 (D. Ariz. 2021) ....................27

*Hartley v. Univ. of Chicago Med. Ctr.*,
22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ....................7

*Hartley v. Urban Outfitters, Inc.*,
740 F. Supp. 3d 410 (E.D. Pa. 2024) ....................7

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ....................7, 20

*Hoida, Inc. v. M & I Midstate Bank*,
2006 WI 69, 291 Wis. 2d 283 ....................19, 24

*In re Banner Health Data Breach Litig.*,
CV-16-02696-PHX-SRB, 2017 WL 6763548 (D. Ariz. Dec. 20, 2017) ....................27

*In re Bard IVC Filters Products Liab. Litig.*,
CV-16-00893-PHX-DGC, 2018 WL 3586404 (D. Ariz. July 26, 2018) ....................23

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023) ....................7

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) ....................26

*In re Hulu Privacy Litig.*,
C 11–03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ....................5

*In re Jetblue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ....................16

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................31

*In re: Netgain Tech.*,
2022 WL 1810606 (D. Minn. June 2, 2022) ....................22

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ....................6, 19, 21

*In re SuperValu, Inc., Customer Data Sec. Breach Litig.*,
14–MD–2586, 2018 WL 1189327 (D. Minn. Mar. 7, 2018) ....................24

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................16

*Johnson v. C.R. Bard Inc.*,
19-CV-760-WMC, 2021 WL 1784661 (W.D. Wis. May 5, 2021)....................23

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ....................20

*Lands' End, Inc. v. Genesys Software Sys., Inc.*,
13-CV-38-BBC, 2014 WL 266630 (W.D. Wis. Jan. 24, 2014)....................10

*Linman*, 2023 WL 2562712 at *6 ....................29

*Madison Newspapers, Inc. v. Pinkerton's Inc.*,
200 Wis. 2d 468, 545 N.W.2d 843 (Ct. App. 1996) ....................19

*McLaughlin v. Taylor Univ.*,
1:23-CV-00527-HAB-SLC, 2024 WL 4274848 (N.D. Ind. Sept. 23, 2024)....................11

*Miller v. Vonage Am., Inc.*,
14-CV-379, 2015 WL 59361 (E.D. Wis. Jan. 5, 2015) ....................19, 20

*Mosley v. Oakwood Lutheran Senior Ministries*,
2023 WI App 44, 995 N.W.2d 494 ....................9

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024).................... *passim*

*Okash v. Essentia Health*,
CV 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024)....................31

*Okey v. Runde Chevrolet, Inc.*,
2023 WI App 62, 998 N.W.2d 849 ....................9

*Pagoudis v. Keidl*,
2023 WI 27, 406 Wis. 2d 542, 988 N.W.2d 606 ....................28

*Pica v. Delta Air Lines, Inc.*,
CV 18-2876-MWF (EX), 2018 WL 5861362 (C.D. Cal. Sept. 18, 2018)....................22

*Popa v. Harriet Carter Gifts, Inc.*,
2:19-CV-450, 2025 WL 896938 (W.D. Pa. Mar. 24, 2025) ....................30

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................25

*Reetz v. Advocate Aurora Health, Inc.*,
2022 WI App 59, 405 Wis. 2d 298, 983 N.W.2d 669 ............29

*Remijas v. Neiman Marcus Group*,
LLC, 794 F.3d 688 (7th Cir. 2015) ............25, 26

*Rider v. Uphold HQ Inc.*,
657 F. Supp. 3d 491 (S.D.N.Y. 2023) ............22

*Rodriguez v. ByteDance, Inc.*,
23 CV 4953, 2025 WL 672951 (N.D. Ill. Mar. 3, 2025) ............16, 17

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) ............25

*Smith v. Goshaw*,
2019 WI App 23, 387 Wis. 2d 620, 928 N.W.2d 619 ............22

*Stayart v. Yahoo! Inc.*,
651 F. Supp. 2d 873 (E.D. Wis. 2009) ............8

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ............32

*T.D. v. Piedmont Healthcare, Inc.*,
1:23-CV-5416-TWT, 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024) ............31

*Thermal Design, Inc. v. Am. Soc. of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*,
775 F. Supp. 2d 1082 (E.D. Wis. 2011) ............14

*Watercraft Sales Inc. v. Van de Water*,
2022 WI App 27, 974 N.W.2d 893 ............11

*Wesbrook v. Ulrich*,
90 F. Supp. 3d 803 (W.D. Wis. 2015) ............8

**Statutes**

15 U.S.C. § 6803(a) ............26

18 U.S.C. 2702(f) ............18

18 U.S.C. §1030(a)(2)(C) ............17

18 U.S.C. §1030(g) ............18

18 U.S.C. § 2511(2)(d) ............30

18 U.S.C. § 2520 ..... 18

18 U.S.C. § 2702 ..... 15

18 U.S.C. § 2702(a)(1) ..... 15

Wis. Stat. § 100.18(1) ..... 13, 14

Wis. Stat. § 100.18(11)(b)(2) ..... 14

Wis. Stat. § 423.301 ..... 11, 12

Wis. Stat. § 968.27(13) ..... 13

Wis. Stat. § 968.31(2)(c) ..... 30

*Wis. Stat. § 968.34* ..... 13

Wis. Stat. § 995.50 ..... 9

## INTRODUCTION

This is a baseless lawsuit brought by Plaintiff, David Gassman ("Gassman"), asserting that Defendant, Guardian Credit Union's ("Guardian") use of common web analytics tools known as "pixels" somehow resulted in the widespread disclosure to third-parties of "Nonpublic Personal Information" and "Personally Identifiable Financial Information" belonging to Plaintiff and the putative class. Plaintiff asserts ***seventeen*** causes of action, each lacking any merit, including claims under regulatory statutes that expressly provide there is no associated private right of action, claims under other statutes not even related to Guardian's alleged activity, and common law claims that plainly do not apply under Wisconsin law.

Plaintiff's "throw everything at the wall and see what sticks" approach is sanctionable and should not be well taken. In fact, after Guardian moved to dismiss Plaintiff's initial complaint that contained twenty-one counts, Plaintiff sought leave to amend ostensibly to address the concerns raised by the motion. However, Plaintiff's First Amended Complaint ("FAC") fares no better, still pleading no viable claims and containing many patently frivolous counts. The FAC should be dismissed in its entirety, with prejudice.

Plaintiff pleads himself out of Court, alleging facts demonstrating, as a matter of law, that his claims lack merit. Plaintiff's case hinges on his conclusory assertion that Guardian "intercepted" and then disclosed personally identifiable information via its use of pixels. As Plaintiff's allegations demonstrate, it did not. The FAC includes a multitude of screenshots of the information allegedly tracked by the pixels on Guardian's website. ***None of those screenshots identify Plaintiff, state his name, or contain any personally identifiable information.*** Rather, the screenshots display exactly what the pixels are intended to do – they anonymously track what webpage URLs are visited and what is clicked on. They do not link that information to an individual website visitor or track or disclose any information that could identify a visitor. Plaintiff

apparently believes that Guardian violated seventeen different laws merely by tracking statistics such as that "a person visited guardiancu.org" or "a person clicked on 'fund via credit card'." Fortunately for Guardian, and the many other website operators using pixels, that is not the law.

Plaintiff cites to Guardian's privacy policy, which wholly undercuts his conclusory allegations and only serves to confirm that Guardian did not disclose any personally identifiable information. The privacy policy explicitly describes how pixels are used:

> **Non-personally identifiable information**
> When you visit our website, we collect anonymous statistics to monitor our site's performance and inform our marketing efforts, such as:
>
> - How many people visit our site
> - The day and date of the visit
> - The pages visited
> - From which domains our visitors come, and
> - Which browsers people use to visit our site
>
> We may use non-personally identifiable information such as cookies and IP addresses to provide targeted marketing. While we gather this information, none of it is associated with you as an individual.

(Dkt. 19, ¶ 96).[1] The privacy policy references Guardian's self-collection of statistics, and makes no mention of transmission of information to any third party.

Plaintiff's allegations render his claims untenable, as he concedes through his citation to the privacy policy and use of screenshots that Guardian has not disclosed any identifying information, and that Guardian's privacy policy fully advised him of the pixel use that he now complains of. This fatal deficiency warrants dismissal of all of Plaintiff's claims. Even if Plaintiff did not plead himself out of Court, his causes of action each fail for multiple, independent reasons. Plaintiff's FAC is utterly devoid of merit.

[1] Available at, https://www.guardiancu.org/privacy-policy/

## FACTUAL ALLEGATIONS

Guardian is a Wisconsin credit union that provides products and services to its customers, including credit cards and financial services. (Dkt. 19, ¶ 2). Plaintiff is a Wisconsin resident and Guardian customer. (*Id.*, ¶¶ 16, 129-130). Guardian maintains a website that contains a privacy policy. (*Id.*, ¶¶ 27, 96). Guardian's privacy policy provides, in relevant part:

> **Non-personally identifiable information**
> When you visit our website, we collect anonymous statistics to monitor our site's performance and inform our marketing efforts, such as:
>
> - How many people visit our site
> - The day and date of the visit
> - The pages visited
> - From which domains our visitors come, and
> - Which browsers people use to visit our site
>
> We may use non-personally identifiable information such as cookies and IP addresses to provide targeted marketing. While we gather this information, none of it is associated with you as an individual.

(Dkt. 19, ¶ 105, Ex. A and B thereto).

Ignoring the privacy policy's express statement that Guardian tracks only limited, anonymized information that is not associated with any individual website visitor, Plaintiff speculates without any supporting facts that Guardian uses pixels to purportedly intercept and then disclose the information input by visitors into Guardian's website to third parties, including Google, LLC, Google Tag Manager, Google Analytics, LinkedIn, Qualtrics, Adnxs, and Doubleclick. (*Id.*, ¶¶ 1, 5). According to Plaintiff, that information was somehow "simultaneously intercepted and transmitted to the Third Parties" when he entered it. (*Id.*, ¶ 38). Notably, the only facts Plaintiff alleges to "prove" disclosure to third parties is that he received "targeted advertisements on LinkedIn for debit card offers," and received "advertising on Facebook for different banks and applying for cards" after his credit card application with Guardian was denied,

despite Plaintiff not even listing Facebook/Meta as one of the pixels used or one of the third parties to which his information was supposedly disclosed. (Dkt. 19, ¶¶ 1, 132-135).

Plaintiff alleges, on information and belief, that the pixels disclosed the following information with respect to him: "Credit card application information;" "Existing membership, or Customer, status;" "Purpose for applying for a credit card;" "The specific credit card Plaintiff applies for;" "Whether Plaintiff agreed with the disclosures;" "Co-applicant information;" "Election to remember his online banking portal login information;" "IP address;" "Browser fingerprint;" and "Individual user cookies." (Dkt. 19, ¶ 142).

Plaintiff has a Guardian debit card, an online banking portal login, and has used Guardian's website for the last three years. (Dkt. 19, ¶ 129). He alleges he "has received multiple targeted advertisements on LinkedIn for debit card offers." (*Id.*, ¶ 132). He claims to have applied for a credit card on the website "sometime in 2022," which he reports was denied. (*Id.*, ¶ 134). According to Plaintiff, "[s]hortly after [he] used [Guardian's] Website to apply for a Guardian credit card, he received advertising on Facebook for different banks and applying for cards." (*Id.*, ¶ 135). There are no allegations that Guardian used any Facebook/Meta pixels or that any disclosure was made to Facebook/Meta. (Dkt. 19, ¶ 1).

## **ARGUMENT**

### I. **PLAINTIFF'S OWN ALLEGATIONS CONFIRM THAT THE ALLEGED PIXELS DID NOT TRACK OR DISCLOSE ANY PERSONALLY IDENTIFIABLE INFORMATION**

Plaintiff's claims are all predicated on Guardian's purported "outrageous, illegal, and widespread practice of disclosing – without consent – the Nonpublic Personal Information and Personally Identifiable Financial Information of Plaintiff" and the putative class through Guardian's use of website pixels. (Dkt. 19, ¶ 1). Plaintiff's allegations demonstrate, as a matter of law, that Guardian did not disclose any such information.

"Personally identifiable information" – as is obvious from the term itself – must actually be able to *identify* a particular individual. *See, e.g.*, *In re Hulu Privacy Litig.*, C 11–03764 LB, 2014 WL 1724344, at *7 (N.D. Cal. Apr. 28, 2014) ("The plain language of the [Video Privacy Protection Act] suggests, and the Senate Report confirms, that the statute protects personally identifiable information that identifies a specific person and ties that person to particular videos that the person watched."). Indeed, the definition of "personally identifiable financial information" promulgated by the FTC, and applicable to the Gramm-Leach Biley Act ("GLBA") that Plaintiff heavily relies on, expressly <u>***excludes***</u> ***"information that does not identify a consumer, such as aggregate information or blind data that does not contain personal identifiers such as account numbers, names, or addresses."*** 16 C.F.R. § 313.3(o)(2)(ii) (emphasis added).

Plaintiff then pastes twenty screenshots of the alleged information tracked by the pixels, all of which are entirely consistent with Guardian's privacy policy. <u>***None***</u> of those screenshots contain Plaintiff's name or contain any personally identifiable information, and instead show merely the webpage accessed and what was clicked on – exactly what Guadian's privacy policy discloses that it tracks. For example, Plaintiff includes screenshots allegedly showing a pixel tracking: that "New Member Account" was clicked on at a particular URL (Dkt. 19, ¶ 52(a)); that a visitor is on a "New Membership" page of the website (¶ 52(b)); that a visitor selected "regular savings" account (¶ 54); that a visitor chose to receive electronic statements (¶ 55); that a visitor selected "I agree to the Pre-Disclosure." (¶ 56). The visitor is never identified.

Notably, Plaintiff also includes a screenshot purportedly showing a pixel tracking that a person visited a "confirm your identity" URL and clicked on the "account number" box. (*Id.*, ¶ 72). The left half of the screenshot portrays what a visitor sees on the website, and it shows that an account number has been typed in, but on the right half of the screenshot showing the alleged pixel

tracking activity, ***the account number that was typed in is not displayed anywhere***. (*Id.*). Similarly, Plaintiff includes a screenshot purportedly showing the pixel tracking activity where on the left-hand side a visitor has typed in his social security number, but again the number input by the visitor is ***not displayed in the alleged pixel tracking activity on the right-hands side***. (*Id.*, ¶¶ 73-74). Another screenshot portrays a visitor having typed in his driver's license number, and again the number input by the visitor ***is not displayed in the alleged pixel tracking activity shown on the right-hand side***. (¶ 58). This is because – as Guardian's privacy policy clearly states – it does not collect any such identifying information, and instead is only tracking websites visited and click activity on an anonymized basis. The other screen shots are more of the same. Not one of them shows any name; not one of them shows any information that could identify an individual; not one of them shows any information typed in by a visitor. Rather, they all merely show browsing activity and clicks.

Plaintiff's FAC adds allegations that were not present in the initial complaint regarding the purported tracking of IP addresses, "browser fingerprints," and website cookies. (FAC, ¶¶ 40, 67). However, his screenshots once again belie his baseless allegations. Plaintiff alleges "upon information and belief" that upon a visitor using Guardian's website, Guardian tracks "events [that] include data such as the user's IP addresses, browser fingerprints, and cookies." (*Id.*, ¶ 67). However, the screenshot that Plaintiff pastes into this allegation to show the alleged tracking ***does not show the IP address, "browser fingerprints," or cookies***. Rather, it only shows the website URL visited and the time it was accessed. (*Id.*). Nothing unique to Plaintiff is shown. Once again, Plaintiff's screenshots contradict his "information and belief" allegations. And to be sure, even if such information was tracked – it is not – it would not support Plaintiff's claims. *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 283 (3d Cir. 2016) ("[A]n IP address or a

digital code in a cookie file would likely be of little help in trying to identify an actual person."); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (holding that there is "no legally protected privacy interest in IP addresses.").

Plaintiff cannot merely state in conclusory fashion that his personally identifiable information has been disclosed, without specific allegations. *Hartley v. Urban Outfitters, Inc.*, 740 F. Supp. 3d 410, 422 (E.D. Pa. 2024) (dismissing complaint in pixels case because "allegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected."); *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 356 (E.D. Pa. 2023) ("We need to know what session replay code actually captured, not what session replay code is capable of capturing."); *Hartley v. Univ. of Chicago Med. Ctr.*, 22 C 5891, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023) (dismissing complaint because allegations that "URLs, buttons, pages, and tabs they click and view" were transmitted to Facebook is insufficient because that is not "information specific to Plaintiff as what was disclosed to Facebook that would plausibly be in violation of HIPAA."). In attempting to meet this threshold by providing examples, Plaintiff has actually proven otherwise, establishing as a matter of law that, consistent with its privacy policy, Guardian's pixels anonymously track website visits and clicks, and do not track any information that could identify a visitor. This defeats all of Plaintiff's claims.

Likely recognizing that he has no evidence to backup his allegations of unlawful disclosure of personally identifiable information, Plaintiff attempts to connect the dots by arbitrarily alleging that he is a LinkedIn user and received "targeted advertisements on LinkedIn for debit card offers," and that he "is a Facebook user" and "[s]hortly after Plaintiff used Defendant's Website to apply for a Guardian credit card, he received advertising on Facebook for different banks and applying for cards." (Dkt. 19, ¶¶ 129-135). These allegations (which notably, do not even state that Guardian

provided information to Facebook)[2] are pure speculation that are insufficient to state claim, as a plaintiff must allege "enough facts to raise [the claim] above the level of mere speculation." *See, e.g.*, *Wesbrook v. Ulrich*, 90 F. Supp. 3d 803, 806 (W.D. Wis. 2015) (citation omitted). Plaintiff alleges no facts connecting his alleged possession of a Guardian debit card with the LinkedIn debit card advertisements he supposedly received, nor does he allege any facts connecting the alleged denial of his credit card application to the Facebook advertisements for credit cards he supposedly received. Arbitrary facts and speculation are not enough to state a claim.

In short, Plaintiff has not just failed to allege any disclosure of specific, personally identifiable information, but he has demonstrated through his allegations regarding Guardian's privacy policy and the screenshots of the alleged pixel activity, that Guardian – consistent with its privacy policy – does not track nor does it disclose any personally identifiable information to third parties, but rather it anonymously tracks webpages accessed by visitors and their click activity. Plaintiff's own allegations defeat his claims and establish that he will not be able to plead valid claims, even after filing an amended complaint containing 20 pages of screenshots and 363 paragraphs of allegations. The FAC should be dismissed, with prejudice. *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 889 (E.D. Wis. 2009) (denying leave to re-plead because "[r]epleading would be futile if the complaint still wouldn't survive a motion to dismiss.").

## II. <u>PLAINTIFF KNOWINGLY ASSERTS A LITANY OF FRIVOLOUS CLAIMS</u>

Plaintiff's "kitchen sink" approach not only fails to state viable claims, but is potentially sanctionable because those claims have zero validity under applicable Wisconsin law. While all of Plaintiff's claims are subject to dismissal, he asserts a number of claims (the majority of his claims) that lack any good faith basis in law or fact, including statutory claims that are foreclosed by the

---

[2] Plaintiff alleges the third parties that his information was supposedly disclosed to, and Facebook/Meta is not one of them. (Dkt. 19, ¶ 1).

definitions and plain language of the statutes, common law claims that clearly do not apply under the applicable case law, and claims that are barred by the statute of limitations. Each of these frivolous claims should be dismissed, with prejudice. Despite being placed on notice of these frivolous claims by Guardian's initial motion to dismiss, Plaintiff's FAC made minimal changes and still contains many of the same baseless claims.

***a. Plaintiff's Invasion of Privacy – Disclosure of Private Facts Claim (Count III) Lacks Merit Because No Disclosure to the Public is Alleged and Any Alleged Disclosure Was Not "Highly Offensive"***

The tort of public disclosure of private facts, codified in Wis. Stat. § 995.50, is defined as: "Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed." Wis. Stat. § 995.50. "Publicity" means "'the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Okey v. Runde Chevrolet, Inc*., 2023 WI App 62, ¶ 14, 998 N.W.2d 849. Here, Plaintiff does not allege any disclosure to the public at large, but only business-to-business disclosure to a limited number of third party entities via the pixels. (Dkt. 19, ¶ 1). Further, Plaintiff alleges that this information will be used apparently for purposes of advertising directly to him. (*Id.*, ¶¶ 91, 120-122). Such purposes present no risk that the alleged information is "substantially certain to become one of public knowledge." *Okey*, 2023 WI App 62. It would defy common sense for business-to-business communications for purposes of advertising directly to Plaintiff, to be deemed "public disclosure" supporting an invasion of privacy claim.

Further, Wisconsin courts have upheld public disclosure of private facts claims only where the information disclosed was "embarrassing" enough to be highly offensive to a reasonable person. *Mosley v. Oakwood Lutheran Senior Ministries*, 2023 WI App 44, ¶ 31, 995 N.W.2d 494

(dismissing claim for disclosure of COVID-19 diagnosis because it was not "highly offensive," and noting that "highly offensive" information is "far more private and potentially embarrassing" such as an HIV infection, a drug overdose, or falsification of documents). Here, there is nothing "highly offensive" about the disclosure of "credit card application information," "existing membership status," "[w]hether Plaintiff agreed with the disclosures," "IP addresses," or any other information Plaintiff claims was disclosed. (Dkt. 19, ¶ 124). No reasonable person would find such information "highly offensive," nor does such innocuous information even contain "Personal and Financial Information" as Plaintiff contends. (Dkt. 19, ¶ 198). Plaintiff's claim should be dismissed for this additional reason.

### ***b. Conversion and Trespass to Chattels (Counts IV and V) Do Not Apply to Intangible Property***

Wisconsin Courts have held that personally identifiable information is not a chattel and cannot be the subject of a conversion or trespass to chattels claim. In *Brahm v. Hosp. Sisters Health Sys*., 23-CV-444-WMC, 2024 WL 3226135, at *2 (W.D. Wis. June 28, 2024), the Court dismissed a conversion claim in a data privacy case, noting that conversion is "limited to chattel or identifiable, tangible, and moveable property," and holding that "[personally identifiable information/protected health information] does not qualify as a chattel." *See also Lands' End, Inc. v. Genesys Software Sys., Inc.*, 13-CV-38-BBC, 2014 WL 266630, at *3 (W.D. Wis. Jan. 24, 2014) ("[F]or conversion to lie—even where intangible rights are involved—there must be some tangible thing to which the intangible rights attach which is capable of being wrongfully controlled."). Further, by its very name, a claim for trespass to ***chattels*** can only lie with respect to "chattels," and "[personally identifiable information/protected health information] does not qualify as a chattel." *Brahm*, 2024 WL 3226135 at *2.

### *c.* *Personally Identifiable Information Cannot Create a Bailment (Count IX)*

Plaintiff's bailment count is meritless. "A bailment is created by delivery of personal property from one person to another, to be held temporarily for the benefit of the bailee, the bailor, or both under a contract, express or implied." *Watercraft Sales Inc. v. Van de Water*, 2022 WI App 27, ¶ 9, 974 N.W.2d 893. A bailment requires the "bailee to have full and complete possession of the property so as to exclude for the period of the bailment the possession of the owner." *Dahl v. St. Paul Fire & Marine Ins. Co.*, 36 Wis. 2d 420, 423, 153 N.W.2d 624, 625 (1967).

A bailment cannot be created by the transfer of personally identifiable information because such information is intangible such that there can no exclusive possession by the bailee. *See, e.g*, *McLaughlin v. Taylor Univ*., 1:23-CV-00527-HAB-SLC, 2024 WL 4274848, at *12 (N.D. Ind. Sept. 23, 2024) (dismissing bailment count because "Plaintiffs here were not excluded from their [personally identifiable information]" and "had uninhibited access to their [information] insofar as they could 'deliver it to limitless others," and declining to extend bailment to cases involving intangible personal information because "a bailor/bailee relationship would exist anytime somebody provides their personal information to a party in order to receive services or employment."). Plaintiff has no claim for bailment based on Guardian's alleged possession of his personally identifiable information.

### *d.* *Plaintiff's Consumer Protection Act Claim (Count XI) is Meritless*

1. Wis. Stat. § 423.301 Does Not Apply Because the Alleged Misrepresentations Do Not Relate to the Extension of Credit

Wis. Stat. § 423.301 provides that "No merchant shall advertise, print, display, publish, distribute, or broadcast or cause to be advertised, printed, displayed, published, distributed or broadcast, in any manner any statement or representation with regard to the extension of consumer credit including the rates, terms or conditions for the extension of such credit, which is false,

misleading, or deceptive, or which omits to state material information with respect to the extension of credit that is necessary to make the statements therein not false, misleading or deceptive." Wis. Stat. § 423.301.

This statute plainly applies to misrepresentations regarding a credit transaction itself, not about a website privacy policy. Nowhere does Plaintiff allege that Guardian made any false statements "with regard to the extension of consumer credit, including the rates, terms or conditions for the extension of such credit." Rather, Plaintiff's claims are entirely predicated on supposed misrepresentations regarding Guardian's website privacy policy. (Dkt. 19, ¶ 274). Representations in Guardian's website privacy policy inform visitors solely about that visitor's use of Guardian's website; they have nothing to do with rates, terms and conditions, or any other credit terms. Wis. Stat. § 423.301 does not apply, and Plaintiff's claim should be dismissed.

2. <u>Guardian Did Not Make any Misleading Statements in the Privacy Policy</u>

Even if the Wisconsin Consumer Protection Act applied, Plaintiff's claim is premised on Guardian's alleged false representations in its privacy policy, but no such misrepresentations exist. Guardian's privacy policy unambiguously describes the activity that the pixels are used for – "anonymous" tracking of statistics (such as websites visited) and is never "associated with [a visitor] as an individual." (Dkt. 19, ¶ 91; *see supra* pp. 2-3).

Plaintiff's allegations establish that Guardian's privacy policy is truthful. Plaintiff pastes twenty screenshots of the alleged information tracked by the pixels, none of which contain Plaintiff's name or contain any personally identifiable information, and instead show merely the webpage accessed and what was clicked on – exactly what Guadian's privacy policy discloses that it tracks. In fact, Plaintiff includes screenshots of a visitor typing in an account number, social security number, and driver's license number, and the alleged pixel tracking activity shown on the right half of the screenshots do not display any of the information input by the visitor. (Dkt. 19, ¶¶

58, 72-74). This is because, as the privacy policy states, Guardian does not collect any such information, and instead is merely tracking websites visited and click activity. Guardian's privacy policy is accurate and made no misrepresentations to Plaintiff or the public. Plaintiff's claim fails for this additional reason.

***e. Plaintiff's Wis. Stat. § 968.34 Claim (Count XIII) is Meritless Because by Definition, Guardian Did Not Use a "Pen Register"***

Plaintiff also attempts to assert wiretapping claims under Wis. Stat. § 968.34, which provides that no person "may install or use a pen register or a trap and trace device without first obtaining a court order." Wis. Stat. § 968.34. Plaintiff alleges that the pixels constitute "pen registers" "because they record information." (Dkt. 19, ¶ 304). Plaintiff is wrong. A "pen register" is defined as "a device that records or decodes electronic or other impulses that identify the numbers dialed or otherwise transmitted on the telephone line to which the device is attached." Wis. Stat. § 968.27(13). Guardian's alleged use of pixels to track webpage activity does not "identify the numbers dialed" on an outgoing "telephone line." Guardian's website is not a telephone and it does not dial numbers. Guardian is plainly not using pen registers. Count XIII fails as a matter of law.

***f. Plaintiff's Deceptive Trade Practices Act Claim (Count X) is Meritless***

1. <u>Wis. Stat. § 100.18(1) Does Not Apply Because Guardian Does Not Sell "Merchandise"</u>

Wis. Stat. § 100.18(1) precludes a person from making false advertising statements with the "intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service . . ." Wis. Stat. § 100.18(1). Plaintiff's FAC alleges that Guardian made misrepresentations relating to its attempt to sell "merchandise." (Dkt. 19, ¶ 265). "Merchandise" is not defined in the statute, so Wisconsin Courts have relied on the dictionary definition. *See, e.g.*, *Gallego v. Wal-*

*Mart Stores, Inc.*, 2005 WI App 244, ¶ 13, 288 Wis. 2d 229, 238, 707 N.W.2d 539, 544 (referring to dictionary definition of "merchandise" as "manufactured goods bought and sold in any business."); *Thermal Design, Inc. v. Am. Soc. of Heating, Refrigerating & Air-Conditioning Engineers, Inc.,* 775 F. Supp. 2d 1082, 1088 (E.D. Wis. 2011) (referring to dictionary definition of "merchandise" as "[g]oods that are bought and sold in business; commercial wares.").

Guardian is a credit union and does not sell physical goods or commercial wares. It does not sell "merchandise." Therefore, Wis. Stat. § 100.18(1) does not apply. Plaintiff's claim fails as a matter of law.

2. Plaintiff Cannot Establish Reliance or Pecuniary Harm

A plaintiff must establish a "pecuniary loss" in order to bring a private right of action. Wis. Stat. § 100.18(11)(b)(2). The pecuniary loss element "encompass[es] a reliance aspect," requiring the plaintiff to establish that the representation "materially induce[d] the plaintiff's decision to act and [whether the] plaintiff would have acted in the absence of the representation." *Thermal Design*, 775 F. Supp. 2d at 1088 (citations omitted). To that end, a plaintiff must plead specific facts that he himself relied on the statements; it is not sufficient to allege generally that the public or "purchasers" relied on the alleged misleading statements. *Id.*

Plaintiff's claim fails in both respects. First, Plaintiff makes no allegations that he himself relied on Guardian's representations in the privacy policy. He does not even allege that he read the privacy policy before using Guardian's website. Rather, Plaintiff makes general allegations that "Customers" were misled by the privacy policy.[3] (Dkt. 266). This is insufficient as a matter of law. *Id.* (dismissing claim because it alleged that "purchasers and prospective purchasers of Thermal

---

[3] For the second time, Plaintiff's law firm failed to edit its form complaint that it repeatedly files against various entities, referring in paragraph 266 to Guardian's "patients." (Dkt. 19, ¶ 270(a), (b)). Guardian is a credit union and does not have "patients." Guardian raised this in its initial motion to dismiss, but Plaintiff failed to correct it in the FAC.

Design's Assemblies have and will be induced to purchase competitive Assemblies," and did not allege that the plaintiff itself relied on the statements). Plaintiff also cannot establish any pecuniary loss. Plaintiff has suffered no out-of-pocket loss, or any other monetary harm. Guardian incorporates its arguments from Section III.e below regarding damages. (*See infra* pp. 24-25).

3. Guardian Did Not Make any False or Misleading Statements in the Privacy Policy

Guardian's privacy policy is truthful and discloses exactly how the pixel technology works. Guardian incorporates its argument from Section II.d.2 above. (*See supra* pp. 12-13).

***g. Plaintiff's Stored Communications Act Claim (Count XVI) Fails Because Guardian is Not an "Electronic Communication Service" and Did Not Divulge any "Communication"***

Plaintiff brings a Stored Communications Act ("SCA") claim under 18 U.S.C. § 2702, which, in relevant part, prohibits a party "providing an electronic communication service to the public" from "knowingly divulge[ing] to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). Plaintiff's claim fails in all respects.

First, Guardian merely operates a website and does not provide an "electronic communication service." Courts have repeatedly rejected the notion that merely operating a website subjects a party to liability under the SCA. *El Paso Disposal, LP v. Ecube Labs Co.,* EP-24-CV-97-KC, 2025 WL 517656, at *8 (W.D. Tex. Feb. 17, 2025) ("[M]erely providing services to online users does not transform a website into a facility under the SCA unless the platform itself provides users the capability to send and receive messages or other communications."); *Allen v. Novant Health, Inc.*, 1:22-CV-697, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023) ("But '[m]ere operation of' a website that allows 'the company to communicate with its customers' 'does not transform' Novant 'into a provider' of electronic communication services to the public.")

(citations omitted); *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1199 (D.N.D. 2004) ("[B]usinesses offering their traditional products and services online through a website are not providing an 'electronic communication service.'"); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 308 (E.D.N.Y. 2005) ("Amazon.com was not an electronic communication service provider despite the fact that it maintained a website and receives electronic communications containing personal information from its customers in connection with the purchase of goods."). Here, Guardian has a website that visitors can use to apply for products. That does not render Guardian as providing an "electronic communication service." The SCA therefore does not apply.

Further, even if the SCA did apply, Plaintiff still could not state a claim because he alleges the divulgence of data, not "communications." In *Rodriguez v. ByteDance, Inc.*, 23 CV 4953, 2025 WL 672951 (N.D. Ill. Mar. 3, 2025), the Court found that disclosure of "user data" did not constitute a "communication" pursuant to the SCA. *Id.* at *9 ("These statements are not enough to state a plausible claim for relief. They do not establish that the CCP had access to user communications, as opposed to user data."); *see also In re Zynga Privacy Litig.*, 750 F.3d 1098, 1105-07 (9th Cir. 2014) (holding that the "contents of a communication" "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message" such as "the name, address, or client ID number of the entity's customers.").

Here, Plaintiff only alleges that "record information" was disclosed, not the contents of any communication. The SCA was not intended to hold a website owner liable for storing data that a visitor voluntarily inputs into a web form. Plaintiff's claim should be dismissed.

### *h. Plaintiff's Computer Fraud and Abuse Act Claim (Count XVII) Fails Because Plaintiff Does Not Allege Unauthorized Access to His Computer, or Any Viable Damages*

Like his other claims, Plaintiff's Computer Fraud and Abuse Act ("CFAA") is utterly baseless. The CFAA imposes liability on a person who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." *Rodriguez v. ByteDance, Inc*., 23 CV 4953, 2025 WL 672951, at *3 (N.D. Ill. Mar. 3, 2025) (citing 18 U.S.C. §1030(a)(2)(C)). A person exceeds authorized access when "he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Id.* (citations omitted). Here, Plaintiff willingly accessed Guardian's website and provided information on the web forms. (Dkt. 19, ¶¶ 129-130, 134-135). By doing so, Plaintiff authorized Guardian to access that information. There is no allegation that Guardian unlawfully accessed Plaintiff's physical computer or device to obtain information. The CFAA does not apply, as a matter of law.

Moreover, the CFAA also requires a plaintiff to plead that they have suffered a loss. *Rodriguez*, 2025 WL 672951 at *3. Courts have found that the "secret transmission of" personal information and "diminution in value of … [their] personal information" is not a cognizable loss under the CFAA. *Id.* at *4 (holding that diminution in value of personal information is not a loss because "the 'statute's 'loss' definition—with its references to damage assessments, data restoration, and interruption of service—clearly limits its focus to harms caused by computer intrusions, not general injuries unrelated to the hacking itself.") (citations omitted). Here, Plaintiff's alleged harm is the same as in *Rodriguez* – the "secret transmission" of his information. (Dkt. 19, ¶ 361). This is not the type of harm that can be redressed by the CFAA.

### *i. Plaintiff's Federal Statutory Claims (Counts XIV, XV, XVI, and XVII) are Barred by the Two-Year Statute of Limitations*

An Electronic Communications Privacy Act claim must be brought within "two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520. A Stored Communications Act claim must be brought within "two years after the data upon which the claimant discovered or had a reasonable opportunity to discover the violation." 18 U.S.C. 2702(f). A Computer Fraud and Abuse Act claim may be brought "within 2 years of the date of the act complained or of the date of the discovery of the damage." 18 U.S.C. §1030(g).

Plaintiff alleges that he has used Guardian's website for three years, that he applied for a credit card with Guardian "sometime in 2022" and was denied, and "[s]hortly after Plaintiff used Defendant's Website to apply for a Guardian credit card, he received advertising on Facebook for different banks and applying for cards." (Dkt. 19, ¶¶ 129, 134-135). Plaintiff's FAC also contains screenshots of the alleged pixel tracking activity, demonstrating that Plaintiff always had access to the information he has now alleged in this lawsuit. When Plaintiff allegedly began receiving "targeted advertisements" as early as 2022 "shortly after" applying for a credit card on Guardian's website, he was on notice of facts that should have, with reasonable diligence, put Plaintiff on notice of his potential claims. This is especially true here where Plaintiff is claiming that the "targeted advertisements" are one of the injuries he has sustained. (Dkt. 19, ¶ 145(c)). Because Plaintiff filed this action in 2025 – more than 2 years after his learning of information that put him on notice of his claims – his federal statutory claims in Counts XIV, XV, XVI, and XVII are barred by the two-year statute of limitations.[4]

[4] Many of Plaintiff's other claims are subject to a 3-year statute of limitations. Those claims may also be time-barred depending on when in 2022 (or earlier) Plaintiff first began receiving "targeted advertisements." However, he only alleges that he began receiving them "sometime in 2022," and therefore

## III. PLAINTIFF'S NEGLIGENCE (COUNT I) AND NEGLIGENCE *PER SE* (COUNT II) CLAIMS FAIL

### *a. There is No Duty to Protect the Information Plaintiff Claims Was Shared*

A negligence claim requires a plaintiff to plead facts establishing: "(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the [breach]." *Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 302 (citations omitted). Plaintiff's negligence claim fails because there is no common law duty to protect information of the sort that Plaintiff alleges was tracked by the pixels.

In *Miller v. Vonage Am., Inc.*, 14-CV-379, 2015 WL 59361, at *1 (E.D. Wis. Jan. 5, 2015), the plaintiff alleged that his prior telephone provider disclosed his home address and telephone number in various print and online directories. In granting the defendant's motion to dismiss the plaintiff's negligence claims, the Court found there was no duty "to use reasonable care to protect from the dissemination of [the plaintiff's] personal information." *Id.* at *5. The Court found that the plaintiff "failed to identify an independent duty that was breached" and that such a duty cannot be created by alleging that the defendant should have done things "as promised on [their] website." *Id.* at *7; *see also Madison Newspapers, Inc. v. Pinkerton's Inc.*, 200 Wis. 2d 468, 473, 545 N.W.2d 843, 846 (Ct. App. 1996) (holding that where a contractual relationship is alleged, a negligence claim cannot stand unless a "duty [] exist[s] independently of the performance of the contract."). Further, there is no expectation of privacy in IP addresses or browser cookies/information. *See In re Nickelodeon*, 827 F.3d at 283 ("[A]n IP address or a digital code in a cookie file would likely

---

there is not enough information in the FAC to raise statute of limitations arguments as to claims subject to a 3-year statute of limitations.

be of little help in trying to identify an actual person."); *Heeger*, 509 F. Supp. 3d at 1189 (holding that there is "no legally protected privacy interest in IP addresses.").

Here, Plaintiff alleges that he is a Guardian customer and has a contractual relationship with Guardian based on its privacy policy.[5] (Dkt. 19, ¶¶ 96, 229). Plaintiff alleges that Guardian was negligent because it had a duty to use reasonable care to prevent the disclosure of his personal financial information, and that Guardian breached this duty through its use of the pixels. (*Id.*, ¶¶ 171, 174). Just as in *Miller*, Plaintiff's negligence claim should be dismissed because there is no independent, common law duty under Wisconsin law to safeguard Plaintiff's "personally identifiable financial information" from disclosure, nor is there any recognized duty to safeguard IP addresses or browser information. The only duties alleged by Plaintiff come from a purported contractual relationship with Guardian. The Court should not create a legal duty where none exists.

***b. Plaintiff Has Not Pled a Breach of Duty***

Even if such a duty existed under Wisconsin law, Plaintiff has utterly failed to plead any breach of that duty. Plaintiff must plead specifically that his personally identifiable financial information was not safeguarded and was disclosed by Guardian. *See, e.g.*, *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) ("Kurowski's allegations are far too vague to allow an inference to be drawn that Rush was actually disclosing IIHI as it is unambiguously defined by HIPAA, rather than just metadata . . . Kurowski cannot reasonably expect to bring a lawsuit related to the invasion of her medical privacy and completely evade revealing what it is that she alleges Rush disclosed to third parties."); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1085 (W.D. Wash. 2024) ("Plaintiff has made no allegations of her interactions with Defendant's websites, let alone any allegations showing that her interactions plausibly related

[5] Guardian denies that its privacy policy is a contract with website visitors. (*See infra* pp. 26-28).

to the provision of healthcare or were shared by Defendant. In fact, Plaintiff's allegations as to herself are disconnected from any allegations of information sharing by Defendant.").

Plaintiff's allegations are that Guardian purportedly disclosed his browsing information (URLs) and click activity on an anonymized basis. He alleges "[o]n information and belief" that Guardian's pixels disclosed his "credit card application information," his "existing membership, or Customer, status," his "purpose for applying for a credit card," "the specific credit card Plaintiff applied for," whether he "agreed with the disclosures," his "co-applicant information," his "election to remember his online banking portal login information," his "IP address," "browser fingerprint," and "individual user cookies." (Dkt. 19, ¶ 142). None of this is personally identifiable information because ***it does not disclose the identity of Plaintiff and cannot be used to identify Plaintiff***. The screenshots he pastes in his FAC showing the alleged pixel tracking activity merely show the URL visited and that a visitor clicked on certain things – none identify the visitor or contain any information input by the visitor. (Dkt. 19, ¶¶ 51-84; *see supra* pp. 3-4, 14-15). While Plaintiff added allegations in the FAC regarding the alleged tracking of IP addresses and website cookies, the screenshot he pasted into the FAC contradicts this, showing only alleged tracking of the webpage URL and the time accessed, ***not the IP address, cookies, or anything else***. (*Id.*, ¶ 67). And in any event, such information is not capable of identifying a visitor. *See, e.g.*, *In re Nickelodeon*, 827 F.3d at 283 ("[A]n IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person.").

The data collected by the pixels – browsing activity and click activity – is simply not personally identifiable financial information.

### *c. Plaintiff's Negligence Per Se Claim Fails and is Preempted Because it is Based on Federal Statutes with No Associated Private Rights of Action*

Plaintiff's attempts to assert a negligence *per se* claim based on Guardian's alleged violations of the Federal Trade Commission Act ("FTC Act") and the GLBA, fail as a matter of law because neither of those statutes allow for a private right of action, and such claims are preempted by federal law. (Dkt. 19, ¶¶ 113-128, 185). "[A] violation of a statute constitutes negligence per se only when the plaintiff demonstrates that the harm inflicted was of the type the statute was designed to prevent, the person injured was within the class of persons protected by the statute, and there is some expression of legislative intent to impose civil liability." *Smith v. Goshaw*, 2019 WI App 23, ¶ 15, 387 Wis. 2d 620, 632, 928 N.W.2d 619, 625 ("[N]othing Smith presents suggests an intent by either provision's author to provide a basis for civil liability.").

Federal courts have dismissed negligence *per se* claims predicated on the FTC Act and the GLBA because neither of those statutes allow for a private right of action. *In re: Netgain Tech*., LLC, 21-CV-1210 (SRN/LIB), 2022 WL 1810606, at *16 (D. Minn. June 2, 2022) (dismissing negligence *per se* claim because "the FTC Act grants the FTC enforcement authority and establishes a certain standard of care, not a private right of action."); *Pica v. Delta Air Lines, Inc*., CV 18-2876-MWF (EX), 2018 WL 5861362, at *9 (C.D. Cal. Sept. 18, 2018) ("Plaintiffs' negligence per se claim is barred because the FTC Act creates no private right of action."); *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 503 (S.D.N.Y. 2023) (dismissing negligence *per se* claim premised on GLBA and FTCA because "to allow such a claim would effectively afford a private right of action that the statute does not recognize -- contravening the legislative scheme."); *Beaman v. Bank of Am., N.A*., 2:21-CV-20561 (BRM) (LDW), 2024 WL 3219224, at *18 (D.N.J. June 28, 2024) ("The Court holds that Plaintiffs' claims for negligence due to violations of the GLBA fail because the GLBA does not invoke a common law duty of care," and because "it is clear from the

language of the statute that Plaintiff cannot bring a private right of action under the GLBA."). Plaintiff cannot sustain a negligence *per se* claim premised on the GLBA and/or the FTC Act.

Moreover, where a negligence *per se* claim "would not exist before enactment of [a federal statute] and is based only on violations of federal law," the claim is impliedly preempted by federal law. *Johnson v. C.R. Bard Inc.*, 19-CV-760-WMC, 2021 WL 1784661, at *10 (W.D. Wis. May 5, 2021). In *Johnson*, the plaintiff attempted to raise negligence *per se* claims based on violations of the FDCA. The Court found that a state law claim based on violations of a federal statute was preempted because it was "based solely on some alleged violation of the FDCA or its implementing regulations." *Id.*; *In re Bard IVC Filters Products Liab. Litig.*, CV-16-00893-PHX-DGC, 2018 WL 3586404, at *10 (D. Ariz. July 26, 2018) (finding negligence *per se* claim based on violations of the FDCA preempted by federal law). Here, Plaintiff's negligence *per se* claims are based on Guardian's purported violations of two federal laws, the GLBA and the FTC Act, and are therefore preempted by federal law.

***d. Plaintiff's Claims Are Barred by the Economic Loss Doctrine***

The economic loss doctrine provides that a purchaser of a product cannot recover in negligence for damages that are solely "economic" in nature. *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 400, 573 N.W.2d 842, 845 (1998). Economic loss includes "damage based on insufficient product value," "the difference in value between what is given and received" or "loss of bargain – the difference between the value of what is received and its value as represented." *Id.* at 400-01.

Here, the economic loss rule applies because Plaintiff alleges that he purchased products from Guardian and that he suffered economic losses in that he did not receive the benefit of his bargain. Plaintiff alleges that he has "a Guardian debit card" and uses Guardian's "online banking portal." (Dkt. 19, ¶¶ 129-130). He alleges that as a result of Guardian's conduct, he: "paid Guardian

for financial services . . . [but] Plaintiff did not receive the privacy and security protections for which he paid;" and that he suffered a "lost benefit of the bargain." (*Id.*, ¶ 145(d), (k)). Plaintiff alleges he was a commercial purchaser of a debit card and other financial products, and that he suffered economic losses in the form of a difference in value between what he paid for and received, and a lost benefit of his bargain. This implicates the economic loss doctrine. *See In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, 14–MD–2586 ADM/TNL, 2018 WL 1189327, at *14 (D. Minn. Mar. 7, 2018) (dismissing data breach negligence action pursuant to economic loss doctrine); *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 794 (W.D. Wis. 2019) ("[T]he economic loss doctrine has been applied to dismiss negligence claims in several data breach cases across the country.").

***e. Plaintiff Pleads No Viable Injury as Courts Routinely Reject Claims for the Purported Damages Plaintiff Seeks***

Plaintiff's negligence claims also fail because he does not plead any actual injury. A plaintiff must plead "actual loss or damage resulting from the" alleged negligence. *Hoida, Inc.*, 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 302. "Money out of pocket is a standard understanding of actual damages." *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 830 (7th Cir. 2018).

Here, Plaintiff pleads a laundry list of alleged injuries, none of which constitute actual damages. He alleges generally a "loss of privacy," that "Guardian benefited from" his information, that he receives "targeted advertisements" on Facebook; that he did not receive the benefit of his bargain; the "decreased value" of his personal information, emotional distress, and an increased risk of future harm. (Dkt. 19, ¶ 127). None of these are sufficient.

Plaintiff's vague "loss of privacy" is not an actual harm. In *Archey v. Osmose Utilities Services*, Inc., 20-CV-05247, 2021 WL 3367156, at *3 (N.D. Ill. Aug. 3, 2021), the Court dismissed a claim requiring the plaintiff to plead "actual damages" because he "fail[ed] to allege

a specific monetary loss or that his personal information was misused." The Court found that allegations of a future "risk of misuse of his personal data" and "time needed to set things straight," were insufficient to plead actual damages. *Id.*; *see Remijas v. Neiman Marcus Group*, LLC, 794 F.3d 688, 695 (7th Cir. 2015) (finding no concrete harm for "loss of [the plaintiffs'] private information."). Plaintiff's claim that Guardian benefitted from his information fares no better. In *Silha v. ACT, Inc*., 807 F.3d 169, 174 (7th Cir. 2015), the Court held that an injury "cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss." Plaintiff's apparent receipt of targeted advertisements also is not an injury because this is not an out-of-pocket loss, but a mere inconvenience. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 898 (C.D. Cal. 2024) (allegations of "loss of privacy" and "targeted advertising they did not ask for" were "too vague and conclusory to survive."). Nor can Plaintiff establish damages from the alleged risk of future harm, or his apparent lost benefit of the bargain. In *Dinerstein v. Google, LLC*, 73 F.4th 502, 513 (7th Cir. 2023), the Court found that the plaintiff's allegations of "future risk" in a data breach case were "speculative and implausible" and therefore could not constitute a basis for harm. The Court also rejected the plaintiff's damages theory that he was "deprived of the full benefit of his bargain" because he did not get what he had paid for, finding such allegations "implausible" because there was no discrete, separate fee paid for data security. *Id.* at 517.

Emotional distress damages are also not viable, as Wisconsin law only permits recovery for mental distress in negligence cases "when there is an accompanying or resulting physical injury." *Anderson v. Cont'l Ins. Co*., 85 Wis. 2d 675, 694, 271 N.W.2d 368, 378 (1978); *Alsteen v. Wauleco, Inc*., 2011 WI App 105, ¶ 24, 335 Wis. 2d 473, 487, 802 N.W.2d 212, 219 (recovery for emotional distress requires an "actual injury," and can only stand alone where "severe emotional distress *is the actual injury*." *Id.* at 486-87 (emphasis in original). No such injury is alleged here.

Finally, Plaintiff cannot recover for the "value" of his information because it had no marketable value. *See, e.g.*, *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 149 (3d Cir. 2015) (finding plaintiffs did not establish any loss because "they do not allege that they sought to monetize information about their internet usage, nor that they ever stored their information with a future sale in mind."); *Remijas*, 794 F. 3d 695 (finding no injury where there was no allegation "that the plaintiffs could sell their personal information for value."). Plaintiff has not alleged any viable harm. He alleges only conclusory and vague statements that do not constitute "actual damages" under the law.

## IV. PLAINTIFF'S BREACH OF EXPRESS AND IMPLIED CONTRACT CLAIMS (COUNTS VI AND VII) FAIL

### *a. Privacy Policies Are Not Contracts*

Plaintiff's breach of express contract claim is predicated on Guardian's privacy policy, but that policy is nothing more than a statement available to all of its website visitors about its existing legal obligations and policies. The GLBA provides that a financial institution "shall provide a clear and conspicuous disclosure to such consumer . . . of such financial institution's policies and practices with respect to – (1) disclosing nonpublic personal information to affiliates and nonaffiliated third parties, consistent with section 6802 of this title, including the categories of information that may be disclosed; . . . (3) protecting the nonpublic personal information of consumers." 15 U.S.C. § 6803(a). Because privacy policies such as those required by the GLBA "serve to inform patients of their rights under federal law and the duties imposed on healthcare providers by these statutory provisions, they are not contractual in nature." *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1092 (W.D. Wash. 2024); *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1200 (D.N.D. 2004) ("[B]road statements of company policy do not

generally give rise to contract claims. As such, the alleged violation of the privacy policy at issue does not give rise to a contract claim.").

Guardian's privacy policy complies with the GLBA by outlining exactly what the statute requires – Guardian's policies and practices with regards to disclosing customer's nonpublic personal information, and the steps taken to protect that information. Because Guardian's privacy policy is merely a broad, public-facing statement of its policies in compliance with the GLBA, it does not form a contractual relationship.

***b. No Consideration Exists to Support a Contract***

Plaintiff's express and implied contract claims fail because any purported contract is unsupported by consideration. In *In re Banner Health Data Breach Litig.*, CV-16-02696-PHX-SRB, 2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017), the Court found that a privacy policy promising to keep patients' information secure "cannot be read as a promise to do anything above and beyond what is already required by law," and therefore "this promise is simply not supported by consideration because Defendant was already under a preexisting legal duty to protect Plaintiff's information." *Id.*; *see Nienaber*, 733 F. Supp. 3d 1072, 1092 (W.D. Wash. 2024) (finding no implied contract because "Defendant[ is] required by law to adhere to HIPAA without receiving any consideration from Plaintiff[ ] or any other patient, [therefore] these provisions cannot create contractual obligations.") (citations omitted); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 53 (D. Ariz. 2021) (dismissing implied contract claim predicated on the terms of a privacy policy because the plaintiffs "do not suggest any promise beyond Magellan's legal obligations" and "without more, there is no consideration between Plaintiffs and Magellan.").

Here, Plaintiff attempts to assert contract claims against Guardian based on Guardian's purported promise to comply with its own privacy policy that outlines its obligations under federal law. Such a promise is devoid of consideration. Plaintiff's claim should be dismissed.

### *c. Plaintiff Fails to Allege any Breach of Contract or Damages*

Even if the privacy policy did form an express or implied contract between the parties, Plaintiff still has no claim because he has not plausibly alleged a breach. As discussed above, the privacy policy explicitly discloses the activity the pixels are used for. (Dkt. 19, ¶ 105, Ex. A and B thereto; *see supra* pp. 2-3). The allegations of the FAC establish that Guardian did exactly what the privacy policy says it is permitted to do. The pixels "collect anonymous statistics" such as "the pages visited" and click activity, and "none of [this information] is associated with you as an individual." (*Id.*). The screenshots confirm this, showing no identifying information or any visitor-inputted information being tracked. Because Guardian complied with its privacy policy, Plaintiff has no claim for breach of contract.

Further, damages are an essential element of a breach of contract claim. *Pagoudis v. Keidl,* 2023 WI 27, ¶ 12, 406 Wis. 2d 542, 554, 988 N.W.2d 606, 612. For the reasons stated in Section III.e above, Plaintiff has not established any actual, pecuniary harm to support his contract claims. (*See supra* pp. 24-25).

## V. PLAINTIFF CANNOT PLEAD UNJUST ENRICHMENT (COUNT VIII) BECAUSE HE INCORPORATES ALLEGATIONS OF A CONTRACTUAL RELATIONSHIP AND FAILS TO ALLEGE ANY BENEFIT CONFERRED ON GUARDIAN

A party cannot recover under a contract and for unjust enrichment. *Greenlee v. Rainbow Auction/Realty Co.*, 202 Wis. 2d 653, 671, 553 N.W.2d 257, 265 (Ct. App. 1996). Nor can a plaintiff plead unjust enrichment in the alternative when he incorporates his breach of contract allegations into the unjust enrichment count. *Domann v. Summit Credit Union*, 18-CV-167-SLC, 2018 WL 4374076, at *8 (W.D. Wis. Sept. 13, 2018). Here, Plaintiff alleges throughout his FAC the existence of a contract between him and Guardian, and his unjust enrichment claim

incorporates all preceding paragraphs, including his breach of contract claims. (Dkt. 19, ¶ 248). As such, his unjust enrichment claim should be dismissed.

Plaintiff also cannot meet the elements of unjust enrichment. Unjust enrichment requires a plaintiff to plead "(1) a benefit conferred by the plaintiff to the defendant; (2) defendant's knowledge of the benefit; and (3) it would be inequitable for defendant to retain the benefit without paying its value." *Linman*, 2023 WL 2562712 at *6. A "benefit" means a "monetary benefit conferred upon a defendant." *Id.* Sharing personally identifiable information does not give rise to an unjust enrichment claim because it does not confer a monetary benefit. *Id.* In *Linman*, the Court dismissed an unjust enrichment claim in a data privacy case on the grounds that the plaintiff did not allege that the defendant profited from his personal information or that the information had any value. *Id.*; *Reetz v. Advocate Aurora Health, Inc.,* 2022 WI App 59, ¶ 29, 405 Wis. 2d 298, 326, 983 N.W.2d 669, 683 ("Unjust enrichment generally refers to a monetary benefit conferred upon a defendant and here, the facts alleged fail to show that there was a monetary benefit to Aurora such that it would have unjust enrichment if it did not protect Reetz's [personally identifiable information].").

Plaintiff's conclusory allegation that he "conferred a monetary benefit" unto Guardian is insufficient as a matter of law. Merely providing information to Guardian for a debit or credit card application does not confer any monetary benefit on Guardian to support unjust enrichment.

## VI. PLAINTIFF'S WISCONSIN WIRETAPPING CLAIMS (COUNTS XII AND XIII) AND FEDERAL WIRETAPPING CLAIMS (COUNTS XIV AND XV) FAIL BECAUSE GUARDIAN WAS A PARTY TO THE ALLEGED COMMUNICATIONS

Plaintiff attempts to assert claims under the Wisconsin and federal wiretapping statutes, alleging that Guardian, through the use of pixels, unlawfully intercepted his communications with Guardian's website. Plaintiff's claims fail as a matter of law.

The Wisconsin wiretapping statute does not apply "where a person is a party to the communication . . . unless the communication is intercepted for the purpose of committing any criminal or tortious act . . ." Wis. Stat. § 968.31(2)(c). Section 2511 of the Electronic Communications Privacy Act ("ECPA") is identical to the Wisconsin wiretapping statute, including that it "shall not be unlawful" to intercept a communication "where such person is a party to the communication . . . unless such communication is intercepted for the purpose of committing any criminal or tortious act . . ." 18 U.S.C. § 2511(2)(d).

Here, Guardian was a party to the alleged communications made via its website, and is therefore exempt from the statute. Not only that, but by Guardian making its privacy policy available to Plaintiff on its website, Plaintiff consented to any alleged "interception." *See, e.g.*, *Popa v. Harriet Carter Gifts, Inc.*, 2:19-CV-450, 2025 WL 896938, at *5 (W.D. Pa. Mar. 24, 2025) ("The Privacy Statement provides sufficient information to alert a reasonably prudent visitor to the Harriet Carter website of the critical issue for a WESCA claim—that third parties, like NaviStone, may collect data relating to the visitor's conduct on the website.").

Plaintiff alleges that the "crime-tort" exception applies because Guardian intercepted the "communications" for the purpose of committing a criminal or tortious act via the disclosure of those communications to third parties. (Dkt. 19, ¶¶ 284, 323). Not so. Courts have consistently held that the crime-tort exception does not apply in pixel cases since the alleged interception and disclosure occurs simultaneously and therefore there is no independent tortious act. In *Nienaber*, the Court dismissed wiretapping claims in a pixel case and rejected the argument that the disclosure to third parties was an independent act that implicates the crime-tort exception. 733 F. Supp. 3d at 1095. There, the Court reasoned that the alleged "transmission of communications to third parties like Facebook" was part and parcel with the interception, and that the exception cannot apply

where the criminal or tortious act "is the alleged wiretapping itself." *Id.* Similarly, in *Okash v. Essentia Health*, CV 23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024), the Court dismissed wiretapping claims regarding the use of the "Meta pixel," holding that "the simultaneous interception and disclosure of information to Meta" does not implicate the crime-tort exception because there must be an independent tortious act separate in time from the wiretapping itself. The Court in *T.D. v. Piedmont Healthcare, Inc.*, 1:23-CV-5416-TWT, 2024 WL 5284883, at *4 (N.D. Ga. Dec. 10, 2024), reached the same conclusion. There, the Court held that the crime-tort exception cannot apply because there was no distinct act separate from the wiretapping, as the "third parties in question included Facebook, and the transmission occurred simultaneously with interception via the Meta Pixel."

Plaintiff's claims here are identical to the above cases. He alleges that the tracking pixels immediately disclosed all of Plaintiff's activity to the third parties. (Dkt. 19, ¶ 38 ("[W]hen Plaintiff and Class Members visited Defendant's Websites and communicated their Personal and Financial Information, that information was ***simultaneously*** intercepted and transmitted to the Third Parties.") (emphasis added); *id.*, ¶ 34 ("When an individual accesses a webpage containing online tracking technology from a Third Party, the trackers ***instantaneously*** and surreptitiously duplicate communications with that webpage and send them to the Third Party.") (emphasis added)). Because the purported tortious acts are not independent from the interception itself, the crime-tort exception cannot apply, and Plaintiff cannot state a claim.

Courts have also held that the crime-tort exception does not apply where the defendant's motivation was to make money. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("[T]he crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously."); *T.D.*,

2024 WL 5284883 at *4 (finding that use of pixels for marketing and advertising purposes does not implicate crime-tort exception because the purpose is to make money, not to injure the plaintiff).

Here, Plaintiff's FAC alleges that Guardian's purpose for using the pixels was for advertising and marketing, not for criminal or tortious means. (Dkt. 19, ¶ 5) ("Guardian utilized data from trackers to improve and to save costs on its marketing campaigns, improve its data analytics, attract new customers, and generate sales."); ¶ 39 ("The Third Party trackers . . . only purpose is to collect information to be used for the Third Party and fourth parties' marketing and sales purposes."); ¶ 93 (alleging that trackers are used for "marketing and profit purposes."); ¶ 324 (alleging use of trackers to "increase [Guardian's] profit margins and save on marketing costs."). *See Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere."). Plaintiff's wiretapping claims should be dismissed, with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant, Guardian Credit Union, respectfully requests that the Court grant its Motion to Dismiss and dismiss all counts of the Amended Complaint filed by Plaintiff, David Gassman, and grant such other and further relief that the Court deems just and equitable.

Dated: June 9, 2025

Respectfully submitted,

By: */s/ Corey T. Hickman*
Corey T. Hickman

*Attorney for Defendant*
*Guardian Credit Union*

Amber C. Coisman (Wis. Bar. No. 1102371)
Melissa A. Siebert
Corey T. Hickman
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
T: (312) 474-4490
F: (312) 300-5645
acoisman@cozen.com
msiebert@cozen.com
chickman@cozen.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on June 9, 2025, I electronically filed the foregoing **Memorandum of Law in Support of Rule 12(b)(6) Motion to Dismiss Amended Complaint** with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

*/s/ Corey T. Hickman*
Corey T. Hickman