**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| DAVID GASSMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GUARDIAN CREDIT UNION,<br><br>Defendant. | Case No. 2:25-CV-00176<br><br>PLAINTIFF'S RESPONSE TO MOTION TO DISMISS<br><br>FEDERAL RULE 12<br><br>CIVIL LOCAL RULE 7.1 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS COMPLAINT**

## INTRODUCTION

Defendant Guardian Credit Union ("Guardian" or "Defendant") purposefully installed third-party trackers on its website without customer consent. When customers like Plaintiff visited Defendant's website, the trackers secretly recorded the following customer confidential financial communications with Defendant:

- IP address
- Browser fingerprint
- Status as new members
- Details about the banking product selected
- Features chosen for accounts
- Agreement to the application pre-disclosures
- Beneficiary information
- Co-applicant information
- How new accounts are funded
- Banking portal and portal registration information
- Credit card application details like the purpose of application, the specific credit card selected, co-applicant information, and whether disclosures required for the application were agreed to.

Defendant used this information for its own benefit and then disclosed it to third parties, like Google and LinkedIn, without customer consent.

Defendant tries to avoid these allegations by arguing that the tracked information that was disclosed didn't identify the Plaintiff. This is an improper tactic on a motion to dismiss, but in any event, it's wrong. As detailed below, the tracked and disclosed information is easily linked to an individual. In fact, Plaintiff's consulting expert had his information tracked and disclosed to Google after investigating Defendant's website as evidenced by an activity report he obtained from Google that reported he visited Defendant's vehicle loan application page shortly after he did so.

"A bank owes its customers a duty of care in the handling of their accounts, and a duty of confidentiality in not disclosing information to third parties." *N. Tr. Co. v. Peters*, 69 F.3d 123, 130 (7th Cir. 1995) (internal citation omitted). "It is the policy of the Congress that each financial

institution has an affirmative and continuing obligation ... to protect the security and confidentiality of its customers' nonpublic personal information." *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 739 (7th Cir. 2016) (quoting 15 U.S.C. § 6801(a)). Defendant completely disregarded its customers' rights and expectations of privacy, and its own promises of privacy, and instead used trackers to record and send a wealth of Plaintiff's confidential personal and financial information to third parties. Defendant now tries to excuse its behavior by expressing indignance at the number of claims and attacking the proof.

As it has no real way of combatting Plaintiff's claims, Defendant baselessly accuses Plaintiff of engaging in "sanctionable" litigation conduct for asserting claims it calls "frivolous" or "baseless." This accusation is false. Plaintiff's allegations are grounded in specific factual pleadings, supported by technical analysis, and consistent with a growing body of case law that recognizes legal harms arising from unauthorized third-party data tracking and disclosure. The Amended Complaint plausibly alleges that Guardian embedded third-party tracking tools on its website, which captured and transmitted users' personally identifiable financial information – including data covered by the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 *et seq.* ("GLBA")—to entities like Google and LinkedIn, without consent. These facts, if true, violate duties imposed by common law, federal statutes, and Wisconsin statutory law. Guardian's sweeping accusations of misconduct are a transparent attempt to deflect from the gravity of its own data practices and to chill legitimate consumer protection claims at the pleading stage. They should be rejected. Plaintiff alleged multiple viable causes of action, and Guardian's motion should be denied in its entirety.

In similar contexts involving the unauthorized access and distribution of confidential information via online tracking technologies, courts in the Seventh Circuit, and across the country

all agree—claims like Plaintiff's are legally valid.[1] For example, one of the largest banks in the country, Capital One, is facing these very claims in another Court. Under those identical factual allegations, the Court in the Capital One case denied the motion to dismiss and allowed claims just like those here to proceed. Defendant presents no valid legal reason why Plaintiff's claims should be dismissed. Plaintiff sufficiently stated his claims. Defendant failed to meet its heavy burden, and this Court should deny Defendant's motion to dismiss in its entirety.

**FACTUAL ALLEGATIONS**

Guardian operates as a trusted financial services provider. Amended Class Action Complaint, DE 19 ("FAC"), ¶¶ 19, 25-32. Plaintiff is Guardian's customer and has used Guardian's services, including its online banking portal. *Id.* ¶¶ 113-27. Plaintiff reasonably expected that the highly sensitive personal and financial information he shared with Guardian was confidential and would not be disclosed to or intercepted by third parties. *Id.* ¶¶ 6, 8, 79-81, 119. That expectation was bolstered by Guardian's express promises to "respect[] your right to

[1] *See, e.g.*, *Mrozinski v. Aspirus, Inc.*, Wisc. Cir. LEXIS 11 (Wisc., Cir. Ct. April. 18, 2024) (medical tracking case); *Brahm v. Hospital Sisters Health System, et al.*, 2024 WL 3226135 (W.D. Wis. June 28, 2024) (same); *Kurowski et al. v. Rush*, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ("*Kurowski IV*") (same); *Stein, et al., v. Edward-Elmhurst Health*, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ("*Elmhurst*") (same); *Kurowski v. Rush Sys. for Health*, , 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (same); *A.D., et al., v. Aspen Dental Management, Inc.*, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) (same); *Smith, et al. v. Loyola University Medical Center*, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ("*Loyola*") (same); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Kurowski II*") (same); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ("*Kurowski I*") (same); *Hartley v. University Of Chicago Medical Center, et al.*, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ("*Hartley II*") (same); *see also e.g.*, *Reetz v. Advoc. Aurora Health, Inc.*, 405 Wis. 2d 298, 2022 WI App 59 (Ct. App. 2022) (data breach context) ("*Reetz*"); *Schaefer v. Johnson Financial Grp., Inc.,* 2024 Wisc. Cir. LEXIS 25 (Wis. Cir. Ct. May 6, 2024) (same) ("*Johnson*"); *Linman v. Marten Transp., Ltd.*, 2023 WL 2562712 (W.D. Wis. Mar. 17, 2023) ("*Linman*") (same); *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 796 (W.D. Wis. 2019) (same); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 697 (7th Cir. 2015); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 970 (7th Cir. 2016) (same); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 830 (7th Cir. 2018) (same); *see also* Exhibit A-1 (cases across the country finding same).

privacy," "[s]afeguard members' and site users' information from unauthorized access," and "[m]aintain the confidentiality of member information which you provide to us." *Id.* ¶ 83; *see also id.* ¶¶ 79-96. But Guardian allows third parties (and fourth parties) uninvolved in providing financial services to obtain customers' Nonpublic Personal Information and Personally Identifiable Financial Information (together, "Personal and Financial Information") without their authorization or consent. *E.g., id.* ¶¶ 1, 79. Guardian uses "trackers" that it knowingly configured and implemented into its online services. *Id.* ¶¶ 3, 4, 44. The trackers collected and transmitted Plaintiff's Personal and Financial Information to unauthorized third parties, including Google, LinkedIn, LinkedIn, Qualtrics, and Adnxs without consumers' knowledge or authorization. *Id.* ¶ 1. The disclosed information was then used to benefit Guardian and third parties' bottom line through targeted advertisements and for other profiteering purposes unrelated to Guardian's provision of financial services. *Id.* ¶¶ 4, 33-78.

The third parties, in turn, sold Plaintiff's Personal and Financial Information to fourth parties. *Id.* ¶¶ 5, 32, 79. As a direct result of Guardian's mishandling of his personal and financial information, Plaintiff suffered numerous injuries, including, *inter alia*, invasion of privacy; monetary damages; receipt of inappropriate and unwanted advertisements; loss of the benefit of his bargain with Guardian; diminution in value of personal and financial information; lost time and money to mitigate and remediate the effects of targeted advertisements caused by Guardian's negligence; fear, anxiety, and worry about the status of his personal financial information; an increased risk of future harm; and a loss of control over the information due to the unauthorized access by third and fourth parties and the improper disclosure of such information, all for Guardian's profit. *Id*. ¶ 127. In sharing Plaintiff's confidential information, Guardian eroded the essential confidential nature of the parties' relationship; took something of value from Plaintiff

and derived benefit therefrom; and diminished the information's value. *Id.* ¶¶ 250, 322.

## STANDARD

While Defendant fails to set forth a standard for the Court, it appears to be moving under Federal Rule of Civil Procedure 12(b)(6). On a motion under that rule, courts must consider not whether a complaint's factual allegations are true, but rather whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 827 (7th Cir. 2015). In other words, the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and draw all reasonable inferences in the plaintiff's favor." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqba*l, 556 U.S. 662, 678 (2009). "It is the defendant's burden to establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

## ARGUMENT

### A. The Complaint Plainly Alleges That Trackers Tracked and Disclosed Plaintiff's Personally Identifiable Information.

*i. Defendant's challenge to the Complaint's well-pleaded facts is improper.*

Ignoring the Rule 12 standard, Defendant boldly opens its brief with a *factual* argument, stating that the *proof* does not show Plaintiff's actual identity was disclosed. *See* Defendant's Memorandum in Support of its Motion to Dismiss ("MTD") p.7 (arguing Plaintiff "has no evidence to backup his allegations"). But the question on a motion to dismiss is not what the "proof" may or may not show but rather what the Complaint alleges. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 827 (7th Cir. 2015). Here, Plaintiff alleges that Defendant's website includes trackers that share his *Personally Identifying* Information, including his IP address, browser fingerprint, individual user cookies, credit card application information, and co-applicant information with

unauthorized third parties. FAC, e.g., ¶¶ 130, 138-42. These allegations, and drawing all inferences in their favor, support that Plaintiff's personally identifying information was tracked and disclosed.

"An IP address is a unique address that identifies a device on the Internet." *State v. Baric*, 384 Wis. 2d 359, 365 (Ct. App. 2018) (citation omitted). "Browser fingerprinting... uniquely identif[ies] you.'" FAC ¶ 40, n.25. Plaintiff thus pleads that the trackers on Defendant's website "record events that include data such as users' IP addresses, cookies, and browser fingerprints,...*which information can be used to identify specific users*." *Id.* ¶ 41 (emphasis added); *see also id.* ¶¶ 40, 50, 108. In an attempt to avoid these well-pleaded allegations, which must be accepted as true, and without any expert support, Defendant asks this Court to analyze the website code contained in certain screenshots, arguing "[n]othing unique to Plaintiff is shown." MTD p. 5. There are myriad problems with this. The first is that the meaning of this code requires expert analysis, and Plaintiff is not required at the pleading stage to present definitive proof that any specific information was displayed in plaintext in the developer console. Rather, he must only allege facts that plausibly support a claim for relief. *See Iqbal*, 556 U.S. at 678. The Amended Complaint does exactly that: it explains how the trackers work, describes what information was collected, and supports those descriptions with illustrative code snippets and screenshots. Wisconsin courts have routinely accepted similar technical allegations—often supported by the very same developer tools and tracker behavior—at this stage. *See Brahm*, 2024 WL 3226135. Defendant's attempt to impose a higher standard of evidence is inconsistent with Rule 12.

Second, Defendant's argument is just wrong. First, the selected screenshots are examples and do not show everything alleged in the Amended Complaint. Rather, the Amended Complaint explicitly includes selected screenshots to depict selected allegations, specifically, to depict allegations of what specific "events" are sent to specific trackers (Am. Compl. ¶¶ 52(a), 52(b), 54-

56, 58-59, 67-70, 72-74, 78-79, 81-83.) The fact of Personally Identifying Information being transmitted is separately alleged after the screenshots (Am. Compl. ¶¶ 65, 75, 84), not upon the screenshots. Moreover, Defendant's argument is a claim that absence of evidence is evidence of absence. This classic logical fallacy merits no consideration. That Plaintiff included some proof of his investigation and not full screenshots of every fact alleged in no way defeats his claim. Likewise, the absence of Plaintiff's name in these screenshots *does not* prove that Plaintiff's Personally Identifying Information was not disclosed. Again, Plaintiff, not Defendant, is entitled to the benefit of favorable inferences from the allegations.

Third, Defendant is factually wrong. The trackers at issue identify users through a combination of IP addresses, browser fingerprinting, and tracking cookies. While the precise mechanisms differ among vendors, user identification is fundamental to the function of all marketing trackers. It is not possible to deliver targeted advertising or retargeting without first establishing a persistent user identity. Indeed, even though expert analysis is not properly presented at the Motion to Dismiss stage, Defendant's unfortunate tactic of dabbling in it at this juncture necessitates rebuttal. Indeed, in order to rebut these improper factual assertions made by Defendant, Plaintiff's consulting expert viewed Defendant's vehicle loan application and then checked his Google Activity report and it shows that he visited the page. This confirms that Google can specifically identify users that submit applications on Defendant's website. Plaintiff's consulting expert further illuminates the analysis as follows.

First, IP addresses and browser fingerprinting, as discussed above, can be used by all companies that obtain tracked information to identify individuals. Second, Guardian is using Google Marketing platform and events from analytics.google.com that contain the following cookies: __Secure-3PAPISID, __Secure-3PSID, __Secure-3PSIDTS, __Secure-3PSIDCC, and

NID. At least some of these cookies are likely used to identify users. *See* https://business.safety.google/adscookies/. The LinkedIn events include the following cookies: AnalyticsSyncHistory, UserMatchHistory, _guid, bcookie, lang, li_sugr, liap, lidc, lms_ads, lms_analytics. Of these cookies the _guid, bcookie, li_sugr, liap, UserMatchHistory, lms_ads, lms_analytics are all used by LinkedIn to identify users. *See* https://www.linkedin.com/legal/l/cookie-table. Once a user navigates to the application on meridianlink.com, a DoubleClick tracker becomes active, and it includes the DSID and IDE cookies. Both of these cookies are used by Google to identify users as well. *See* https://business.safety.google/adscookies/. Adnxs events include the anj, icu, uids, usersync, and uuid2 cookies. At least some of these cookies are likely used to identify users. *See* https://www.theguardian.com/technology/2012/apr/23/adnxs-tracking-trackers-cookies-web-monitoring. Defendant's argument about what the "proof" purportedly shows falls far short of meeting its burden and simply exemplifies just why this case must proceed to discovery and fulsome expert analyses.

*ii. The Complaint sufficiently alleges that Defendant shares "personally identifiable information."*

Accepting the Complaint's well-pleaded facts as true, as the Court must on this motion, Defendant's argument that it did not disclose any personally identifiable information fails. As Defendant admits, "personally identifiable information" is information that is "able to *identify* a particular individual." MTD p. 5 (emphasis original). Wisconsin courts and other courts in the 7th Circuit have held as a matter of law that IP addresses are sufficient to identify consumers. *See*, *e.g.*, *Baric*, 384 Wis. 2d at 365 ("An IP address is a unique address that identifies a device on the Internet."); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 245 (N.D. Ill. 2011) ("individual users must transmit identifying information in the form of their Internet Protocol ('IP')

addresses…"). Indeed, that is why IP addresses are universally recognized as sufficiently identifying information to support criminal warrants, indictments, and convictions. *See*, *e.g.*, *United States v. Niggemann*, 881 F.3d 976, 978 (7th Cir. 2018).

The GLBA also specifically recognizes that information collected through cookies are personally identifiable financial information. GLBA, 16 C.F.R. § 313.3(o). Likewise, the Western District of Wisconsin recently recognized in an analogous context that "personally identifiable information" includes "information [that] *can be used* to identify a person, not just that...identifies a person on its own...even if it must be combined with other information to identify the individual." *Manza v. Pesi, Inc.*, 2025 WL 1445762, at *4–5 (W.D. Wis. May 20, 2025) (citations omitted). Therefore, IP addresses, the information collected by cookies, and browser fingerprints constitute personally identifiable financial information under the GLBA and Defendant's argument to the contrary is factually and legally baseless. Defendant thus resorts to labelling Plaintiff's allegations that he is a user of LinkedIn and Facebook and received targeted advertisements on those platforms "arbitrary" and "speculative." *Id.* at 7. But Plaintiff pleads extensive facts connecting the targeted advertisements to Defendant's unauthorized disclosure of his Personal and Financial Information when he alleges Defendant disclosed his information to third parties including Google and LinkedIn, and that Google shares user data with Facebook such that advertisements on Facebook may reflect information collected via a Google tracker. FAC ¶¶ 1, 88-89. Under the familiar 12(b)(6) standard, the Court must "accept all well-pleaded facts as true, and draw all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. It is a plausible inference from these allegations that Google shared Plaintiff's data with Facebook, who used that information to target ads at Plaintiff. The Complaint plainly alleges that Defendant shared Plaintiff's personally identifiable information. Defendant's motion should be denied.

## B. Plaintiff's Claims are Validly Stated

### *i. Plaintiff sufficiently alleged Invasion of Privacy*

Defendant contends that Plaintiff failed to demonstrate that the disclosure of his Personal and Financial Information was public and highly offensive to a reasonable person. MTD pp. 9-10. Not true. As Defendant itself admits, Wisconsin courts have regularly found public disclosure of private facts when a defendant discloses a plaintiff's private information to either a large group of people *or* the public at large. *Id*. at 9. That is precisely what Plaintiff here is alleging; Defendant utilized invisible pixel trackers to disclose Plaintiff's Personal and Financial Information to third parties, including the massive platforms of Google and LinkedIn. FAC ¶¶ 40-44, 62-111.

Defendant cites no relevant case law suggesting disclosure to these large conglomerates does not constitute a public disclosure. Indeed, Wisconsin courts have consistently found the opposite. *See e.g. Brahm*, 2024 WL 3226135, at *3-4 (finding allegations that defendant disclosed private information via pixel trackers to unauthorized third parties, including Google and LinkedIn, to be sufficient at the pleadings stage); *see also Hillman v. Columbia Cty*, 164 Wis. 2d 376, 395, 474 N.W.2d 913, 920 (Ct. App. 1991) (internal citations omitted). Taken in the light most favorable to the Plaintiff, it is clear that the element of public disclosure has been met.

Next, Defendant argues that the types of Personal Information disclosed to third parties like Facebook and LinkedIn are not embarrassing enough to be highly offensive to a reasonable person. MTD p. 9-10. However, information need not be embarrassing for its disclosure to be highly offensive. *See Mosley v. Oakwood Lutheran Senior Ministries,* 2023 WI App 44, 409 Wis. 2d 93, 995 N.W.2d 494 (noting potential for embarrassment could demonstrate privacy sufficient to qualify as highly offensive). Even if embarrassment is a requirement (it is not), Plaintiff has extensively alleged that Defendant disclosed Plaintiff's identity, financial information, status as a members, the banking products they selected, the features of their accounts, whether they had

beneficiaries or co applicants, and how they decided to fund their new accounts to these social media conglomerates without Plaintiff's authorization. FAC ¶¶ 40-43, 62-111, 124. These allegations are sufficient. *See Doe v. Saftig*, 2011 U.S. Dist. LEXIS 50713, *46 (E.D. Wis. May 11, 2011) (noting disclosure of financial information may reasonably be considered highly offensive, "extreme and outrageous"). *Mosley*, cited by Defendant, is easily distinguishable, as the court there found defendant employer's disclosure of plaintiff's positive COVID-19 test at the height of the pandemic was not something a reasonable person would find highly offensive. 2023 WI App 44 at ¶ 31. These facts are easily distinguishable from those here, which involve a financial service provider surreptitiously collecting its customer's Personal and Financial Information and disclosing said information to third parties without prior consent in order to boost its own profits. *See Brahm*, 2024 WL 3226135, at *7 (rejecting *Mosley* and declining to dismiss privacy claim).

Defendant fails to meet its burden and its motion should be denied.

*ii. Plaintiff sufficiently alleged Conversion and Trespass to Chattels*

Defendant converted Plaintiff's Personal Information when it tracked, captured, and bartered the Personal Information to Google and LinkedIn for profit. FAC ¶¶ 5, 30-31, 60-112. Defendant misstates the law when it says Wisconsin has confined conversion claims to only those involving "tangible, and moveable property." MTD p. 10. Wisconsin law holds that defendants convert "intangible" property like money and software when they take it without consent. *Methodist Manor of Waukesha, Inc. v. Martin*, 2002 WI App 130, 255 Wis.2d 707 (Ct. App. 2002) ("the thing that the defendant diverts to their or their own use need not[...] be a chattel; money may also be converted."). Indeed, a conversion claim's elements apply to "property," not just "chattel." Those elements include: (i) "intentional control or taking of property belonging to another;" (ii) without that owner's consent; and (iii) resulting in "serious interference with the rights of" the owner. *H.A. Friend & Co. v. Professional Stationery, Inc.*, 294 Wis. 2d 754, 763, 2006 WI App

141 (Wis. App. 2006). Wisconsin courts apply these elements to property like that here.

Here, Defendant converted Plaintiff's Personal Information without his consent, resulting in a "serious interference of"—or dominion over—his property. As Plaintiff explained in his complaint, Defendant has dominion over Plaintiff's property as its servers control his information. *See, e.g.*, FAC ¶¶ 3, 220-227. Defendant's interference continues to this day, as Plaintiff does not possess his data and Defendant has otherwise transferred it to third parties. Thus, Defendant has failed to meet its burden. Its motion must be denied.

*iii. Plaintiff sufficiently alleged Bailment*

A bailment is created by the delivery of personal property from one person to another to be held for the benefit of the bailee, the bailor, or both, under an express or implied contract. *Yao v. Chapman*, 287 Wis. 2d 445, 458, 2005 WI App 200 (Ct. App. 2005). A bailment can be for safekeeping, lasting indefinitely, and a gratuitous bailment does not require a contract or an actual meeting of the minds. Defendant argues that it never had exclusive possession of Plaintiff's Personal and Financial Information. But Plaintiff alleges Defendant installed a tracking device on its website. FAC ¶¶ 1-2. This tracking device collected his data and transmitted it back to Defendant's server. *Id.* ¶ 34. At that point, Defendant independently and exclusively possessed Plaintiff's data and stored it on its server. *Id.* Wisconsin law supports just this kind of bailment, even where the bailor retains some control over the property. *See Est. of Cook by Cook v. Gran-Aire, Inc.*, 182 Wis. 2d 330, 340, 513 N.W.2d 652 (Ct. App. 1994) (lessor-lessee relationship creates bailment, even though lessor retains some control over the property).[2]

[2] Other courts have found bailments to exist in identical and similar circumstances as well. *See, e.g., Kane, et al, v. Uni. of Rochester*, 2024 WL 1178340, at *1 (W.D.N.Y. Mar. 19, 2024) (allowing bailment claim under similar circumstances); *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *14 (S.D.N.Y. Mar. 23, 2021) ("[p]aintiffs allege they entrusted their Private Information to defendant for the purpose of obtaining medical care"); *Weisenberger v. Ameritas Mut. Holding Co.*, 597 F. Supp. 3d 1351, 1361 (D. Neb. 2022) ("in this instance, the defendant

Defendant's citation to Indiana law is unavailing. The Southern District of Indiana has found bailments exist in similar contexts; where a defendant held onto personal data subject to a shared understanding that it would remain confidential, and then subsequently exposed it, "[Plaintiffs] need[ed] nothing more to establish a breach of bailment claim." *Krupa v. TIC*, 2023 WL 143140, at *5 (S.D. Ind. Jan. 10, 2023). As the court explained in *Krupa*, once the plaintiff gave the information to defendant, he "was unable to manipulate his personal data on [defendant's] servers; [defendant] was in full control." *Id.* Defendant cannot meet its burden. The motion fails.

*iv. Plaintiff sufficiently alleged Violation of Consumer Act*

A key purpose of the Wisconsin Consumer Act ("WCA") is "[t]o protect customers against unfair, deceptive, false, misleading and unconscionable practices by merchants." *Gable v. Universal Acceptance Corp. (WI)*, 338 F. Supp. 3d 943, 955 (E.D. Wis. Sept. 17, 2018). The WCA "shall be liberally construed and applied to promote" the underlying purpose of the statute. *Parent v. CitiBank (S. Dakota) N.A.*, 2010 WL 2425943, at *2 (E.D. Wis. June 11, 2010) (quoting Wis. Stat. § 421.108). All agreements that fall within the WCA include an obligation of good faith in their performance or enforcement. "Good faith" means *honesty in fact in the conduct or transaction concerned* and the observance of reasonable commercial standards of fair dealing. *Id.* at *7 (quoting Wis. Stat. § 421.108) (emphasis added).

Plaintiff brings his WCA claim under § 423.301, which states no merchant shall "display, publish, distribute or broadcast or cause to be…published, distributed or broadcast, in any manner *any statement or representation* with regard to the extension of consumer credit including the rates, *terms or conditions for the extension of such credit*, which is false, misleading, or deceptive, or

---

affirmatively acted to gather PII—effectively, a 'bailment' for information"); *Bessemer Sys. Fed. Cred. Union v. Fiserv Sols., LLC*, 472 F. Supp. 3d 142, 171 (W.D. Pa. 2020) (finding bailment over "electronic personal identifying information"); *Krupa*, 2023 WL 143140, at *5 (allowing breach of contract under bailment theory).

which *omits to state material information* with respect to the extension of credit…" (emphasis added). Plaintiff alleges that he used Guardian's Website to apply for a credit card, which is an extension of credit, offered by Guardian. FAC ¶¶ 134-35. Plaintiff further alleges that Guardian promised, *inter alia*, that "[o]ur application forms securely collect personal and financial information. The information that we collect on our applications is used only to process your request quickly and accurately. *Id*. ¶ 106. However, Plaintiff pleads that Guardian did the opposite of what it promised and, rather than use his data "only to process" his request, disclosed his Personal and Financial Information to Third Parties without his consent. *Id*. ¶¶ 119, 136-42. Thus, Plaintiff's claim squarely falls under Wis. Stat. § 423.301 in two ways: (1) Guardian's statements about its uses of its customer-applicant's data are false; and (2) the omissions in its disclosures concern material information about its "extension of credit," *i.e*., its applications.

Guardian, without support of any kind, argues that Section 423.301 "plainly applies to misrepresentations regarding a credit transaction itself, not about a website privacy policy." MTD p. 12. This is wrong and misstates Plaintiff's allegations. As above, Plaintiff challenges deceptive statements Guardian made concerning all of its "*applications*," not only its Website's privacy policy. Guardian cannot claim that its Privacy Policy is unrelated to its credit card applications when they specifically and expressly makes promises concerning its credit card applications. FAC ¶ 106. Furthermore, even considering Guardian's statements about its Website alone, its argument fails. Plaintiff pleads that he "used Defendant's Website to apply for a Guardian credit card" and Guardian made misrepresented and omitted information about its Website's properties. These allegations involve the "terms or conditions" for the extension of credit. FAC ¶¶ 97-107, 134-35.

Finally, Guardian argues that no misrepresentation exists in its Privacy Policy, which it characterizes as "truthful." MTD p. 12. This is because, according to Guardian, it does not collect

Financial or Personal Information but instead "merely track[s] websites visited and click activity." MTD p. 13. As above, these assertions are untethered to any expert analysis and plainly conflict with the Complaint's allegations. Defendant's attempt to challenge Plaintiff's factual allegations are inappropriate on a motion to dismiss. *Parent*, 2010 WL 2425943, at *2 ("All facts in the complaint are presumed true until proven otherwise; the complaint must simply state a plausible claim recognized by the law.") (citing *Iqbal*, 129 S.Ct. at 1937). The motion should be denied.

*v. Plaintiff sufficiently alleged a violation of the Wisconsin Wiretap Act*

Guardian's bare-bones argument, that "Plaintiff's claim [for violation of Wisconsin's Wiretap Act] fails because pixels are not 'pen registers'" also misses the mark. Under Wisconsin's wiretapping statute, it is unlawful for any person to "[i]ntentionally intercept[], attempt[] to intercept or procure[] any other person to intercept or attempt to intercept, any wire, electronic or oral communication." Wis. Stat. § 968.31(1)(a). The statute further provides that "[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of [the statute] shall have a civil cause of action against any person who intercepts, discloses or uses, or procures any other person to intercept, disclose, or use, the communication." Wis. Stat. § 968.31(2m). Guardian does not dispute that it intercepted Plaintiff's communications, Wis. Stat. § 968.31. Instead, Guardian asserts that its website is not a "pen register" because it "is not a telephone and it does not dial numbers." MTD p. 13. This argument is unpersuasive.

The Wisconsin Supreme Court has applied the phrase "pen register" to advanced technology such as the stingray, a device that allows police officers to locate a particular cell phone via a directional antenna that sends signals to an electronic serial number. *State v. Tate*, 2014 WI 89, ¶ 9. Accordingly, Wis. Stat. § 968.31 applies to modern technology like the trackers at issue here. Indeed, the Western District of Wisconsin has already recognized that claims challenging the use of Facebook pixels and "embedding tools on [] seemingly private and confidential websites,

[that] automatically rerout[ed] patients' [Personally Identifiable Information] to others for their unauthorized use" state a claim under the wiretapping statute. *Brahm*, 2024 WL 3226135, at *5. The same result follows here. The motion should be denied.

*vi. Plaintiff sufficiently alleged Violation of the Deceptive Trade Practices Act*

Guardian violated Wis. Stat. § 100.18 through its "untrue, deceptive, [and] misleading" representation it would not disclose consumers' Personal and Financial Information to third parties without consent. Wis. Stat. § 100.18; *See* FAC ¶¶ 97-112, 142. Unlike a common law misrepresentation claim, Wis. Stat. § 100.18 does not require Plaintiff to plead or prove "reasonable reliance" or intent to harm. *K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶ 36. Instead, to state a claim, a plaintiff need only plead that (1) the defendant "made a representation" to the public intending to "induce an obligation; (2) the representation was "untrue, deceptive or misleading"; and (3) the misrepresentation caused pecuniary loss. *Id*. at ¶ 19. This is exactly what Plaintiff alleges here. FAC ¶¶ 93-95, 138-145.

Guardian first argues that Wis. Stat. § 100.18 does not apply because Guardian "does not sell physical goods or commercial wares" and therefore does not sell "merchandise." MTD p. 14. In support of its argument, Guardian cites *Gallego v. Wal-Mart Stores, Inc.*, 2005 WI App 244, ¶ 11 and *Thermal Design, Inc. v. Soc'y of Heating*, 775 F. Supp. 2d 1082, 1084 (E.D. Wis. Apr. 25, 2008); however, neither case addresses whether financial or privacy services qualify as "merchandise." Moreover, Guardian's suggestion that a purveyor of financial products and services may escape liability under Wis. Stat. § 100.18 because it does not sell physical goods defies the statutory language and the law. The statute prohibits false statements or representations by "firm[s] with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, *service*, *or anything* offered by such…firm…" Wis. Stat. § 100.18(1) (emphasis added). Thus, Wis. Stat. § 100.18 is not limited

to "merchandise" and also applies to "services," such as the financial services at issue here. Indeed, the Wisconsin Supreme Court has held that a bank may be subject to claims under Wis. Stat. § 100.18(1) for misrepresentations related to the financing of pools. *State v. Excel Management Services, Inc.*, 111 Wis. 2d 479, 482, 485 (1983).

Guardian next misstates Plaintiff's allegations and the law by asserting Plaintiff "must plead specific facts that he himself relied on the statements; it is not sufficient to allege generally that the public or 'purchasers' relied on the alleged misleading statements." MTD p. 14. But, "reasonable reliance is not an element of a statutory false representation claim." *Novell v. Migliaccio*, 309 Wis. 2d 132, 144, 749 N.W.2d 544 (2008); *Hydraulics Int'l, Inc. v. Amalga Composites, Inc.*, 2022 WL 4273475, at *17 (E.D. Wis. Sept. 15, 2022) (same). And even if reliance were required (it is not), Plaintiff pleads that he relied on Guardian "to make only authorized disclosures" of his Personal and Financial Information and that he would not have submitted his information to Guardian if he had known it would be shared with Third Parties. FAC ¶¶ 94, 137-44. Thus, even if reliance were required, the Complaint includes such allegations.

Third, Guardian incorporates is damages argument to falsely state that "Plaintiff also cannot establish any pecuniary loss." MTD p. 15. As detailed below, this argument fails and ignores Plaintiff's allegations regarding, *inter alia*, losses related to the value of his Personal and Financial Information being diminished and the loss of the benefit of his bargain. FAC ¶ 145.

Finally, Guardian recycles its false claim that its "privacy policy is truthful and discloses exactly how the pixel technology works." MTD p. 15. As set forth *supra*, this is wrong and is a factual challenge inappropriate on a motion to dismiss. Guardian's motion must be denied.

*vii. Plaintiff sufficiently alleged Violation of the Stored Communications Act*

Plaintiff sufficiently alleged his Stored Communications Act ("SCA") claim by alleging Defendant intentionally employed third-party source code to intercept and disclose his Personal

and Financial Information to third parties without his consent. FAC ¶¶ 342-57. Courts within the Seventh Circuit have found these same allegations are sufficient in the context of these exact technologies. *See*, *e.g.*, *Elmhurst*, 2025 WL 580556; *Loyola*, 2024 WL 3338941; *Aspen Dental*, 2024 WL 4119153; *Kurowski IV*, 2024 WL 3455020; *Hartley II*, 2024 WL 1886909.

Defendant asserts it merely operates a website and does not provide an "electronic communication service." MTD pp. 15-16. But this argument rests on a misreading of the statute. The statute imposes liability on any "person or entity providing an electronic communication service to the public." 18 U.S.C. § 2511(3)(a). There is no question that Defendant "provided," *i.e.*, made available, its website to the public. *See* FAC ¶¶ 2, 3, 25, 28. And the statute defines "electronic communications service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Finally, "electronic communications" are defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12). Defendant intentionally procures and embeds Plaintiff's Personal and Financial Information through the tracking technology Defendant installed on its Website, *e.g.*, FAC ¶¶ 25-43, 250, 353-63, which therefore qualifies as an Electronic Communication Service.

Defendant argues that "Courts have repeatedly rejected the notion that merely operating a website subjects a party to liability under the SCA" and that Defendant's maintenance of a website does not qualify as an electronic communication service. MTD p. 15. But Defendant does not cite any binding authority for this proposition. Instead, it cites random district court cases outside of the Seventh Circuit, all but one of which concerned different factual contexts. *See El Paso Disposal, LP v. Ecube Labs Co.*, 2025 WL 517656 (W.D. Tex. Feb. 17, 2025) (rival waste

collection companies misappropriating customer information to induce customers to choose a particular garbage collector); *Allen v. Novant Health, Inc.*, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) (airlines sharing basic passenger contact information with military contractors and NASA); *Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196 (D.N.D. 2004) (same); *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005) (same). By contrast, the Ninth Circuit has recognized that a secure website which required creation of a password to view the website's contents counts as an electronic communication services provider. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 879 (9th Cir. 2002) (recognizing and giving effect to parties' agreement on this point). Here, the Amended Complaint pleads that Defendant's website is secure, that it includes an online password-protected banking portal which specifically was tracked, and that Guardian promises to securely collect and maintain its customers' Personal and Financial Information. *See, e.g.*, Am. Compl. ¶¶ 46-47, 66-69, 94-97, 100-107, 244. Guardian itself assures that "Our application forms securely collect personal and financial information." *Id.* ¶ 106. Regardless, determining whether a company is an electronic communication services provider under the Stored Communications Act is typically a factual question for summary judgment or trial. *ACW Flex Pack LLC v. Wrobel*, 2023 U.S. Dist. LEXIS 128580, at *22-23 (N.D. Ill. July 26, 2023).

Defendant next argues that Plaintiff "alleges the divulgence of data, not 'communications.'" MTD p. 16. But "electronic communication" means "any transfer of...data...transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system." 18 U.S.C. § 2510(12). Defendant's argument thus demonstrates the sufficiency of Plaintiff's allegations. Defendant also argues that "Plaintiff only alleges that 'record information' was disclosed." *Id.* This simply is untrue. The only time the Complaint uses the phrase "record information" is in Count XVII (Wis. Stat. § 968.34), stating that the tracking technologies

"record information." FAC ¶ 304. In reality, Plaintiff alleges far more than just contact information or personally identifiable information was disclosed. He alleges that "*Defendant stores the content of Plaintiff's and Class Members' communications* on Defendant's Website and files associated with it," that "When Plaintiff or Class Members make a Website communication, *the content of that communication is immediately placed into storage*," and that "*Defendant knowingly divulges the contents of Plaintiff's and Class Members' communications* through the tracking technology." FAC ¶¶ 346-48 (emphasis added). These include Plaintiff's Personal and Financial Information, *id.* ¶¶ 130, 138, 142, such as his credit card application information, existing membership/customer status, purpose for applying for a credit card, specific credit card applied for, co-applicant information, and whether Plaintiff agreed with the disclosures, *id.* ¶142.

Defendant's citations to *Rodriguez v. ByteDance, Inc.*, 2025 WL 672951 (N.D. Ill. Mar. 3, 2025) and *In re Zynga Privacy Litig.*, 750 F.3d 1098,1105-07 (9th Cir. 2014) are inapposite. In *ByteDance*, the court examined vague allegations regarding "ByteDance data" and "user data," and found them insufficient to reasonably infer unauthorized access to communications. 2025 WL 672951 at *9. By contrast, here, Plaintiff pleads with great specificity the communications that were disclosed. And *Zynga*, unlike this case, did not involve allegations regarding contents, but only about referrer header information. 750 F.3d 1098 at 1106-07.

Finally, Defendant asserts with no citation that "[t]he SCA was not intended to hold a website owner liable for storing data that a visitor voluntarily inputs into a web form." MTD p. 16. Again, bald assertions without authority do not meet Defendant's burden on a Rule 12(b)(6) motion.Plaintiff states a claim under the SCA. *See Cyr v. Orlando Health, Inc.*, No. 23cv588, 2023 U.S. Dist. LEXIS 237810 (M.D. Fla. July 5, 2023) (denying Motion to Dismiss in entirety in online tracking case and allowing claims including SCA claim to proceed). The motion fails.

*viii. Plaintiff sufficiently alleged Computer Fraud and Abuse Act*

Defendant argues that Plaintiff's CFAA claim fails because "Plaintiff authorized Guardian to access that information" and does not allege "unauthorized" access to his computer. MTD p. 17. This argument completely ignores the other way to show a CFAA claim: that a defendant "exceed[ed] authorized access." *Id.* Plaintiff provided his information to Defendant for a limited purpose, and "Defendant exceeded, and continues to exceed, [its] authorized access to Plaintiff's and the Class Members' protected computers." FAC ¶¶ 360. Plaintiff alleges, "[a]t no point did Customers like Plaintiff sign any written authorization," that "Plaintiff reasonably expected that his communications with Guardian were confidential, solely between" himself and Guardian, and that he "trusted that the information would be safeguarded." *Id.* ¶¶ 136-38. Hence, while Plaintiff authorized Guardian to access the data he inputted for purposes of applying for a credit card, he did not authorize Guardian to share that information with third parties or install third-party trackers to collect and share other information, such as his browser fingerprint. *Id.* ¶¶ 27-84, 136,141. The motion should be denied. Lastly, Defendant argues Plaintiff failed to allege any loss. Plaintiff alleged that Defendant's secret transmission of Plaintiff's Personal and Financial Information resulted in numerous losses which aggregate to at least $5,000 in value, including but not limited to monetary damages, loss of privacy, unauthorized disclosure of Private Information, decreased value of Private Information, lost benefit of the bargain, and increased risk of future harm resulting from further unauthorized disclosure of his information. FAC ¶¶ 127, 160, 161, 258, 384. Plaintiff also alleges that the transmission caused monetary loss and other forms of harm. *Id.* ¶¶ 145, 361. These allegations are sufficient. *Fidlar Techs. v. LPS Real Est. Data Sols., Inc.*, 2013 WL 5973938, at *1 (C.D. Ill. Nov. 8, 2013). Defendant's motion should be denied.

*ix. Plaintiff's Federal Statutory Claims are Timely*

Guardian argues that Plaintiff's claims under the Electronic Communications Privacy Act,

the SCA, and the CFAA should be dismissed because they were filed "more than 2 years after his learning of information that put him on notice of his claims." MTD p. 20. This too, is wrong. Claims may be brought under the ECPA and SCA within two years of the time when the plaintiff had "a reasonable opportunity to discover the violation" and under the CFAA when the plaintiff discovered damage. 18 U.S.C. § 2520; 18 U.S.C. 2702(f); 18 U.S.C.§1030(g). The Seventh Circuit has held that the ECPA's statute of limitations does "not require the claimant to have actual knowledge of the violation; it demands only that the claimant have had a reasonable opportunity to discover it." *Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998). The CFAA's statute of limitations, similarly, "begins to run when the plaintiff knew or reasonably should have known that he or she was wrongfully injured." *Navistar, Inc. v. New Baltimore Garage, Inc.*, 2012 WL 4338816, at *9 (N.D. Ill. Sept. 20, 2012).

Here, Plaintiff alleges that the trackers Guardian employed to disclose his data were "invisible" and that he "reasonably expected that his communications with Guardian were confidential." FAC ¶¶ 33, 119. Thus, when Plaintiff "reasonably should have known" of Guardian's invisible disclosures is a factual matter inappropriate for resolution on a motion to dismiss. *See Alholm v. Vrdolyak L. Grp.*, 2023 WL 199339, at *4 (N.D. Ill. Jan. 17, 2023) (denying motion to dismiss ECPA claim because "[f]actual development will reveal when Plaintiff had a reasonable opportunity to discover the violation for purposes of the Wiretap Act."); *Nasrabadi v. Kameli*, 2019 WL 2173791, at *4 (N.D. Ill. May 20, 2019) ("As long as the Court can 'imagine' a scenario in which the claim is timely, it is improper to dismiss it on the pleadings."). Guardian may not assert as "fact" that Plaintiff knew or should have known of its violations in 2022. The Court should deny Guardian's motion.

### C. Plaintiff Sufficiently Alleged Negligence and Negligence *Per Se*

#### *i. Defendant had a duty to protect Plaintiff's information*

Plaintiff sufficiently pleaded Defendant's disclosure breached its common law duty to keep their Personal and Financial Information confidential from third parties, which caused them harm. *See* FAC ¶¶ 13, 169-82. Defendant attempts to argue that Wisconsin does not recognize a "common law duty to protect the type of information Plaintiff alleges was tracked by the pixels." *See* MTD p. 19. But neither of Defendant's cited authorities involve financial institutions.

Financial institutions owe "the duty of ordinary care" not to engage in "conduct [which] foreseeably creates an unreasonable risk to others." *Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶¶ 20, 22, 291 Wis. 2d 283, 300. Plaintiff alleged that Defendant disclosed his Personal and Financial Information including details from his membership applications like beneficiary information, co-applicant information, banking portal and portal registration information and credit card application details. FAC ¶ 4. And it is at the very least a reasonable inference from the allegations that it was foreseeable that when Defendant disclosed Plaintiff's Private Information to third parties like LinkedIn for their use in targeted advertising, that Plaintiff would receive targeted advertising and suffer a myriad of other harms based on the improper sharing of his Private Information from third parties. *Id.* ¶¶ 43, 91, 105, 118-179, 189, 192-194. Plaintiff's allegations are sufficient, and this Court should deny the motion, as other Wisconsin courts have done. *See Reetz*, 405 Wis. 2d 298; *Johnson*, 2024 Wisc. Cir. LEXIS 25; *Linman*, 2023 WL 2562712.

Defendant argues that there is no expectation of privacy in IP addresses or browser cookies and information, but cites only a Third Circuit case and a Northern District of California case, contradicting the wealth of Wisconsin and Seventh Circuit authority cited above, including the Western District's recent opinion in *Manza*, 2025 WL 1445762. Further, Defendant's citation to *In re Nickelodeon Consumer Privacy Litigation* to argue that "an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person" but omits a critical

qualifier that the court noted such information would not be helpful "**[t]o an average person**." 827 F.3d 262, 283 (3d Cir. 2016) (emphasis added). This case is not about whether an "average person" can use the data at issue to identify users; it is about whether sophisticated third parties can. As *Manza* explained, when such information can be identifying when combined with other information, it counts as identifying information. Likewise, Defendant quotes *Heeger v. Facebook* for the proposition that "there is no legally protected privacy interest in IP addresses," MTD p. 20. But *Heeger* actually held: "There is no legally protected privacy interest in IP addresses **alone.**" *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (emphasis added). Even ignoring that this contradicts *Manza*, here, Plaintiff has alleged a wealth of other identifying information was disclosed beyond "IP addresses alone." Lastly, Defendant "denies" the privacy policy is a contract with website visitors, MTD p. 20 n.5, but simply cites its own argument on pages 26-28 of its brief, which Plaintiff addresses below.

*ii. Defendant breached its duty by disclosing Plaintiff's information*

Citing *Kurowski II*, Defendant next argues that Plaintiff failed to plead "that his personally identifiable financial information was not safeguarded and was disclosed by Guardian." MTD p. 20. Specifically, Defendant reiterates its improper and incorrect argument that "[n]one of [the information that Plaintiff alleges Defendant disclosed to third parties] is personally identifiable information because ***it does not disclose the identity of Plaintiff and cannot be used to identify Plaintiff***." MTD p. 21 (emphasis original). As above, this contradicts the Complaint's factual allegations that the disclosed data includes "information [that] *can be used to identify specific users*." FAC ¶ 41; *see also id.* ¶¶ 40, 108. But personally identifiable financial information includes "any information: (i) A consumer provides to [a financial institution] to obtain a financial product or service from [the financial institution];...or (iii) [a financial institution] otherwise obtain[s] about a consumer in connection with providing a financial product or service to that consumer." 16

C.F.R. § 313.3(o)(1). It also includes any information that can be combined with other information to identify a person. *Manza*, 2025 WL 1445762. Here, Plaintiff explicitly alleges that "Guardian disclosed and continued to disclose [the] Personal and Financial Information that Customers input into and accessed on Guardian's Website" and shared "users' IP addresses, cookies, and 'browser fingerprints,'[] all of which can be used to identify the user." *E.g.*, FAC ¶ 4, 40. This information fits squarely into the definition provided by the Code of Federal Regulations, as it was obtained by Defendant because of a "transaction involving a financial product or service between [Defendant] and [Plaintiff]" or "in connection with providing a financial product or service to [Plaintiff]." 16 C.F.R. § 313.3(o)(1)(ii)-(iii).

Defendant again argues that Plaintiff's screenshots disprove his claims because they do not illustrate each and every one of the disclosed pieces of information. MTD p. 21. As above, the meaning of the code contained in the screenshots requires expert analysis, and the Complaint need not contain a screenshot of every disclosure alleged. The screenshots directly confirm Plaintiff's browser fingerprinting allegations, as they show trackers disclosing the browser, default language, screen size, and other information. *See*, *e.g.*, FAC ¶ 52(b). Defendant's attempt to play expert to dispute the Complaint's facts is impermissible. The motion should be denied.

*iii. Plaintiff states a claim for negligence per se*

Defendant argues that Plaintiff's negligence per se claim fails because (1) neither the FTC Act nor the GLBA allows for a private right of action; and (2) the claims are preempted by federal law. Both arguments fail.

*a. Defendant negligently disclosed Plaintiff's data, in violation of its duties*

In Wisconsin, "[n]egligence *per se* arises when the legislature defines a person's standard of care in specific instances." *Taft v. Derricks*, 235 Wis. 2d 22, 29, 2000 WI App 103 (Ct. App. 2000). The analysis for a properly stated negligence *per se* claim is simple: a plaintiff must allege

(1) the harm inflicted was the type the statue was designed to prevent; (2) the person injured was within the class of persons sought to be protected; and (3) there is some legislative intent that the statute impose civil liability. *Antwaun A. v. Heritage Mutual Inc. Co.*, 228 Wis. 2d 44, 66-67, (Wis. 1999); *Valente v. Sofamor*, 48 F. Supp. 2d 862, 875 (E.D. Wis. 1999). Plaintiff does so here.

First, Plaintiff alleged Defendant's disclosure of Personal and Financial Information breached its duty to safeguard his Personal and Financial Information, as set by common law, Section 5 of the FTC Act, and the GLBA, causing him injury. FAC ¶¶ 183-94. Plaintiff further alleges that the harm Defendant's disclosure caused is the type of harm the GLBA and the FTC Act are intended to guard against. *See*, *e.g.*, FAC ¶¶ 185-90. Specifically, these statutes require Defendant "to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiff's and Class Members' Personal and Financial Information" and to "prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Personal and Financial Information." *Id.* ¶ 185; *see Johnson v. Nice Pak Prods., Inc.*, 736 F. Supp. 3d 639, 649 (S.D. Ind. 2024) ("*Nice Pak*") (internal quotation marks and citation omitted) ("the FTCA prohibits unfair acts that affect commerce. 15 U.S.C. § 45. "Data breaches affect commerce, and Plaintiffs benefit from protections against the kinds of harms that proper data security would avoid."); 15 U.S.C. § 6801 ("It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.") Second, Plaintiff is within the class of persons Congress sought to protect against unauthorized sharing, as evidenced by the enforcement actions pursued by the FTC against businesses that fail to adequately safeguard personal information. *See*, *e.g.*, *In the Matter of LabMD, Inc., A Corp, 2016-2 Trade Cas. (CCH)* ¶ *79708*, 2016 WL 4128215 (MSNET July 28, 2016). Finally, through these statutes, Congress

obviously intended to provide a basis for civil liability; it provided bases for the Federal Trade Commission, Consumer Financial Protection Bureau, and other Federal entities to pursue actions against violators for enforcement and civil liability. 15 U.S.C. §§ 45, 6805. While Defendant is correct that the FTC Act and the GLBA do not contain private causes of action, "whether a statute or ordinance confers a private right of action is a concept that is related to but distinct from the doctrine of negligence per se." *Webster v. Bradford-Scott Data, LLC*, No. 1:24-CV-00117-HAB-SLC, 2025 WL 560917, at *9 (N.D. Ind. Feb. 20, 2025) (internal quotation marks and citation omitted). Numerous courts have recognized that a lack of private cause of action does not preclude these statutes from supplying the standard of care for a negligence *per se* claim. *See*, *e.g.*, *Nice Pak*, 736 F. Supp. 3d at 649; *Perdue v. Hy-Vee, Inc.,* 455 F. Supp. 3d 749, 760–61 (C.D. Ill. 2020); *In re Ambry Genetics Data Breach Litig.,* 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021); *Valente*, 48 F. Supp. 2d at 876; *see also Winkel v. Prod. Credit Ass'n of E. Cent. Wisconsin*, 153 Wis. 2d 550, 556 (Ct. App. 1989) (allowing claim based on Farm Credit Act, which has no private cause of action). Similarly, here, Defendant had a duty to safeguard Plaintiff's Personal and Financial Information, which duty was informed by the FTC Act and GLBA. Defendant cannot meet its burden and the motion should be denied.

*b. Plaintiff's negligence per se claim is not preempted*

"Federal preemption of state laws occurs in three circumstances: (1) Congress explicitly states its intention to preempt state law; (2) a federal statutory or regulatory scheme shows intent to occupy the field to the exclusion of state law; (3) operation of state and federal law actually conflict." *M & I Marshall & Ilsley Bank v. Guar. Fin., MHC*, 2011 WI App 82, ¶ 23, 334 Wis. 2d 173, 189–90, 800 N.W.2d 476, 484. Defendant makes no argument that federal law expressly preempts a negligence per se claim. Nor does it claim that state and federal law actually conflict.

And Defendant points to no intent of Congress to occupy the field to the exclusion of state law.

As the Seventh Circuit has explained, "modern preemption jurisprudence...acknowledges a role for state-law causes of action to vindicate federal policy" and "states may borrow federal standards of care." *Ward v. Soo Line R.R. Co.*, 901 F.3d 868, 875–76 (7th Cir. 2018). Subsequently, case after case in the Seventh Circuit and beyond has found that "the FTC Act can serve as the basis of a negligence per se claim." *Nice Pak*, 736 F. Supp. 3d at 649 (citing *Perdue*, 455 F. Supp. 3d at 760–61 and *Ambry*, 567 F. Supp. 3d at 1143); *see also*, *e.g.*, *Webster*, 2025 WL 560917 at *10 ; *McLaughlin v. Taylor Univ.*, 2024 WL 4274848, at *7 (N.D. Ind. Sept. 23, 2024).

That is just what is happening here. Here, unlike in the *Johnson* case Defendant cites, the negligence per se claim has an "independent basis in state law," and does not exist "solely by virtue" of the requirements of federal law. *Johnson v. C.R. Bard Inc.*, 2021 WL 1784661, at *9–10 (W.D. Wis. May 5, 2021). "Plaintiff [is] not pursuing a private cause of action for violations of the FTCA; [he] assert[s] that [Defendant's] violations of those statutes evince a breach of its duty to protect Plaintiff['s] PII." *Webster*, 2025 WL 560917, at *10; *McLaughlin*, 2024 WL 4274848, at *7. And unlike *In re Bard*, Plaintiff's claim is not "based solely on fraud on the FDA." *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 3586404, at *10 (D. Ariz. July 26, 2018)

*iv. The economic loss doctrine does not bar Plaintiff's allegations*

Defendant next argues that Plaintiff's negligence claims are barred by the Economic Loss Doctrine because Plaintiff solely alleges economic damages, which is prohibited under the doctrine. MTD p. 23. But Defendant concedes that Plaintiff pleads a "laundry list of alleged injuries, none of which constitute actual damages." *Id.* p. 24. Defendant cannot have it both ways. In reality, Plaintiff alleges a wide range of injuries and damages including, *inter alia*,

> "improper disclosure of their Personal and Financial information;" receipt of targeted advertisements reflecting private financial information; lost benefit of their bargain; lost value of their Personal and Financial

> Information and diminution in value; embarrassment, humiliation, frustration, and emotional distress; lost time and money incurred to mitigate and remediate the effects of use of their information, as to targeted advertisements that resulted from and were caused by Defendant's negligence;...increased risk of future harm resulting from future use and disclosure of Plaintiff's and the Class Members' Personal and Financial Information; and other injuries and damages.

*See* FAC ¶¶ 178-179, 192. Plaintiff has clearly alleged damages beyond just economic harm. *See* Exhibit A-2 (listing cases finding sufficient injury, damages, and/or harm alleged in similar data privacy cases). Defendant's motion must be denied.

*v. Plaintiff sufficiently alleged injury*

Defendant next claims that Plaintiff has failed to plead any actual injury. Not so. As discussed, Plaintiff pleaded a wide variety of actual injuries. Defendant does not address all the harms identified in the Complaint, instead taking issue with a handful of them. All of Defendant's arguments are misplaced. Plaintiff's loss of privacy is a real harm which caused Plaintiff real injuries. Wisconsin has recognized that time spent dealing with fraud attempts and mitigating the threat of future identity theft can be considered actual damages. This includes the value of one's time needed to address the consequences of a breach. *Reetz*, 405 Wis. 2d at 313-14. Defendant argues that injury must be measured in terms of loss to Plaintiff, not gain to Defendant. MTD p. 25. But the *Silha* case it cites is one in which "Plaintiffs...claimed injury based **solely** on a gain to Defendants and without alleging a loss to themselves." *Silha v. ACT, Inc.*, 807 F.3d 169, 175 (7th Cir. 2015) (emphasis added). By contrast, Plaintiff alleges many losses to himself. Plaintiff's allegation that Guardian benefited by using Plaintiff's information without sharing that benefit with Plaintiff is not only permitted, but foundational to Plaintiff's claim of unjust enrichment.

Defendant's citation to a California case, *R.C.*, as foreclosing the injuries of loss of privacy and unwanted targeted advertisements is not helpful; that case found only that the allegations in that case were too vague and conclusory. 733 F. Supp. 3d at 898. Here, by contrast, Plaintiff's

allegations are detailed and specific, including exactly how Defendant and third and fourth parties invaded his privacy, where targeted advertisements appeared, and exactly what they were for. FAC ¶¶ 33-92, 132, 145, 179. Likewise, *R.C.* held that a benefit of the bargain argument failed due to a lack of adequate allegations of payment in exchange for security measures protecting their private information. 733 F. Supp. 3d at 903. Here, though, Plaintiff alleges exactly that. FAC ¶ 145(d). Indeed, as one Seventh Circuit district court recently noted, "disclosure of private information [is] a common-law theory of harm." *Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, at *4 (N.D. Ill. July 9, 2024) (citation omitted). "Loss of privacy through the disclosure of private information is an intangible harm, but one that courts routinely recognize as concrete given its close relationship to a traditionally recognized harm." *Id.* (internal quotation marks and citations omitted).

Further, Wisconsin law also recognizes that emotional distress, including frustration and embarrassment, can be considered actual damages if they result from an intentional invasion of a legally protected interest. *Alsteen v. Gehl*, 21 Wis.2d 524 (Wis. 1976). Lastly, the risk of future identity theft can also be considered actual injury. *Reetz*, 405 Wis. 2d 298, at 314. Finally, Defendant asserts without supporting argument that decreased value of personal information does not suffice; since this statement is supported by nothing, it should be rejected.

Defendant argues that Plaintiff pleads a "laundry list of alleged injuries, none of which constitute actual damages," which Defendant here defines as "money out of pocket." MTD p. 24. But, Defendant simultaneously (and wrongly) argues that Plaintiff *solely* alleged economic damages. *Id.* p. 23. The reality is that Plaintiff sufficiently alleges *both* economic and noneconomic damages. Defendant's motion must be denied.

### D. Plaintiff Sufficiently Alleged Breach of Contract and Unjust Enrichment

#### *i. Plaintiff Sufficiently Alleged Breach of Contract*

Defendant argues that its privacy policies cannot form the basis for a contract as they are "nothing more than a statement...about its existing legal obligations and policies." MTD p. 26. This argument is contrary to the allegations and Wisconsin law. As the Court in *Brahm* explained, "[e]ven if this argument had merit, it would depend on factual findings more appropriately considered at summary judgment or trial, not in a motion to dismiss," including the extent of the promises Defendant made, and the overlap between those promises and HIPAA's protections. *Brahm*, 2024 WL 3226135, at *3.

Notably, Defendant later argues that Plaintiff "consented" to Defendant's collection and disclosure because of its Privacy Policies; put another way, Defendant argues that its Privacy Policies formed a contract between the parties where Plaintiff agreed to allow Defendant's Disclosure. But Defendant cannot legitimately argue that the Privacy Policies evidence Plaintiff's consent to the disclosure and that they simply document Defendant's preexisting duties and therefore isn't a contract. To be clear, Plaintiff explicitly alleged that he "never consented" to Defendant's disclosure of his Personal and Financial Information to third parties, see, e.g., FAC ¶ 93, and Defendant's Privacy Policies are not a mere recitation of its preexisting duties.

Furthermore, Plaintiff alleged that the privacy policy included additional promises beyond a promise to follow the law. Specifically, Defendant made express promises in its privacy policies, like that it "[s]afeguard[s] members' and site users' information" and "[m]aintain[s] the confidentiality of member information which you provide to us." FAC ¶ 97. As the Court in *Brahm* recognized, these affirmative promises go beyond those preexisting under federal law. Furthermore, privacy policies like the one at issue are recognized as capable of forming the basis for a contract in Wisconsin. *See Fox*, 399 F. Supp. 3d at 801 (healthcare privacy policy formed basis for contract); *Dinerstein v. Google, LLC*, 73 F.4th 502, 516 (7th Cir. 2023) (same). Thus,

consistent with *Brahm* and the "numerous courts [that] have held that promises to keep PII/PHI confidential and private...include express promises that go well beyond an implicit promise to comply with the law," *id*., the motion should be denied.

Building on its incorrect argument that the policies simply detail its existing legal obligations, Defendant argues that any contract between the parties would lack consideration. MTD p. 27. Not so. As above, the privacy policies contain "express promises" that Defendant will safeguard and maintain the confidentiality of customers' information. As *Brahm* held, such promises "provide sufficient consideration for an implied contract." 2024 WL 3226135, at *3. Plaintiff, in turn, provided consideration by entrusting Defendant with his highly sensitive Personal and Financial Information. The parties' contract is supported by consideration. The motion fails.

Further, under Wisconsin law, "[n]ondisclosure can form the basis for a misrepresentation sufficient to allow the avoidance of a contract obligation under general principles of contract law." *First Nat'l Bank & Tr. Co. v. Notte*, 97 Wis. 2d 207, 219, 293 N.W.2d 530, 536-37 (1980). Here, Guardian promised to keep Plaintiff's information confidential and instead shared his information with third parties for profit. FAC ¶¶ 93-112, 228-47. At minimum, Guardian failed to disclose the manner and extent to which it would share Plaintiff's Personal and Financial Information. Defendant cannot show that it complied with the promises in its privacy policies.

Plaintiff also alleged a contract implied in conduct—he provided his Personal and Financial Information to Defendant under the implied agreement that Defendant, as his financial provider, would keep that information private, a term that was implied into the parties' agreement. FAC ¶¶ 237-43. Regardless of the privacy policies, Plaintiff has stated a claim for breach of contract.

Finally, Defendant argues that its privacy polices disclosed its sale of customer information because it permits the sharing of "anonymous statistics." But Defendant's disclosure went far

beyond "anonymous statistics"; Guardian collects and discloses information like IP addresses, browser fingerprints, customer status, co-applicant information, and more. *E.g.*, FAC ¶¶ 40, 142. As above, Defendant may not dispute these well-pleaded factual allegations on a motion to dismiss. Defendant has failed to meet its burden and its motion should be denied.

*ii. Plaintiff Sufficiently Alleged Unjust Enrichment*

Defendant argues Plaintiff's unjust enrichment claim fails because no benefit was conferred on Defendant and cites cases dismissing such claims where the plaintiff did not allege that the defendant profited from his personal information. MTD pp. 30-31. Plaintiff alleged just that here: "Guardian utilized the information it collected to market its services and bolster its profits," and his claim is thus supported even by Defendant's citations. *See e.g.*, FAC ¶ 31. Plaintiff further alleged he "paid Guardian for financial services, and the services he paid for included reasonable privacy and data security protections for his Personal and Financial Information, but due to Defendant's Disclosure, Plaintiff did not receive the privacy and security protections for which he paid." *Id.* ¶ 145(d). These allegations are state a claim for unjust enrichment. *See Dusterhoft v. OneTouchPoint Corp*, 2024 WL 4263762, at *14 (E.D. Wis. Sept. 23, 2024).

Defendant also argues, in passing, that Plaintiff's tort and quasi-contract claims are either duplicative of his contract theory or preempted by statutory law. But under Rule 8(d)(2), Plaintiff may plead alternative and even inconsistent theories. Courts in this Circuit have repeatedly allowed claims for breach of contract, conversion, unjust enrichment, and bailment to proceed in parallel where the existence scope, or enforceability of an agreement is in dispute, as it is here. *See, e.g.*, *U.S. ex rel. Roach Concrete, Inc. v. Veteran Pac.*, JV, 787 F. Supp. 2d 851, 859 (E.D. Wis. 2011); *Fox*, 399 F. Supp. 3d at 803.

Nor are these claims preempted by any statutory regime. As above, the GLBA and related statutes do not contain any express preemption provision, and courts have consistently rejected

implied preemption arguments in privacy cases involving state common law claims. Plaintiff's tort and equitable claims seek to remedy distinct harms—including interference with property rights and unjust retention of benefits—that are not coextensive with contract law. *See Brahm*, 2024 WL 3226135, at *1 (allowing claims for contract, Wisconsin wiretap, breach of confidentiality, invasion of privacy, and unjust enrichment); *Remijas*, 794 F.3d at 697 (allowing parallel claims under state tort law to proceed alongside potential statutory duties involving consumer data); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (allowing Federal Wiretap Act, state wiretap, and state privacy laws). These claims are properly pled and should proceed.

Defendant's arguments thus fail to meet its burden, and its motion should be denied.

### E. Plaintiff Sufficiently Alleged Violation of Wisconsin and Federal Wiretap

Plaintiff alleged Defendant intentionally employed third-party source code to intercept and disclose his Protected Information to third parties without his consent—a tortious violation of both Wisconsin and Federal wiretap law. FAC ¶¶ 302-41. Defendant does not dispute that it intercepted Plaintiff's communications within the meaning of Federal and Wisconsin wiretapping law.

Instead, Defendant relies on several thin arguments. First, Defendant argues that it is exempt from liability because it was a party to the communication. But "federal and [Wisconsin] wiretapping statutes…allow one party to a conversation to record the conversation **unless** their purpose in doing so is to commit a crime or a tort or (in the case of the [Wisconsin], but not the federal, law) to do 'other injurious acts.'" *J.H. Desnick v. Broad. Cos.*, 44 F.3d 1345, 1353 (7th Cir. 1995) (emphasis added). Defendant's motivation in recording Plaintiff's communications here was to share those intercepted communications with unauthorized third parties like Google. In doing so, Defendant invaded Plaintiff's reasonable expectation of privacy, defrauded Plaintiff, and unjustly enriched itself at his expense. *See, e.g.*, FAC ¶ 145. And Defendant's disclosure violates multiple criminal laws, including the GLBA. Defendant disingenuously argues that courts

"consistently" hold that the crime-tort exception does not apply in pixel cases. Not so. Nearly 70 courts across the country—including the Western District of Wisconsin—have found similar wiretap laws, many of them one-party, apply in the "pixel" context. *See Brahm*, 2024 WL 3226135, at *5-6 ("While defendants argue that marketing and advertising are not criminal or tortious acts, plaintiff plausibly alleges that defendants committed a criminal or tortious act by disclosing -- versus merely intercepting -- patients' PII/PHI."); Exhibit A-10.

Similarly, here, Defendant argues that its "motivation was to make money." MTD p. 33. As one court in a pixel case recently explained, just as financial motivation does not excuse a bank robber, it also cannot excuse the use of pixels for financial profit. *Elmhurst*, 2025 WL 580556, at *4. And as the Western District of Wisconsin held in *Brahm*, there is no support for the contention that, in the Seventh Circuit, "the crime-tort exception to the Wiretap Act [is] inapplicable in all cases in which the defendant's primary motivation was to make money." *Brahm*, 2024 WL 3226135, at *5 (emphasis omitted). The motion fails.

Finally, Defendant argues that Plaintiff "consented" to Defendant's collection and disclosure because of its Privacy Policies. But Plaintiff explicitly alleged that he "never consented" to Defendant's disclosure of his Personal and Financial Information to third parties and Defendant cannot identify any language in its Privacy Policies permitting the challenged disclosures. *See, e.g.,* FAC ¶ 79. At best for Defendant, whether Plaintiff "consented" is a factual question that cannot be resolved at this stage. *Brahm*, 2024 WL 3226135, at *4; *Calhoun v. Google, LLC*, 113 F.4th 1141, 1151 (9th Cir. 2024). Defendant has once again failed to meet its burden. Its motion should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

Dated: July 2, 2025

Respectfully submitted,


*/s/ Samuel J. Strauss*
Lynn A. Toops
Amina A. Thomas
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

J. Gerard Stranch, IV*
Emily E. Schiller*
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
eschiller@stranchlaw.com

Samuel J. Strauss*
Raina C. Borrelli*
STRAUSS BORRELLI, PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, Indiana 60611
(872) 263-1100
(872) 263-1109 (facsimile)
sam@straussborrelli.com
raina@straussborrelli.com

* to seek admission *pro hac vice*

***Counsel for Plaintiff and the Proposed Classes***


## CERTIFICATE OF SERVICE

I certify that on July 2, 2025, I electronically filed and served the foregoing document using the Eastern District of Wisconsin E-Filing System on all counsel of record.

*/s/ Samuel J. Strauss*