UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| DAVID GASSMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>GUARDIAN CREDIT UNION,<br><br>Defendant. | Case No. 2:25-CV-00176<br><br>**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT** |

# DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT


Melissa A. Siebert
Corey T. Hickman
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
T: (312) 474-4490
F: (312) 300-5645
msiebert@cozen.com
chickman@cozen.com

*Counsel for Defendant,*
*Guardian Credit Union*

## TABLE OF CONTENTS


Page

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

I. Plaintiff's Allegations Establish that the Pixels Did Not Track His Personally Identifiable Information ............................................................. 2

II. Plaintiff's FAC Should Be Dismissed Because it Contains No Allegations of Disclosure of Information Specific to Plaintiff ................................................ 3

III. Plaintiff Doubles Down on His Many Frivolous Claims ....................................... 6

a. Invasion of Privacy (Count III) ................................................................. 6

b. Conversion and Trespass to Chattels (Counts IV and V) ........................... 7

c. Bailment (Count IX) ................................................................................. 7

d. Wisconsin Consumer Act, Wis. Stat. § 423.301(Count XI) ....................... 8

e. Wiretapping, Wis. Stat. § 968.34 Claim (Count XIII) ............................... 9

f. Deceptive Trade Practices Act, Wis. Stat. § 100.18 (Count X) .................. 9

g. Stored Communications Act (Count XVI) ............................................... 11

h. Computer Fraud and Abuse Act (Count XVII) ......................................... 12

i. Plaintiff's Federal Statutory Claims (Counts XIV, XV, XVI, and XVII) are Barred by the Two-Year Statute of Limitations ....................... 13

IV. Plaintiff's Negligence (Count I) and Negligence *Per Se* (Count II) Claims Fail ...................................................................................................... 14

V. Plaintiff's Breach of Express and Implied Contract Claims (Counts VI and VII) Fail ............................................................................................... 17

VI. Plaintiff's Unjust Enrichment Claim (Count VIII) Should be Dismissed ............ 18

VII. Plaintiff's Wisconsin Wiretapping Claims (Counts XII and XIII) and Federal Wiretapping Claims (Counts XIV and XV) Should be Dismissed .......... 19

CONCLUSION ........................................................................................................ 21

CERTIFICATE OF SERVICE ................................................................................. 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Banner Health Data Breach Litig.*,
CV-16-02696-PHX-SRB, 2017 WL 6763548 (D. Ariz. Dec. 20, 2017) ................................17

*Blitz v. Monsanto Co.*,
317 F. Supp. 3d 1042 (W.D. Wis. 2018) ....................................................................10

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) ..........................................................................................21

*Brahm v. Hosp. Sisters Health Sys.*,
23-CV-444-WMC, 2024 WL 3226135 (W.D. Wis. June 28, 2024)............................... *passim*

*Dahl v. St. Paul Fire & Marine Ins. Co.*,
36 Wis. 2d 420, 153 N.W.2d 624 (1967)..........................................................................7

*Davis v. Zirkelbach*,
149 F.3d 614 (7th Cir. 1998) ..........................................................................................13

*Duffy v. Lewis Bros. Bakeries, Inc.*,
760 F. Supp. 3d 704 (S.D. Ind. 2024)..............................................................................15

*E.E.O.C. v. Concentra Health Services, Inc.*,
496 F.3d 773 (7th Cir. 2007) ........................................................................................2, 6

*Flannery v. Recording Indus. Ass'n of Am.*,
354 F.3d 632 (7th Cir. 2004) ............................................................................................2

*Galaria v. Nationwide Mut. Ins. Co.*,
2:13-CV-118, 2017 WL 4918634 (S.D. Ohio Oct. 31, 2017) ..................................................7

*Gallego v. Wal-Mart Stores, Inc.*,
2005 WI App 244, 288 Wis. 2d 229, 707 N.W.2d 539 ..........................................................10

*Giasson v. MRA - Mgmt. Ass'n, Inc.*,
24-CV-839-JPS-JPS, 2025 WL 1025173 (E.D. Wis. Apr. 7, 2025).................................18, 19

*In re Jetblue Airways Corp. Privacy Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ..............................................................................11

*Johnson v. C.R. Bard Inc.*,
19-CV-760-WMC, 2021 WL 1784661 (W.D. Wis. May 5, 2021).........................................16

*Johnson v. Nice Pak Products, Inc.*,
736 F.Supp.3d 639 (S.D. Ind. 2024) ....................15

*Krupa v. TIC*,
2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ....................8

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ....................15

*Linman v. Marten Transp., Ltd.*,
22-CV-204-JDP, 2023 WL 2562712 (W.D. Wis. Mar. 17, 2023) ....................14, 17, 18

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................20

*Miller v. Vonage Am., Inc.*,
14-CV-379, 2015 WL 59361 (E.D. Wis. Jan. 5, 2015) ....................14

*Nabozny v. Optio Sols., LLC*,
583 F. Supp. 3d 1209 (W.D. Wis. 2022), aff'd, 84 F.4th 731 (7th Cir. 2023) ....................6

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ....................15, 19, 20

*In re Numotion Data Incident Litig.*,
3:24-CV-00545, 2025 WL 57712 (M.D. Tenn. Jan. 9, 2025) ....................8

*Okash v. Essentia Health*,
CV 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ....................19

*Okey v. Runde Chevrolet, Inc.*,
2023 WI App 62, 998 N.W.2d 849 ....................7

*Reetz v. Advocate Aurora Health, Inc.*,
2022 WI App 59, 405 Wis. 2d 298, 983 N.W.2d 669 ....................14, 18

*Rider v. Uphold HQ Inc.*,
657 F. Supp. 3d 491 (S.D.N.Y. 2023) ....................16

*Rodriguez v. ByteDance, Inc.*,
23 CV 4953, 2025 WL 672951 (N.D. Ill. Mar. 3, 2025) ....................12, 13

*Smith v. Loyola Univ. Med. Ctr.*,
23 CV 15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ....................12

*State v. Tate*,
2014 WI 89, 357 Wis. 2d 172, 849 N.W.2d 798 ....................9

*Stevens v. TD Bank, N.A.*,
CV 24-8311, 2025 WL 1779164 (D.N.J. June 27, 2025) ....................................4, 5, 15

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ....................................................................................21

*T.D. v. Piedmont Healthcare, Inc.*,
1:23-CV-5416-TWT, 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024) .................................20

*Taha v. Int'l Bhd. of Teamsters, Local 781*,
947 F.3d 464 (7th Cir. 2020) ..........................................................................................4

*Thermal Design, Inc. v. Am. Soc. of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*,
775 F. Supp. 2d 1082 (E.D. Wis. 2011)..........................................................................10

*Uebelacker v. Rock Energy Coop.*,
21-CV-177-JDP, 2022 WL 1121779 (W.D. Wis. Apr. 14, 2022)........................................13

*Washington v. Flixbus, Inc.*,
3:25-CV-00212-H-MSB, 2025 WL 1592961 (S.D. Cal. June 5, 2025) ..................................3

*Watercraft Sales Inc. v. Van de Water*,
2022 WI App 27, 974 N.W.2d 893....................................................................................7

*Yeftich v. Navistar, Inc.*,
722 F.3d 911 (7th Cir. 2013) ..........................................................................................2

**Statutes**

18 U.S.C. § 1030(a)(2)(C) ..........................................................................................12

18 U.S.C. § 1030(e)(1)....................................................................................................12

18 U.S.C. § 2702(a)(1)....................................................................................................11

Computer Fraud and Abuse Act ..................................................................................12, 13

Deceptive Trade Practices Act, Wis. Stat. § 100.18 ............................................................9

Federal Food, Drug, and Cosmetic Act ...........................................................................16

FTC Act ....................................................................................................................15, 16

Stored Communications Act, 18 U.S.C. § 2702 ("SCA") ..........................................11, 12, 13

Wis. Stat. § 100.18(1) ................................................................................................9, 10

Wis. Stat. § 100.18(11)(b)(2) ..........................................................................................11

Wis. Stat. § 968.27(13) ..... 9

Wis. Stat. § 968.34 ..... 9

Wisconsin Consumer Act, Wis. Stat. § 423.301 ..... 8, 9

**Other Authorities**

Rule 12(b)(6) ..... 4

*T.D.*, 2024 WL 5284883 at *4 ..... 20

## INTRODUCTION

Plaintiff David Gassman's ("Gassman") response brief only highlights the dubious nature of his claims. The First Amended Complaint ("FAC") contains no allegations of information *specific to* Gassman that was tracked and disclosed. Rather, it contains nothing but generalities and speculation as to the *possibility* of disclosure of Plaintiff's and others' personal identifying information. That is because Plaintiff has no actual knowledge of any information of his that has been disclosed. In reality, this entire lawsuit is predicated on Plaintiff's speculation that, because he received advertisements on social media, Guardian must have sold his personal financial information to third parties who then used it to advertise to him. Such a conjectural leap is wholly insufficient to state a claim, even under federal notice pleading standards.

Plaintiff's response also highlights that the multitude of screenshots he includes in his FAC defeat his claims. He concedes that the screenshots do not show *any* personal information being tracked – including when personal information such as a social security number is input by a visitor – but argues that "the code" might be secretly disclosing information beyond what the screenshots show. Plaintiff's desperation is palpable by his repeated citation to "research" done by his consulting expert, which is inappropriate in response to a motion to dismiss. Plaintiff cannot disregard his own allegations. The screenshots are not complicated – they depict the information that is input by a user and the information that is tracked, and none of those screenshots show tracking of personal information input by a visitor.

Plaintiff's response also doubles down on the frivolous nature of many of his claims, continuing to try to smash a square peg into a round hole. None of his claims are viable, and many lack a good faith basis in law and fact. The FAC should be dismissed, with prejudice.

## ARGUMENT

### I. Plaintiff's Allegations Establish that the Pixels Did Not Track His Personally Identifiable Information

In its opening brief, Guardian pointed out that "personally identifiable information" means information that is actually capable of identifying an individual, and that not a single one of the twenty screenshots included by Plaintiff support his allegations that any such information was actually tracked by the pixels. ***None*** of those screenshots contain Plaintiff's name or contain any personally identifiable information (even when such information is input by a visitor into the web forms), and instead show merely *the webpage accessed and what was clicked on* – exactly what Guadian's privacy policy discloses that it tracks.

Plaintiff does not dispute that the screenshots do not depict any personal information being tracked. Instead, he argues that this is an improper argument on a motion to dismiss because it challenges the truth of his allegations. Not so. To survive dismissal, a complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged," and where it "pleads facts that are merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). "In such a case, the inference of liability is merely speculative." *Id.* Further, the Court need not accept as true contradictory allegations or allegations contradicted by exhibits. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 (7th Cir. 2004).

While Plaintiff may allege that Guardian tracks visitors' personal information, his own included screenshots establish that to be false, as they show that none of the personal information input by a visitor is tracked by the pixels. *See E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (holding that a plaintiff "pleads itself out of court" when its allegations do not rise above a speculative level). Despite Plaintiff including the screenshots to

show the Court what the pixels allegedly track, he now asks the Court to ignore those screenshots because "the code" could be secretly disclosing additional information beyond what is shown in the screenshots, even going so far as to cite research from his "consulting expert" purportedly describing the pixels. Plaintiff's desperate reliance on an expert is wholly improper in a response to a motion to dismiss, and should be disregarded.

Even if considered, however, Plaintiff's "expert" research actually supports Guardian. The expert apparently saw Guardian's website in a Google tracking report. But the fact that a person visited a website is not personal financial information. And this is consistent with Guardian's privacy policy, which discloses that Guardian may track the websites visited by a user. Plaintiff's expert also apparently noted the use of cookies on Guardian's website. But Guardian's privacy policy disclosed to visitors that "[w]e may use non-personally identifiable information such as cookies and IP addresses to provide targeted marketing." (Dkt. 1-1); *see Washington v. Flixbus, Inc.*, 3:25-CV-00212-H-MSB, 2025 WL 1592961, at *4 (S.D. Cal. June 5, 2025) ("Defendant's Privacy Policy and Terms and Conditions explicitly notify users of the data practices at issue by disclosing the use of cookies and tracking pixels to track certain data and disclose that data to Defendant's business partners, including marketing partners. Accordingly, a user's acceptance of Defendant's terms constitutes actual consent to the data practices Plaintiff challenges.").

Plaintiff's arguments should be rejected. His own allegations contradict themselves and establish that no personal information is tracked or disclosed by the pixels. Plaintiff has "pled himself out of court," and his claims should be dismissed, with prejudice.

## II. <u>Plaintiff's FAC Should Be Dismissed Because it Contains No Allegations of Disclosure of Information Specific to Plaintiff</u>

When the allegations "do not permit the court to infer more than the ***mere possibility*** of misconduct, the complaint has alleged—but it has not 'shown —' that the pleader is entitled to

relief." *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (emphasis added). "That means a complaint must plead more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and more than "'naked assertions' devoid of 'further factual enhancement.'" *Id*. (citations omitted). The Court should "reject sheer speculation, bald assertions, and unsupported conclusory statements," which is exactly what Plaintiff has alleged here *Id.*

A recent opinion in a pixel case nearly identical to this one highlights the fatal deficiencies of Plaintiff's FAC. In *Stevens v. TD Bank, N.A*., CV 24-8311 (RMB/AMD), 2025 WL 1779164, at *3 (D.N.J. June 27, 2025), the plaintiff alleged that TD Bank embedded pixel technology on its website that "can capture information about users' interactions with the website," and "transmits cookies and event data to Meta and that Meta, in turn, uses this information for marketing and advertising purposes." *Id.* at *1. The court dismissed the complaint under Rule 12(b)(6), reasoning that while the technology is described in detail, the case cannot rest on the "capabilities of the Pixel" – rather, the "Pixel must have captured and disclosed [*plaintiff's*] personal financial information to state a claim." *Id.* at *4. The court reasoned that the plaintiff must connect the pixel technology to his own information, and allege "what information of *his* – if any – was actually transmitted from his browser to Meta." *Id.* Mere allegations that the plaintiff was a "TD customer and that he accessed his TD account through TD's website" are not enough. *Id.* The plaintiff must allege "which pages *he* visited, what financial products *he* viewed or applied for, or what information of *his* – if any – was actually transmitted from his browser." *Id.* The court distinguished the case from those that included screenshots of *the actual interactions of the plaintiff himself* on a defendant's website. *Id.* at *4-5.

Plaintiff's FAC contains the same type of generalized allegations as to what the pixels "are capable" of doing, rather than any specific allegations as to Plaintiff himself. None of the

screenshots are Plaintiff's actual interactions with Guardian's website, but rather show after-the-fact visits to the website by Plaintiff's counsel to use in this case. The allegations describe what the website does when "a Customer" does certain things: "[W]hen a Customer fills out a membership application, Guardian sends events to the following third parties . . ." (FAC, Dkt. 19, ¶ 52); "If a Customer chooses regular savings for their desired banking product, Guardian reports to LinkedIn and Google . . ." (¶ 54); "when a Customer agrees to Guardian's pre-disclosures, Guardian reports the Customer's agreement . . ." (¶ 56). Plaintiff's allegations that the pixels are capable of tracking IP addresses, cookies, and "browser fingerprints" are also not specific to Plaintiff and are speculation made "on information and belief." (*Id.*, ¶¶ 65, 67, 75, 84).

The brief section of Plaintiff's FAC about his personal experiences does not describe what webpages he visited, what products he looked at or applied for, what he clicked on, or what specific personal information he input into the website. (*Id.*, ¶¶ 129-135). Rather, he vaguely alleges that he "regularly uses Defendant's Website and online banking portal" and "inputted Personal and Financial Information." (*Id.*, ¶ 130). He then alleges without any specifics, dates, or details that he received "targeted advertising" on LinkedIn and Facebook. (*Id.*, ¶¶132, 135). This is pure speculation. Plaintiff assumes that merely because he believes Guardian's pixels "are capable of" transmitting personal information, and that he received advertisements, that his personal information must have been collected. That is wholly insufficient. *Stevens*, 2025 WL 1779164 at *6 (dismissing pixel complaint where " there are no well-pled allegations as to what personal financial information *belonging to Plaintiff* was allegedly improperly disclosed."). Plaintiff should not be able to go forward merely on "information and belief" allegations as to the nature of the pixel technology. Accordingly, as in *Stevens*, "[w]ithout well-pled factual allegations establishing that [Defendant] disclosed *Plaintiff's* personal financial information, Plaintiff cannot plead the

necessary elements of his claims, such as a breach of duty, causation, injury, or deception," and the FAC should be dismissed in its entirety. *Id.*

## III. Plaintiff Doubles Down on His Many Frivolous Claims

### *a. Invasion of Privacy (Count III)*

Plaintiff contends that his invasion of privacy claim should stand because the disclosure to third party companies of his personal financial information would be "highly offensive." Plaintiff relies on *Brahm v. Hosp. Sisters Health Sys*., 23-CV-444-WMC, 2024 WL 3226135, at *7 (W.D. Wis. June 28, 2024), which is distinguishable. In *Brahm*, the court found that the disclosure of the plaintiff's *health* information, including "information related to her infertility issues, which she alleges is associated with societal stigma and personal anguish," was sufficiently offensive to state a claim. This case is not about health information; this case is about apparent disclosure of IP addresses, "browser fingerprints," and financial information such as credit cards applied for. None of this information qualifies as "offensive." In *Nabozny v. Optio Sols., LLC*, 583 F. Supp. 3d 1209, 1211 (W.D. Wis. 2022), aff'd, 84 F.4th 731 (7th Cir. 2023), the court addressed whether the disclosure of the plaintiff's debt information was an invasion of privacy, ruling that it was not because the plaintiff did "not have a relationship with RevSpring such that its knowledge of her debt causes Nabozny any amount of embarrassment," and that disclosure to a third party vendor is not "certain—or even likely—to reach the public or anyone outside of RevSpring." *Id.*

The same logic applies here. Alleged disclosure of "financial information" – which, again, Plaintiff does not even allege what "financial information" belonging to him was disclosed – would not be "highly offensive" to a reasonable person. Nor would disclosing it to third-party technology companies be likely to result in that information being made public, as Plaintiff himself alleges that the only purpose for the disclosure was for advertising. (FAC, Dkt. 16, ¶ 39). Such business

to business communications are not "substantially certain to become one of public knowledge." *Okey v. Runde Chevrolet, Inc.*, 2023 WI App 62, ¶ 14, 998 N.W.2d 849.

***b. Conversion and Trespass to Chattels (Counts IV and V)***

The same case Plaintiff heavily relies on throughout his response, *Brahm*, held that a conversion claim in a data privacy case is not viable because conversion is "limited to chattel or identifiable, tangible, and moveable property," and reasoned that "[personally identifiable information/protected health information] does not qualify as a chattel." 2024 WL 3226135 at *2. Plaintiff now argues that conversion claims may arise with respect to intangible property such as money or software. *Brahm* easily disposed of this same argument, reasoning that the Wisconsin Supreme Court held that conversion claims only apply to physical property such as "physical software backup tapes" and money, citing cases holding that conversion does not extend to electronic documents. *Id.* at *2. The law is absolutely clear – conversion claims and trespass to ***chattels*** claims only lie with respect to physical property. Personally identifiable information is not physical property. Plaintiff's claims should be dismissed, with prejudice.

***c. Bailment (Count IX)***

"A bailment is created by delivery of ***personal property*** from one person to another, to be held temporarily for the benefit of the bailee, the bailor, or both under a contract, express or implied." *Watercraft Sales Inc. v. Van de Water*, 2022 WI App 27, ¶ 9, 974 N.W.2d 893 (emphasis added). A bailment requires the "bailee to have full and complete possession of the property so as to exclude for the period of the bailment the possession of the owner." *Dahl v. St. Paul Fire & Marine Ins. Co.*, 36 Wis. 2d 420, 423, 153 N.W.2d 624, 625 (1967).

Courts throughout the country applying a similar definition and interpreting bailment claims in data privacy cases have routinely held that such claims cannot stand. *See, e.g.*, *Galaria v. Nationwide Mut. Ins. Co.*, 2:13-CV-118, 2017 WL 4918634, at *1 (S.D. Ohio Oct. 31, 2017)

(collecting cases and noting that "[a] number of courts across the country have considered bailment claims in the context of data security breaches and concluded that the scenario in which a person provides personally identifiable information to a business and the information is stolen does not give rise to bailment liability."). Plaintiff relies on *Krupa v. TIC*, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023), but as another court noted, "aside from *Krupa*, basically every district court that has considered a bailment claim in the context of data breach litigation . . . has rejected the claim for various reasons, but most often because the plaintiffs cannot plausibly allege that the defendant was in *exclusive* possession of their PII, simply given the nature of PII." *In re Numotion Data Incident Litig*., 3:24-CV-00545, 2025 WL 57712, at *12 (M.D. Tenn. Jan. 9, 2025).

Plaintiff's bailment claim lacks any merit and should be dismissed, with prejudice.

***d. Wisconsin Consumer Act, Wis. Stat. § 423.301(Count XI)***

Without citation to any case law, Plaintiff argues that the plain language of the statute should be ignored and that he should be permitted to state a claim under Wis. Stat. § 423.301 based on Guardian's privacy policy. Wis. Stat. § 423.301 provides that "No merchant shall advertise, print, display, publish, distribute, or broadcast or cause to be advertised, printed, displayed, published, distributed or broadcast, in any manner any statement or representation ***with regard to the extension of consumer credit including the rates, terms or conditions for the extension of such credit***, which is false, misleading, or deceptive, or which omits to state material information with respect to the extension of credit that is necessary to make the statements therein not false, misleading or deceptive." Wis. Stat. § 423.301 (emphasis added).

Plaintiff argues that because the website allowed a customer to apply for credit, that the privacy policy should be deemed a statement relating to "the extension of consumer credit." Plaintiff's argument lacks any good faith basis. The statute provides examples of the types of misrepresentations that would give rise to a claim, including those relating to "rates" and "terms

or conditions for the extension of such credit" – in other words, specific aspects of the credits transaction itself. *Id.* A website privacy policy has absolutely nothing to do with the credit product offered or the ensuing credit transaction. Plaintiff's claim should be dismissed, with prejudice.

***e. Wiretapping, Wis. Stat. § 968.34 Claim (Count XIII)***

Once again, Plaintiff asks the Court to disregard the plain language of the statute. Wis. Stat. § 968.34 provides that no person "may install or use a pen register or a trap and trace device without first obtaining a court order." Wis. Stat. § 968.34. A "pen register" is defined as "a device that records or decodes electronic or other impulses that identify the numbers dialed or otherwise transmitted on the telephone line to which the device is attached." Wis. Stat. § 968.27(13). This definition is clear. Guardian's alleged use of pixels to track webpage activity does not "identify the numbers dialed" on an outgoing "telephone line." Guardian's website is not a telephone and it does not dial numbers. Guardian is plainly not using pen registers. The main case relied upon by Plaintiff, *State v. Tate,* 2014 WI 89, ¶ 6, 357 Wis. 2d 172, 180, 849 N.W.2d 798, 802, was not a civil wiretapping case under the statute and it involved technology that traced a *cell phone*. A website pixel has nothing to do with a phone. Plaintiff also cites *Brahm*, 2024 WL 3226135 at *5, which denied dismissal of wiretapping claims under a different section of the statute having nothing to do with pen registers. Plaintiff's argument is frivolous and should be rejected.

***f. Deceptive Trade Practices Act, Wis. Stat. § 100.18 (Count X)***

Plaintiff improperly attempts to rewrite his FAC through his response. Wis. Stat. § 100.18(1) precludes a person from making false advertising statements with the "intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service . . ." Wis. Stat. § 100.18(1). Plaintiff's FAC alleges that Guardian made misrepresentations relating to its attempt to

sell "***merchandise***." (Dkt. 19, ¶ 265) (emphasis added). The FAC makes no mention of Guardian making misrepresentations to sell "services," as Plaintiff now falls back on.

"Merchandise" has been defined by Wisconsin courts as physical items. *See, e.g.*, *Gallego v. Wal-Mart Stores, Inc.*, 2005 WI App 244, ¶ 13, 288 Wis. 2d 229, 238, 707 N.W.2d 539, 544 (referring to dictionary definition of "merchandise" as "manufactured goods bought and sold in any business."); *Thermal Design, Inc. v. Am. Soc. of Heating, Refrigerating & Air-Conditioning Engineers, Inc.,* 775 F. Supp. 2d 1082, 1088 (E.D. Wis. 2011) (referring to dictionary definition of "merchandise" as "[g]oods that are bought and sold in business; commercial wares."). Guardian is a credit union and does not sell physical goods or commercial wares. It does not sell "merchandise." Therefore, Wis. Stat. § 100.18(1) does not apply.

Even if Plaintiff's argument as to "services" was entertained, the representations in Guardian's privacy policy are not "intended to induce" the purchase of services from Guardian because its privacy policy is just that, a website privacy policy, and has nothing to do with the products being offered. In other words, no consumer is purchasing credit products from Guardian *because* of its website privacy policy.

Similarly, Plaintiff argues that reliance is not an element of a claim under the statute. However, it is well-settled that reliance is relevant to the question of "material inducement," and "[i]n certain instances, a court may rule as a matter of law that a misrepresentation did not induce a person to purchase a product, and that 'plaintiff would have acted in the absence of the representation.'" *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1053 (W.D. Wis. 2018). To that end, a plaintiff must plead specific facts that he himself relied on the statements to establish inducement; it is not sufficient to allege generally that the public or "purchasers" relied on the alleged misleading statements. *Thermal Design, Inc. v. Am. Soc. of Heating, Refrigerating & Air-*

*Conditioning Engineers, Inc.,* 775 F. Supp. 2d 1082, 1088. Plaintiff does not allege that he read the privacy policy or that he was induced to do anything because of that policy, and no reasonable person would be induced to purchase credit products based on a website privacy policy.

Finally, Plaintiff must show pecuniary harm as a direct result of the misrepresentation. Wis. Stat. § 100.18(11)(b)(2). Plaintiff cannot do so. Plaintiff does not alleged he read the privacy policy, does not allege that the privacy policy induced him to purchase services from Guadian, and does not allege any *pecuniary*, *i.e.* direct monetary harm, resulting from the privacy policy. His claim fails as a matter of law and should be dismissed, with prejudice.

***g. Stored Communications Act (Count XVI)***

Plaintiff cites multiple Seventh Circuit cases and states that those cases "found these same allegations sufficient," but *not one* of those cases addressed claims under the Stored Communications Act, 18 U.S.C. § 2702 ("SCA").

The SCA, in relevant part, prohibits a party "providing an electronic communication service to the public" from "knowingly divulge[ing] to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). Guardian's opening brief cited many cases finding that merely operating a website is not an "electronic communication service." Other than a single Ninth Circuit case in which the parties agreed that a website was subject to the SCA, Plaintiff does not cite a single case supporting that a website is an "electronic communication service" or refuting the cases cited by Guardian. A website offering products to a customer is simply not an electronic communication service. *See, e.g.*, *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 308 (E.D.N.Y. 2005) ("Amazon.com was not an electronic communication service provider despite the fact that it maintained a website and receives electronic communications containing personal information from its customers in connection with the purchase of goods.").

Moreover, the SCA only applies where communications are "stored" and later accessed – it does not apply where transmission is simultaneous. *See, e.g.*, *Smith v. Loyola Univ. Med. Ctr.*, 23 CV 15828, 2024 WL 3338941, at *5 (N.D. Ill. July 9, 2024) (discussing wiretapping claims involving simultaneous disclosure, "rather than the acquisition of stored electronic communications, which is addressed under the Stored Communications Act."). Here, Plaintiff repeatedly alleges that the alleged disclosure to third-parties was instantaneous, rather than Guardian later accessing stored information. (Dkt. 19, ¶¶ 34, 38). The SCA does not apply.

Finally, Plaintiff fails to meaningfully address how the alleged disclosure of user data input into the web forms would give rise to SCA liability. *Rodriguez v. ByteDance, Inc.*, 23 CV 4953, 2025 WL 672951, *9 (N.D. Ill. Mar. 3, 2025) (holding that disclosure of "user data" did not constitute a "communication" pursuant to the SCA, reasoning that the statements "do not establish that the CCP had access to user communications, as opposed to user data."). There is no allegation here of any "communication" other than input "user data." And to be sure, Plaintiff's FAC utterly fails to state what information he specifically input into Guardian's website.

Plaintiff's SCA claim fails as a matter of law and should be dismissed, with prejudice.

***h. Computer Fraud and Abuse Act (Count XVII)***

A Computer Fraud and Abuse Act ("CFAA") claim is predicated on unauthorized access to "*a computer*," thereby obtaining information from a "*protected computer*." *Rodriguez v. ByteDance, Inc.*, 23 CV 4953, 2025 WL 672951, at *3 (N.D. Ill. Mar. 3, 2025) (citing 18 U.S.C. §1030(a)(2)(C) (emphasis added)). A person exceeds authorized access when "he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Id.* (citations omitted). Thus, a claim requires there to be access to the plaintiff's "computer," *i.e.* a physical or digital device with data storage capabilities. 18 U.S.C. § 1030(e)(1). Plaintiff's claim does not implicate

a "computer." As he states in his response, he alleges that he input information into Guardian's website that Guardian kept and transmitted. There is no allegation that Guardian accessed any "computer" or other data storage device owned by Plaintiff. The CFAA does not apply.

Further, the "secret transmission of" personal information and "diminution in value of … [their] personal information" is not a cognizable loss under the CFAA. *Rodriguez*, 2025 WL 672951 at *3. Plaintiff's response admits that any "damages" he sustained stem from the "secret transmission" of his information, including the diminution in value of that information. (*See* FAC, Dkt. 19, ¶ 361). This is not the type of harm that can be redressed by the CFAA.

***i. Plaintiff's Federal Statutory Claims (Counts XIV, XV, XVI, and XVII) are Barred by the Two-Year Statute of Limitations***

Plaintiff argues in his response that the "discovery rule" applies and the statute of limitations did not begin to run until he discovered the existence of the pixels. Plaintiff is mistaken. "Actual knowledge of the violation is not required; instead, the statute of limitations begins to run when a plaintiff is presented with facts that would lead a reasonable person to investigate the possibility that her rights had been violated." *Uebelacker v. Rock Energy Coop*., 21-CV-177-JDP, 2022 WL 1121779, at *2 (W.D. Wis. Apr. 14, 2022) (analyzing statute of limitations defense to Stored Communications Act claim). The statute of limitations begins to run as soon as a plaintiff "had reason to know that something was afoot." *Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998) (analyzing statute of limitations defense to statutory federal wiretapping claims).

Here, it is irrelevant when Plaintiff had actual knowledge of the pixels. What is relevant is when he was aware of facts that would lead a reasonable person to investigate. Plaintiff's FAC alleges that he applied for a credit card with Guardian "sometime in 2022" and was denied, and "[s]hortly after Plaintiff used Defendant's Website to apply for a Guardian credit card, he received advertising on Facebook for different banks and applying for cards." (FAC, Dkt. 19, ¶¶ 129, 134-

135). Plaintiff alleges that this "targeted advertising" is one of the primary injuries he has sustained. (*Id.*, ¶ 145(c)). When Plaintiff allegedly began receiving "targeted advertisements" as early as 2022 "shortly after" applying for a credit card on Guardian's website, he was on notice of facts that would lead a reasonable person to investigate potential claims. Because Plaintiff filed this action in 2025 – more than 2 years after his learning of information that put him on notice of his claims – his federal statutory claims in Counts XIV, XV, XVI, and XVII are time-barred.

## IV. Plaintiff's Negligence (Count I) and Negligence *Per Se* (Count II) Claims Fail

Guardian's opening brief presented Wisconsin cases holding that there is no common law duty to protect information of the sort that Plaintiff alleges was tracked by the pixels. *See, e.g.*, *Miller v. Vonage Am., Inc.*, 14-CV-379, 2015 WL 59361, at *1 (E.D. Wis. Jan. 5, 2015) (finding no duty "to use reasonable care to protect from the dissemination of [the plaintiff's] personal information."). In his response, Plaintiff argues that a different standard applies to financial institutions, citing cases that denied motions to dismiss. But all of those cases are distinguishable because they are data breach cases in which personal information was wrongfully obtained by hackers. *See Reetz v. Advocate Aurora Health, Inc.,* 2022 WI App 59, ¶ 13, 405 Wis. 2d 298, 314, 983 N.W.2d 669, 677 ("Reetz's complaint is based on a data breach, which allowed unauthorized access of her PII, including fraudulent transactions and resulting overdraft fees in her bank account."); *Linman v. Marten Transp., Ltd.*, 22-CV-204-JDP, 2023 WL 2562712, at *1 (W.D. Wis. Mar. 17, 2023) ("Several years later, hackers gained access to Marten's servers and stole Linman's personal information.").

This is not a data breach case. The question is not whether Guardian had a duty to protect Plaintiff's personal information from hackers or a data breach, but whether Guardian owed a duty to ensure that Plaintiff's personal information was never seen by any third party. Plaintiff cites no case law to support such a broad duty. The Court should not create a legal duty where none exists.

Even if such a duty existed, Plaintiff has not pled a breach. Plaintiff must plead specifically that *his* personally identifiable financial information was not safeguarded and was disclosed by Guardian. *Stevens*, 2025 WL 1779164 at *6 (dismissing pixel case because the complaint did not allege what specific information *belonging to the plaintiff* was actually misappropriated via the pixels); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) ("Kurowski cannot reasonably expect to bring a lawsuit related to the invasion of her medical privacy and completely evade revealing what it is that she alleges Rush disclosed to third parties."); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1085 (W.D. Wash. 2024) ("Plaintiff's allegations as to herself are disconnected from any allegations of information sharing by Defendant."). As discussed above, Plaintiff fails to plead *any* facts as to the specific information belonging to him that was tracked and disclosed by the pixels. Rather, his FAC contains only generalities about what the pixels "are capable" of doing, and that Plaintiff "inputted information" into Guardian's website. Such allegations fall woefully short of pleading a breach of duty.

As to negligence *per se*, Guardian's opening brief cited cases holding that violations of the FTC Act and the GLBA cannot support negligence *per se* claims because Congress purposefully did not include private rights of action in those statutes. Plaintiff cites cases that held otherwise, but those cases are unavailing. *Johnson v. Nice Pak Products, Inc.*, 736 F.Supp.3d 639 (S.D. Ind. 2024) was explicitly disagreed with shortly after issuance by *Duffy v. Lewis Bros. Bakeries, Inc.*, 760 F. Supp. 3d 704, 722 (S.D. Ind. 2024), in which the court found "the lack of a private right of action in the FTC Act—as legislative evidence—suggests it likely cannot be used as part of a negligence per se claim." *Id.* ("[I]t remains equally difficult to see how the FTC Act can serve as a basis for Plaintiffs' negligence per se claim against Defendant when Congress similarly chose *not* to provide a private right of action but instead vest exclusive enforcement with the

FTC."). None of the other cases cited by Plaintiff address the clear lack of any statutory intent by Congress to impose civil liability in either statute when enforcement is vested solely with the FTC. Permitting a negligence *per se* claim would be creating a private right of action where none exists. The Court should follow the overwhelming weight of authority and choose not to do so. *See, e.g.*, *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 503 (S.D.N.Y. 2023) (dismissing negligence *per se* claim premised on GLBA and FTCA because "to allow such a claim would effectively afford a private right of action that the statute does not recognize -- contravening the legislative scheme.").

Plaintiff's negligence *per se* claim also fails because it is preempted. Where a negligence *per se* claim "would not exist before enactment of [a federal statute] and is based only on violations of federal law," the claim is impliedly preempted by federal law. *Johnson v. C.R. Bard Inc.*, 19-CV-760-WMC, 2021 WL 1784661, at *10 (W.D. Wis. May 5, 2021) (finding claim preempted because it was "based solely on some alleged violation of the FDCA or its implementing regulations."). Plaintiff argues that preemption does not apply because his claim is not solely based on violations of the FTC Act or the GLBA, but on Wisconsin common law duties. However, as discussed above, there is no common law duty not to ensure the non-disclosure of information. The only purported "duty" stems directly from the FTC Act and GLBA, requiring dismissal of Plaintiff's negligence *per se* claim.

Finally, Plaintiff's response does nothing to counter Guardian's argument that he has not alleged damages. Plaintiff has failed to allege *anything* specific to him as to the personal information that was disclosed, and how that disclosure directly caused him harm. There are no specific allegations of Plaintiff's harm or of any gain by Guardian. Vague, general allegations are not sufficient. Plaintiff's negligence and negligence *per se* claims fail in all respects.

## V. <u>Plaintiff's Breach of Express and Implied Contract Claims (Counts VI and VII) Fail</u>

Plaintiff again relies on *Brahm* in arguing that he has stated a claim for breach of contract. But once again, *Brahm* is inapposite. *Brahm* analyzed only an implied contract claim, not an express contract claim, and found that a patient in the hospital system stated a claim for implied contract because the defendant allegedly made "promises that go well beyond an implicit promise to comply with [HIPAA] law." 2024 WL 3226135 at *3. This case is different.

Plaintiff's FAC does not allege that Guardian's privacy policy made promises beyond what was required by federal law. Plaintiff's response relies on Guardian's promise to "safeguard and maintain the confidentiality of customers' information." But the GLBA, cited in Plaintiff's FAC, provides that a financial institution has a duty "to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." (FAC, Dkt. 19, ¶ 10). Guardian's privacy policy therefore does *exactly* what the GLBA requires. Policies such as this cannot give rise to a contract claim. *See In re Banner Health Data Breach Litig.*, CV-16-02696-PHX-SRB, 2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017) (holding that privacy policy promising to keep patients' information secure "cannot be read as a promise to do anything above and beyond what is already required by law," and therefore "this promise is simply not supported by consideration because Defendant was already under a preexisting legal duty to protect Plaintiff's information.").

Plaintiff's contract claims against Guardian also fail because the website privacy policy was not part of a broader contractual relationship such as hospital-patient or employee-employer. *Linman v. Marten Transp., Ltd.*, 22-CV-204-JDP, 2023 WL 2562712, at *5 (W.D. Wis. Mar. 17, 2023), is instructive. In *Linman*, the plaintiff applied for a job and provided his personal information to the defendant. Years later, that information was obtained by hackers in a data breach. The court found that the plaintiff's contract claims arising out of a website privacy policy

failed because a "company's privacy policy, standing alone," does not create "an implied contract to protect personal information." *Id.* at *5. The court distinguished cases involving "promise[s] to protect the plaintiffs' data" as part of a "broader contractual relationship" where the plaintiff provided "valuable consideration – money or labor" to the defendant. *Id.*

Similar to *Linman*, the basis of Plaintiff's claim is that he entered his information into applications on Guardian's website. (FAC, Dkt. 19, ¶¶ 129, 134-135). He does not allege that he paid any consideration specifically for safeguarding his private information, nor does he allege facts supporting any form of broader contractual relationship. Rather, the website privacy policy is just that – a policy Guardian follows when website visitors input their personal information, even if that visitor does not end up using Guardian's services. Merely visiting a website that has a privacy policy does not create a contractual relationship. *See also Reetz v. Advocate Aurora Health, Inc*., 2022 WI App 59, ¶ 25, 405 Wis. 2d 298, 324, 983 N.W.2d 669, 682 (dismissing breach of contract claim where there was no requirement as part of a broader contractual relationship for the plaintiff to provide personally identifiable information).

## VI. <u>Plaintiff's Unjust Enrichment Claim (Count VIII) Should be Dismissed</u>

Plaintiff's conclusory allegation that he "conferred a monetary benefit" unto Guardian is insufficient to state a claim for unjust enrichment. Sharing personally identifiable information does not give rise to an unjust enrichment claim because it does not confer a monetary benefit. *Linman*, 2023 WL 2562712 at *6 (dismissing unjust enrichment claim where the plaintiff did not allege that the defendant profited from the information or that it had value); *Reetz,* 2022 WI App 59, ¶ 29 ("Unjust enrichment generally refers to a monetary benefit conferred upon a defendant and here, the facts alleged fail to show that there was a monetary benefit to Aurora such that it would have unjust enrichment if it did not protect Reetz's [personally identifiable information]."). As the court recently stated in *Giasson v. MRA - Mgmt. Ass'n, Inc*., 24-CV-839-JPS-JPS, 2025 WL

1025173, at *16 (E.D. Wis. Apr. 7, 2025), courts have "largely rejected unjust enrichment claims" premised on "the conferral of PII," and "the Court is inclined to agree with the reasoning in those cases." *Id.* (dismissing unjust enrichment claim where the complaint failed to allege a "measurable, economic" benefit to the defendant).

While Plaintiff alleges he paid for the financial services provided by Guardian, Plaintiff's allegations do not demonstrate that there was any separate consideration paid specifically for Guardian's alleged promise to safeguard his information. Merely providing information to Guardian in an application and separately paying for financial services does not constitute a monetary benefit specific to the entrustment of Plaintiff's personal information. Plaintiff's unjust enrichment claim fails and should be dismissed, with prejudice.

## VII. Plaintiff's Wisconsin Wiretapping Claims (Counts XII and XIII) and Federal Wiretapping Claims (Counts XIV and XV) Should be Dismissed

Plaintiff's response does not even address the argument raised by Guardian. Plaintiff asserts that even though Guardian was a party to the alleged communications made via its website, the crime-tort exception applies because Guardian's purposes in allegedly intercepting the communications was to commit a tortious act. But Guardian's motion argued that the crime-tort exception cannot apply in pixel cases because the alleged interception and disclosure occurs simultaneously and therefore there is no independent tortious act. *See, e.g.*, *Nienaber*, 733 F. Supp. 3d at 1095 (holding that the alleged "transmission of communications to third parties like Facebook" was simultaneous with interception and the crime-tort exception cannot apply where the criminal or tortious act "is the alleged wiretapping itself."); *Okash v. Essentia Health*, CV 23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (holding that "the simultaneous interception and disclosure of information to Meta" does not implicate the crime-tort exception because there must be an independent tortious act separate in time from the wiretapping itself);

*T.D. v. Piedmont Healthcare, Inc.*, 1:23-CV-5416-TWT, 2024 WL 5284883, at *4 (N.D. Ga. Dec. 10, 2024) (holding that the crime-tort exception cannot apply because there was no distinct act separate from the wiretapping, as the "third parties in question included Facebook, and the transmission occurred simultaneously with interception via the Meta Pixel.").

Plaintiff makes no effort to distinguish these cases, and does not cite any case law holding that simultaneous interception and disclosure can satisfy the "independent tortious act" requirement of the crime-tort exception. Rather, Plaintiff relies solely on *Brahm*, 2024 WL 3226135, at *5, in which a motion to dismiss wiretapping claims was denied but did not address the issue of simultaneous interception and disclosure. The Court should follow *Nienaber* and similar cases in light of Plaintiff's allegations that the tracking pixels immediately and simultaneously disclosed all of Plaintiff's activity to the third parties. (FAC, Dkt. 19, ¶ 38 ("[W]hen Plaintiff and Class Members visited Defendant's Websites and communicated their Personal and Financial Information, that information was simultaneously intercepted and transmitted to the Third Parties."); *id.*, ¶ 34 ("When an individual accesses a webpage containing online tracking technology from a Third Party, the trackers instantaneously and surreptitiously duplicate communications with that webpage and send them to the Third Party.")). Because the purported tortious acts are not independent from the interception itself, the crime-tort exception does not apply.

Courts have also held that the crime-tort exception does not apply where the defendant's motivation was to make money. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022); *T.D.*, 2024 WL 5284883 at *4. Plaintiff again cites *Brahm*, which found that there was no binding Seventh Circuit precedent precluding wiretapping claims where the primary motivation of the defendant was profit. 2024 WL 3226135 at *5. However, *Brahm* also is not

binding authority, and the Court should instead follow the well-reasoned precedent set by the 9th Circuit that, "[w]here the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere.". *See Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999). As Plaintiff alleges, Guardian's pixels were used for marketing and advertising, and not criminal purposes. (FAC, Dkt. 19, ¶¶ 5, 39, 93, 324). No wiretapping claims may stand.

**CONCLUSION**

For the foregoing reasons, and those set forth in its opening brief, Defendant, Guardian Credit Union, respectfully requests that the Court grant its Motion to Dismiss and dismiss all counts of the Amended Complaint filed by Plaintiff, David Gassman, with prejudice, and grant such other and further relief that the Court deems just and equitable. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (noting that leave to amend should not be granted where "any amendment would be futile.").

Dated: July 14, 2025

Respectfully submitted,

By: *_/s/ Corey T. Hickman_*
Corey T. Hickman

*Attorney for Defendant*
*Guardian Credit Union*

Melissa A. Siebert
Corey T. Hickman
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
T: (312) 474-4490
F: (312) 300-5645
msiebert@cozen.com
chickman@cozen.com

## CERTIFICATE OF SERVICE

I hereby certify that, on July 14, 2025, I electronically filed the foregoing **Reply Memorandum in Support of Rule 12(b)(6) Motion to Dismiss Amended Complaint** with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

*/s/ Corey T. Hickman*