DAVID GASSMAN,

        Plaintiff,

        Case No. 25-cv-0176-bhl

    v.

GUARDIAN CREDIT UNION,

        Defendant.

## ORDER ON MOTION TO DISMISS

In this putative class action, Plaintiff David Gassmann alleges that Defendant Guardian Credit Union tracked his Personal and Financial Information (PFI) during his visits to its website and then improperly shared the PFI with third parties. He seeks to represent a class of similarly situated Guardian customers in pursuing 17 different state and federal causes of action. Guardian has moved to dismiss all 17 claims. For the reasons set forth below, the Court will grant Guardian's motion, but only in part. Even reading Plaintiff's factual allegations generously, several of his claims fail as a matter of law. Guardian's challenges to the remaining claims fail, however, at least at this stage of the proceedings.[1]

### MOTION TO DISMISS STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint must contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must do more, however, than "recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he pleading standard Rule 8 announces

---

[1] Both parties' filings leave something to be desired. Plaintiff's multi-count complaint includes legal theories that have no plausible application to the facts alleged. For its part, Guardian's motion to dismiss repeatedly criticizes Plaintiff for not providing supporting facts, even though this case remains at the pleading stage. The Court encourages counsel to focus their efforts on legitimate disputes and to avoid wasting judicial resources.

does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint survives a 12(b)(6) motion when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). The complaint will be dismissed if it fails to allege sufficient facts to state a claim on which relief may be granted. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

## BACKGROUND ALLEGATIONS

Plaintiff David Gassman is a citizen of Wisconsin and customer of Defendant Guardian Credit Union. (ECF No. 19 ¶16.) He purports to bring this action on his own behalf and on behalf of a class of similarly situated Guardian customers. (*Id*. ¶1.)

Guardian is a non-federal credit union organized under Wisconsin law with its principal place of business in Oak Creek, Wisconsin. (*Id*. ¶17.) Guardian operates and encourages its customers to use its website, www.guardiancu.org, to access their account information, to access Guardian's financial services, and to apply for financial products like credit cards. (*Id*. ¶2.) Without its customers' knowledge or authorization, however, Guardian secretly configured and implemented code-based tracking devices ("trackers" or "tracking technologies") into its website to collect its customers' PFI, which it then disclosed to third parties for its own benefit. (*Id*. ¶¶3–5.) Guardian's sharing of PFI also profited the third parties with whom it shared the information. (*Id*. ¶5.)

The PFI that Guardian collected and shared included: details from customers' membership applications like customers' status as new members, details about the banking products they selected, features they chose for their accounts, their agreement to the application pre-disclosures, beneficiary information, co-applicant information, how they decided to fund their new accounts, banking portal and portal registration information, and credit card application details. (*Id*. ¶4.)

Guardian did not disclose to Plaintiff or other customers that it was sharing their PFI with third parties. (*Id*. ¶7.) Nor did it obtain their written authorization to do so. (*Id.*) Guardian also failed to allow Plaintiff or other customers any "real opportunity" to opt-out of its disclosure of their information. (*Id.*)

## ANALYSIS

Plaintiff includes 17 claims in his Amended Complaint: Negligence (Count I); Negligence *per se* (Count II); Invasion of Privacy – Disclosure of Private Facts, Wis. Stat. §995.50 (Count III); Conversion (Count IV); Trespass to Chattel (Count V); Breach of Express Contract (Count VI); Breach of Implied Contract (Count VII); Unjust Enrichment (Count VIII); Bailment (Count IX); Violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18(1) ("DTPA") (Count X); Violation of the Wisconsin Consumer Protection Act, Wis. Stat. §423.301 (Count XI); Violation of Wisconsin's Electronic Surveillance Control Law, Wis. Stat. §968.27 ("ESCL") (Count XII); Violation of Wisconsin's Electronic Surveillance Control Law, Wis. Stat. §968.34 (Count XIII); Violation of the Electronic Communications Privacy Act ("ECPA") 18 U.S.C. §2511(1) (Count XIV); Violation of the Electronic Communications Privacy Act 18 U.S.C. §2511(3)(A), Unauthorized Divulgence by Electronic Communications Service (Count XV); Violation of Title II of the Electronic Communications Privacy Act ("Stored Communications Act") 18 U.S.C. §2702 (Count XVI); and Violation of the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. §1030 (Count XVII). (*Id.* ¶14.)

Guardian moves for the dismissal at the pleading stage of all 17 claims. In addition to multiple claim-specific challenges, Guardian offers a general attack on the fundamental premise of Plaintiff's entire case, insisting that its use of "common web analytics tools" called "pixels" to gather anonymized information about its customers is entirely legitimate and lawful. (ECF No. 27 at 9.) Guardian argues that it uses pixels *to anonymously* track specific types of information, including the webpage URLs that its customers visit and the items they click on, without connecting that information to any individual website visitor and without tracking or disclosing any information that could identify the visitor. (*Id.* 9–10.) Guardian further argues that its use of pixels is fully consistent with and disclosed in its privacy policy. (*Id.* at 10.) Pointing to a "multitude" of screenshots peppered throughout the Amended Complaint, Guardian further argues that Plaintiff's allegations of impropriety are disproved by his own pleading. (*Id.* at 9–10.) While Guardian's global attack may prevail in the end, it is premature. This argument assumes much in terms of the underlying facts and is thus better made at summary judgment. It also asks the Court to accept Guardian's description of the meaning of the various screenshots included in the Amended Complaint and, improperly, to construe Plaintiff's allegations concerning those screenshots against him. These flaws aside, several of Guardian's claim-specific arguments have merit, and the Court will therefore grant its motion in part.

**I.** **Plaintiff Has Adequately Pleaded His Common Law Negligence Claim, but His Negligence Per Se Claim Fails as a Matter of Law (Counts I & II).**

Plaintiff's first two claims are for negligence and negligence per se. (ECF 19 ¶¶169–94.) Guardian seeks dismissal of both claims. While the Court will allow Plaintiff to proceed with a general negligence claim under Wisconsin law, his negligence per se claim will be dismissed.

Under Wisconsin law, a claim for negligence has four elements: "(1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001); *Giasson v. MRA – Mgmt. Assoc., Inc.*, 777 F.Supp.3d 913, 930 (E.D. Wis. 2025). Plaintiff alleges that Guardian owed him and other customers "a duty to exercise reasonable care in handling and using" their PFI, including a duty to protect that information from unauthorized disclosure and use. (ECF No. 19 ¶171.) He further alleges that Guardian breached these duties by disclosing and providing access to his and other customers' PPI to third parties. (*Id*. ¶¶174, 177.) And he contends that these breaches "actually and proximately caused" injury to himself and other customers. (*Id*. ¶¶177–80.) Facially at least, these allegations cover all four elements of a Wisconsin negligence claim.

Guardian argues that Plaintiff's negligence claim must be dismissed because the law does not impose a specific duty on it to protect its customers' private information. (ECF No. 27 at 27.) This argument fails to address the fundamental principles and inquiry underlying the duty of ordinary care under Wisconsin law. In *Hoida, Inc. v. M & I Midstate Bank*, 717 N.W.2d 17, 28–29 (Wis. 2006), the Wisconsin Supreme Court explained that Wisconsin imposes a general duty to exercise ordinary care that varies depending on the circumstances presented. Accordingly, if a person acts or fails to act in a way that a "reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property, he or she is not exercising ordinary care under the circumstances, and is therefore negligent." *Id*. at 29. And "the existence of a duty of ordinary care encompasses what is reasonable according to facts and circumstances present in each individual case." *Id*. Wisconsin then limits the scope of this general duty of ordinary care through the imposition of six judicial public policy factors. *Id*. at 31–32. At this stage in the proceedings, the Court is not prepared to say, as a matter of law, that Guardian owed no duty of care to its customers in the circumstances alleged.

Guardian cites *Miller v. Vonage Am., Inc.*, 14-CV-379, 2015 WL 59361, at *1 (E.D. Wis. Jan. 5, 2015), for the proposition that there is never a duty under Wisconsin negligence law to

protect customers' personal information. (ECF No. 27 at 27–28.) This overstates the Court's holding. In *Miller*, the plaintiffs, in their initial complaint, asserted a negligence claim against a telephone services provider that had inadvertently published the plaintiffs' home telephone number and address in various printed and on-line directories. 2015 WL 59361, at *1–2, *5. The Court granted the defendant's motion to dismiss those claims, concluding that *in the context presented* there was no duty on the provider "to use reasonable care to protect [the plaintiffs] from the dissemination of their personal information." *Id.* at *5. The Court did not hold that there is never a duty to use care in handling and disseminating personal information.

Guardian also tries to rely upon its contractual relationship with Plaintiff to defeat his negligence claims. Guardian cites Wisconsin caselaw holding that the existence of a contractual relationship may preclude a plaintiff from pursuing a negligence claim against the defendant unless a duty exists independent of the performance of the contract. (ECF No. 27 at 27 (citing *Madison Newspapers, Inc. v. Pinkerton's Inc.*, 545 N.W.2d 843, 846 (Wis. Ct. App. 1996).) The Court recognizes that, after the parties have established the scope of their duties to one another in contract, Plaintiff ultimately may not be able to pursue a tort remedy. But this issue cannot be resolved at this stage in the proceedings. Indeed, Guardian itself argues that its privacy policy does not impose any contractual duties to its customers. (*Id.* at 28 n. 5, 34.) Guardian cannot have it both ways. If its privacy policy does not act as a contractual limit on the scope of its responsibilities to its customers, Guardian cannot invoke that document as a shield against having a general duty of care. While discovery may reveal that the circumstances of Guardian's relationship with its customers preclude any duty sufficient to support a claim for negligence, the Court cannot resolve this issue on a motion to dismiss.

Relatedly, Guardian invokes Wisconsin's economic loss doctrine to insist that Plaintiff's sole remedy is in contract and that any tort claims are therefore barred. (*Id.* at 31–32.) Guardian's argument on the economic loss doctrine does not address Plaintiff's alleged damages that are unrelated to the loss of the benefit of his bargain. Again, Guardian's assertion also is made more complicated at this stage by its argument that its privacy policy is not a contract. (*Id.* at 28 n. 5, 34.) Similarly, it does not address Wisconsin case law that establishes that "the economic loss doctrine is inapplicable to claims for the negligent provision of services." [2] *Ins. Co. of N. Am. v.*

---

[2] Instead, Guardian cites two non-binding decisions applying other states' law on the economic loss doctrine in which courts ruled that plaintiffs' claims in relation to data breaches were barred by the economic loss doctrine. (ECF No.

*Cease Elec. Inc.*, 688 N.W.2d 462, 472 (Wis. 2004).  And Guardian also does not address whether the Court should construe the contract between it and Plaintiff as one predominantly for the provision of goods or services, and whether that determination can be made at this early stage. Wisconsin's economic loss doctrine does not provide a basis to dismiss Plaintiff's negligence claim at this stage.

Guardian also argues that Plaintiff's negligence claim must be dismissed because even if a duty existed, he has "failed to plead any breach of that duty."  (ECF No. 27 at 28–29.)  But, as noted above, Plaintiff expressly alleges that Guardian breached by disclosing and providing access to his and other customers' PFI to third parties.  (*Id*. ¶¶174, 177.)  Finally, Guardian's assertion that none of the information shared actually constituted PFI, (ECF No. 27 at 29), is a factual dispute that cannot be resolved on the pleadings.  Guardian's motion to dismiss Plaintiff's negligence claim is denied.

The Court agrees with Guardian with respect to its challenge to Plaintiff's negligence per se claim, however.  To state a claim for negligence per se under Wisconsin law, Plaintiff must allege that: (1) he suffered a type of harm that a particular statute was designed to prevent; (2) he was within the class of persons sought to be protected by that statute; and (3) the legislature expressed an intent that the statute become a basis for the imposition for civil liability.  *Tatur v. Solsrud*, 498 N.W.2d 232, 235 (Wis. 1993); *Marvin v. Zydus Pharmaceuticals (SUA) Inc.*, 203 F.Supp.3d 985, 989 (W.D. Wis. 2016).  Plaintiff alleges that he suffered injury from the unauthorized disclosure of his PFI in violation of the Federal Trade Commission Act (FTC Act) and the Gramm-Leach Biley Act (GLBA).  (ECF No. 30 at 27.)  He also insists that he is within the group of persons sought to be protected by both statutory schemes and that Congress intended that both statutes provide a basis for civil liability, but cites only an overruled Federal Trade Commission cease and desist order, with no explanation of how that order pertains to a plaintiff claiming negligence per se for a violation of the FTC Act.  (*Id.* (citing *In the Matter of LabMD, Inc.,* 2016-2 Trade Cases P 79708, 2016 WL 4128215 (F.T.C. Jul. 28, 2016), *overruled by LABMD, Inc., v. Fed. Trade Comm'n*, 849 F.3d 1221 (11th Cir. 2018)).)

---

27 at 32 (citing *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, 14-MD02586 ADM/TNL, 2018 WL 1189327, at *14 (D. Minn. Mar. 27, 2018) (applying Illinois's law on economic loss doctrine to plaintiff's negligence claim related to a data breach); *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 794 (W.D. Wis. 2019) (applying Iowa and Illinois law on economic loss doctrine to plaintiffs' negligence claims related to data breach).)

Guardian cites a number of district court decisions rejecting negligence per se claims based on alleged violations of the FTC Act and GLBA. (ECF No. 25 at 30–31.) These courts have noted that neither the FTC Act nor the GLBA provide for a private right of action and, finding no statutory language suggesting any legislative intent that either allow civil enforcement lawsuits, have dismissed negligence per se claims in parallel situations. *See e.g. In re: Netgain Tech., LLC*, No. 21-cv-1210, 2022 WL 1810606, at *15 (D. Minn. June 2, 2022) (dismissing plaintiffs' negligence per se claims based on a violation of Section 5 of the FTC Act); *Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF-EX, 2018 WL 5861362, at *9 (C.D. Cal. Sep. 18, 2018); *Rider v. Uphold HQ Inc.*, 657 F.Supp.3d 491, 503 (S.D.N.Y. Feb. 22, 2023) (dismissing plaintiffs' negligence per se claims for violations of the FTCA and GLBA because those statutes do not afford a private right of action, and recognizing them as a basis for finding negligence per se would contravene the legislative scheme). In response, Plaintiff asks the Court to follow a smaller number of courts that have allowed negligence per se actions to proceed in the face of motions to dismiss. (ECF No. 30 at 27–28.)

Having reviewed the caselaw, the Court finds the majority analysis more persuasive. Neither the statutory text of the FTC Act nor the GLBA creates a private right of action. *See* 15 U.S.C. §45; *see also* 15 U.S.C. §6801(a). As the statutory text does not suggest that Congress intended for these statutes to provide the underlying basis for state law negligence claims, Guardian's motion to dismiss Plaintiff's negligence per se claim will be granted.

## II. Plaintiff's Allegations Fail to State an Invasion of Privacy Claim under Wisconsin Law (Count III).

Plaintiff alleges that Guardian's sharing of his PFI gives rise to an invasion of privacy claim under Wis. Stat. §995.50, which provides for an award of equitable relief, compensatory damages, and attorney fees to anyone "whose privacy in unreasonably invaded." (ECF No. 19 ¶¶195–209); Wis. Stat. §995.50(1). The statute offers four alternate descriptions of an actionable invasion of privacy. Wis. Stat. §995.50(2)(am). Plaintiff invokes the third option. (ECF No. 19 ¶197.) Under this provision, an invasion of privacy occurs when "publicity" is "given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed." Wis. Stat. §995.50(2)(am)(3). Plaintiff alleges that Guardian intentionally configured and installed tracking technologies that it used to

record his PFI and then gave publicity to the PFI by disclosing it to third parties. (ECF No. 19 ¶¶200–01.)

Guardian argues for dismissal on two grounds. First, Guardian insists that Plaintiff has not alleged facts plausibly suggesting that his PFI was given "publicity" within the meaning of the statute. (ECF No. 27 at 17.) Second, Guardian further argues that any alleged disclosure of Plaintiff's PFI would not be sufficiently "embarrassing" to be highly offensive to a reasonable person. (*Id.* at 17–18.) The Court agrees with Guardian on the first point, making it unnecessary to address its secondary argument. But the Court also agrees that the information does not appear to be embarrassing within the meaning of Section 955.50(2)(am)(3).

As explained above, a claim under the prong of Section 995.50 that Plaintiff invokes requires him to allege and ultimately prove that the defendant gave "publicity" to a matter concerning his private life. The term "publicity" has a specific meaning in tort law. It means a matter being made public "by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Zinda v. La. Pac. Corp.*, 440 N.W.2d 548, 555 (Wis. 1989) (citing Restatement (Second) of Torts, §652D, cmt a. at 384); *Reetz v. Advocate Aurora Health, Inc.*, 983 N.W.2d 669, 681 (Wis. Ct. App. 2022). As the Restatement clarifies, this is different than "publication", a term of art in the law of defamation. Restatement (Second) of Torts, §652D, cmt a (referencing §577). While publication encompasses "any communication . . . to a third person," publicity requires the disclosure or communication to be made in a way that will with "substantial certain[ty]" result in the private information becoming a matter of "public knowledge." *Id*. Determining whether factual allegations rise to the level of "publicity" is context dependent. The Wisconsin Supreme Court has noted in passing that the publication of a matter in a manufacturing plant newsletter "may" be sufficient to provide publicity even if the newsletter has a small circulation. *Zinda*, 440 N.W.2d at 555. In *Hillman v. Columbia County*, 474 N.W.2d 913, 920 (Wis. Ct. App. 1991), the Wisconsin Court of Appeals construed a complaint "liberally" to conclude that allegations that a defendant orally communicated a jail inmate's HIV test results to employees and inmates at a jail were sufficient to satisfy the "publicity" requirement in the statute.

Based on the complaint's allegations, Guadian's alleged misconduct in this case—tracking and disclosing its customers' PFI to a handful of third-party companies—does not plausibly rise to the level of giving "publicity" to that information. Even if Plaintiff succeeds in proving the

tracking and disclosure were illicit and improper, he has not alleged that either Guardian or the transferees of the PFI disseminated the information in a manner that would make it "public knowledge." Indeed, the premise of Plaintiff's complaint is that the tracking and disclosure were done secretly. There is no suggestion in Plaintiff's complaint that either Guardian or the transferees of the PFI made the PFI public knowledge. Nor does Plaintiff allege that Guardian or the transferees intended to do so, rather than simply using it for their own benefit. Accordingly, Plaintiff's invasion of privacy claim will be dismissed.

Even if Plaintiff alleged sufficient facts to show that his PFI was given "publicity," he has not alleged facts to show that the information Guardian disclosed was sufficiently embarrassing to be highly offensive to a reasonable person. Sensitive facts unknown to the general public, like an allegation that an employee falsified his employment forms, *Zinda*, 440 N.W.2d at 555, that a person is HIV-positive, *Hillman*, 474 N.W.2d at 919–20, and private health information pertaining to a plaintiff's infertility, *Brahm v. Hospital Sisters Health Sys.*, 23-CV-444-WMC, 2024 WL 3226135, at *7 (W.D. Wis. June 28, 2024), are protected, but information that is generally known or innocuous is not, *see Mosley v. Oakwood Lutheran Senior Ministries*, No. 2022AP907, 2023 WL 4782874, at *7 (Wis. Ct. App. 2023) (plaintiff did not state a claim for invasion of privacy after her positive COVID-19 test was given publicity by her employer, because the information disclosed was not the type of information that a reasonable person would find "highly offensive"). The information that Plaintiff alleges was disclosed is simply not comparable to an allegation of fraud, a positive HIV status, a patient's infertility history, or other sensitive information, and a reasonable person would not find it highly offensive for this information to become known.

### III. Plaintiff's Conversion, Tresspass to Chattel, and Bailment Claims Fail as a Matter of Law (Counts IV, V & IX).

Plaintiff asserts three related common law tort claims—for conversion, trespass to chattel, and bailment—all of which are premised on Plaintiff's assertion that his PFI was tangible property. (ECF No. 19 ¶¶210–227, 257–63.) Because PFI is not tangible property it cannot be the subject of conversion, trespass to chattel, or bailment claims under Wisconsin law, and Plaintiff's claims based on these inapplicable legal theories will be dismissed.

Under Wisconsin law, "[c]onversion is the wrongful or unauthorized exercise of dominion or control over a chattel." *Md. Staffing Servs., Inc. v. Manpower, Inc.*, 936 F. Supp. 1494, 1507 (E.D. Wis. 1996) (quoting *Farm Credit Bank of St. Paul v. F & A Dairy,* 477 N.W.2d 357, 371

(Wis. Ct. App. 1991), *review denied,* 482 N.W.2d 107 (1992)). A "chattel" in turn is personal property and must be personal, movable, identifiable, and tangible. *See id.*(citing Black's Law Dictionary (5th ed. 1979)).

Guardian argues that Plaintiff's conversion claim fails as a matter of law because PFI is intangible personal property that cannot be converted. (ECF No. 27 at 18.) It points out that numerous courts have reached this conclusion in cases involving electronic records, personal identifying information, or related intangible property. *See Brahm*, 2024 WL 3226135, at *2; *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, No. 14-cv-748-wmc, 2016 WL 845341, at *27–28 (W.D. Wis. Mar. 2, 2016) (rejecting conversion claim relating to electronic records); *Lands' End, Inc. v. Genesys Software Sys., Inc.*, No. 13-cv-38-bbc, 2014 WL 266630, at *3 (W.D. Wis. Jan. 24, 2014) (rejecting conversion claim relating to copying of software); *Third Educ. Grp., Inc. v. Phelps*, No. 07-cv-1094, 2009 WL 2150686, at *7 (E.D. Wis. May 15, 2009) (rejecting conversion claims relating to trademarks, domain name, and corporate name). In response, Plaintiff cites *Methodist Manor of Waukesha, Inc. v. Martin*, 647 N.W.2d 409 (Wis. Ct. App. 2002), a case in which the Wisconsin Court of Appeals held that a nursing home could sue a resident's son for conversion based on allegations that he misappropriated money that was statutorily owed to the nursing home. *Id*. at 411–12.

The Court agrees with Guardian. Intangible personal property is not a thing that can be converted. *Methodist Manor* does not provide otherwise. It stands for the unremarkable proposition that money, when it is a finite amount and specific, can be the subject of conversion. Plaintiff does not allege that any finite or tangible property belonging to him was taken from him here. Indeed, Plaintiff develops no argument or theory to the contrary. Instead, in an effort to invoke almost every legal theory imaginable, Plaintiff tries to create a conversion claim from facts to which it simply does not apply. Accordingly, Plaintiff's conversion claim fails as a matter of law and will be dismissed.

Plaintiff's trespass to chattel and bailment claims fail for the same reason. Wisconsin law defines the tort of trespass to chattel as the "intentional interference with the possession or physical condition of a chattel in the possession of another, without justification." *See Wis. Power & Light Co. v. Columbia Cnty.*, 87 N.W.2d 279, 282 (1958). PFI is not a chattel. To the extent Plaintiff's PFI constitutes property, it is intangible property, not physical property, he possessed. Wisconsin law defines a bailment as "the delivery of personal property from one person to another to be held

temporarily for the benefit of the bailee, the bailor, or both." *RxUSA, Inc. v. Captial Returns, Inc.,* No. 06-C-790, 2009 WL 2029759, at *11 (E.D. Wis. July 10, 2009) (quoting *Yao v. Chapman,* 705 N.W.2d 272, 279 (Wis. Ct. App. 2005)).  A bailment also requires the "bailee to have full and complete possession of the property so as to exclude for the period of the bailment the possession of the owner." *Dahl v. St. Paul Fire & Marine Ins. Co.,* 153 N.W.2d 624, 625 (Wis. 1967).  Like the preceding theories, this tort simply does not fit the factual scenario underlying Plaintiffs' complaint.  The concept of bailment does not apply to intangible property like Plaintiff's PFI, which he contends Guardian tracked and shared with third parties. *See, e.g,, McLaughlin v. Taylor Univ.,* No. 1:23-CV-00527-HAB-SLC, 2024 WL 4274848, at *12 (N.D. Ind. Sept. 23, 2024) (dismissing bailment count in similar PFI case because the intangible property at issue could not be fully and completely possessed by the bailee).  Both claims will therefore be dismissed.

## IV.     Plaintiff Has Adequately Pleaded His Breach of Express and Implied Contract and Unjust Enrichment Claims (Counts VI-VIII).

Plaintiff tries to cover the waterfront of contract-related claims, alleging in separate counts that Guardian's tracking and sharing of his PFI: breached an express contract (Count VI); breached an implied contract (Count VII); and give rise to a claim for unjust enrichment, also called "quasi-contract" under Wisconsin law (Count VIII).

With respect to the breach of express and implied contract counts, Guardian makes three arguments for dismissal.  First, it contends these claims fail because Plaintiff relies upon violations of Guardian's privacy policies, which it contends it promulgated to comply with regulatory requirements and not to create contractual obligations.  (ECF No. 27 at 34–35.)  Second, Guardian argues that because it was required to issue its privacy policies by law any promises it made to Plaintiff within those policies are unsupported by consideration.  (*Id*. at 35.)  Third, Guardian contends that it did not breach the policies.  (*Id*. at 36.)

Guardian's challenges to the breach of contract claims fail, at least at the pleading stage. A breach of contract claim has three elements: (1) a valid contract; (2) a violation or breach of the terms of that contract; and (3) damages.  *Steele v. Pacesetter Motor Cars, Inc.*, 672 N.W.2d 141, 144 (Wis. Ct. App. 2003).  Plaintiff's breach of express and implied contract claims plausibly allege all three elements.  (ECF No. 19 ¶¶229–247.)  Whether Guardian's privacy policies created contractual obligations between the parties, whether consideration supports any promises made,

and whether Guardian breached its alleged promises are all issues requiring factual development. These arguments cannot be resolved at this stage in the proceedings.

Guardian's effort to dismiss Plaintiff's unjust enrichment claim likewise fails. Under Wisconsin law, a claim for unjust enrichment has three elements: "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof." *Seegers v. Sprague*, 236 N.W.2d 227, 230 (Wis. 1975) (internal quotation marks omitted) (quoting *Don Ganser & Assoc., Inc. v. MHI, Inc.*, 142 N.W.2d 781, 783 (1966)). Plaintiff's complaint alleges all three elements; that is sufficient for this stage of the proceedings. (ECF No. 19 ¶¶248–256.)

Guardian is correct that Plaintiff's unjust enrichment claim is fundamentally inconsistent with its simultaneous pleading of claims for breach of contract. If Plaintiff has an express contract with Guardian governing the tracking and sharing of his PFI, he cannot also have an implied contract or a quasi-contract. Put another way, resorting to theories of implied contract or unjust enrichment is unnecessary and cannot be squared with the existence of an "express" contract governing the matter. But the Federal Rules of Civil Procedure recognize that a plaintiff can plead inconsistent claims in the alternative, even when that approach leaves the defendant, and the Court, baffled. *See Diamond Center, Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F.Supp.2d 1009, 1017 (W.D. Wis. 2008).

V. **Plaintiff Has Adequately Pleaded Three of His Wisconsin Statutory Claims, (Counts X–XII), But His Claim Under Wis. Stat. §968.34 Fails as a Matter of Law (Count XIII).**

A. **Plaintiff Has Adequately Pleaded His Wisconsin Deceptive Trade Practices Act Claim (Count X).**

Plaintiff alleges that Guardian violated the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §100.18(1). (ECF No. 19 ¶¶265–270.) To assert a claim under this statute, a plaintiff must allege that the defendant made an "advertisement, announcement, statement or representation . . . to the public," containing an "assertion, representation or statement of fact" that is "untrue, deceptive or misleading," resulting in a pecuniary loss to the plaintiff. *See* Wis. Stat. §100.18(1). Plaintiff alleges that Guardian willfully misrepresented that it would protect its customers' PFI, causing damages to Plaintiff. (ECF No. 19 ¶¶266–270.)

Guardian first argues for dismissal based on Plaintiff's inclusion in paragraph 265 of the complaint of a block quotation of portions of Wis. Stat. §100.18(1). Guardian seizes upon Plaintiff's decision to include the term "merchandise" in the excerpted block quote and argues that Plaintiff's claim fails because Guardian does not sell "merchandise." (ECF No. 27 at 21–22.) This argument is superficial and ignores the entirety of the statutory language as well as the Plaintiff's other allegations. While Plaintiff's decision to highlight the irrelevant term "merchandise" in the block quote is odd, that decision does not alter the plain terms of Section 100.18(1). In full, the statute provides a remedy for consumers who are victimized by misleading representations made in connection with the sale of merchandise (as the block quote indicates) and in connection with the sale of "service[s] or "anything offered . . . to the public for sale." Wis. Stat. §100.18(1). This broad language encompasses the commercial relationship between a credit union and its customers.

Guardian's next argument for dismissal of Plaintiff's Deceptive Trade Practices Act claim challenge the veracity of Plaintiff's allegations rather than the sufficiency of the allegations. Guardian insists that Plaintiff cannot establish that he relied upon any misleading representation or that he suffered pecuniary harm. (ECF No. 27 at 22–23.) But these are factual issues inappropriate for resolution on a motion to dismiss. The complaint alleges that Plaintiff and members of the class would not have transacted business with Guardian if they had not been misled and that they suffered actual damages as a result. (ECF No. 19 ¶¶269–70). At this stage, that is enough.

Guardian makes an extremely brief last argument, that its "privacy policy is truthful and discloses exactly how the pixel technology works." (ECF No. 27 at 23.) This is a motion to dismiss; the Court cannot resolve this factual dispute in Guardian's favor at this stage and assume that "Plaintiff's claims are entirely predicated on supposed misrepresentations regarding Guardian's website privacy policy." (*Id.* at 20.)

Plaintiff's allegations are sufficient to cover the required statutory elements. Guardian's motion to dismiss Plaintiff's Deceptive Trade Practices Act claim will be denied.[3]

---

[3] The Seventh Circuit has confirmed that Wis. Stat. §108.18 claims must be pleaded with particularity and cannot be based on mere omissions. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 446 (7th Cir. 2011). Guardian does not raise either point, but both would be more appropriate grounds for a Rule 12 motion.

### B. Plaintiff Has Adequately Pleaded His Wisconsin Consumer Act Claim (Count XI).

Plaintiff also asserts a claim under a portion of the Wisconsin Consumer Act that proscribes the use of false, misleading, or deceptive statements in connection with extensions of consumer credit, Wis. Stat. §423.301. (ECF No. 19 ¶¶273–77.) In full, the statue provides:

> No merchant shall advertise, print, display, publish, distribute or broadcast or cause to be advertised, printed, displayed, published, distributed or broadcast, in any manner any statement or representation with regard to the extension of consumer credit including the rates, terms or conditions for the extension of such credit, which is false, misleading, or deceptive, or which omits to state material information with respect to the extension of credit that is necessary to make the statements therein not false, misleading or deceptive. With respect to matters specifically governed by the federal consumer credit protection act, compliance with such act satisfies the requirements of this section.

Wis. Stat. §423.301.

Guardian argues this claim should be dismissed because the misrepresentations alleged in the complaint relate to its privacy policies not to extensions of credit, and Section 423.301 therefore cannot apply. (ECF No. 27 at 19–20.) While this argument may have some validity, Guardian offers no supporting law beyond the statutory text. In response, Plaintiff highlights the lack of legal authority for this argument but then offers no countervailing support for his interpretation either. The Court will not decide this legal issue on such a limited record. Both sides can renew their positions, and present more fulsome arguments, at summary judgment.

Guardian also argues for dismissal on grounds that its privacy policy is not misleading and contains no misrepresentations. (*Id.* at 20–21.) As with its similar arguments in connection with its Deceptive Trade Practices Act claim, this contention raises factual issues that cannot be resolved at the pleading stage. Accordingly, Guardian's motion to dismiss Plaintiff's Section 423.301 claim is denied.

### C. Plaintiff Has Adequately Pleaded His Claim Under Wis. Stat. §968.31 (Count XII), but His Claim Under Wis. Stat. §968.34 Fails as a Matter of Law (Count XIII).

In counts XII and XIII, Plaintiff asserts claims for two different violations of the Wisconsin Electronic Surveillance Control Law, Wis. Stat §§968.27–.37. (ECF No. 19 ¶¶279–310.) Count

XII asserts that Guardian violated Wis. Stat. §968.31, which makes it a Class H felony to unlawfully intercept, share or use "wire, electronic or oral communication[s]." Count XIII asserts that Guardian violated Wis. Stat. §968.34, which makes it unlawful to install or use a "pen register or a trap and trace device" without a court order. Wisconsin law provides a civil remedy for violations of both sections. *See* Wis. Stat. §968.31(2m).

Guardian argues that Count XII must be dismissed because the complaint confirms that Guardian was a party to the intercepted communications and Section 968.31 generally excludes liability against persons who were parties to the intercepted communication. (ECF No. 27 at 37–38.) More specifically, Section 968.31(2)(c) provides:

(2) It is not unlawful under Sections 968.28 to 968.37:

*　　*　　*

(c) For a person not acting under color of law to intercept a wire, electronic or oral communication where the person is a party to the communication or where one of the parties to the communication has given prior consent to the interception unless the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the constitution or laws of the United States or of any state or for the purpose of committing any *other injurious act.*

(emphasis added). Plaintiff concedes that Guardian was a party to the intercepted communications but argues that Guardian remains subject to liability because the amended complaint alleges the communications were intercepted for the purpose of committing a crime, tort, or other injurious act. (ECF No. 30 at 35–36.) In reply, Guardian insists this "crime-tort" exception does not apply to cases like this because the alleged tort would have occurred simultaneously and not independently of the interception. (ECF No. 27 at 38–40.) Guardian cites a Western District of Washington case discussing the Electronic Communications Privacy Act (ECPA) and argues that the crime-tort exception is interpreted identical in both statutes. (*Id.* at 38 (citing *Nienabar v. Overlake Hosp. Med. Ctr.*, 733 F.Supp.3d 1072, 1095 (W.D. Wash. 2024)).) But the Wisconsin Statute is not identical to EPCA, it also proscribes interception by a party to the communication when the interception is "for the purpose of committing any other injurious act." Wis. Stat. §968.31(2)(c); *Desnick v. American Broadcasting Corp.*, 44 F.3d 1345, 1353 (7th Cir. 1995) (noting the difference between the Wisconsin and Federal provisions). And Plaintiff offers a relevant persuasive authority involving Section 968.31(2)(c), *Brahm,* 2024 WL 3226135 at *5–6. In *Brahm*, the court denied a motion to dismiss a claim brought under Section 968.31, concluding

that the disclosure and use of user data for "advertising, marketing, and revenue generation" could potentially satisfy the "injurious acts" branch of the Wisconsin exception. It noted that the issue would be "more appropriately addressed at summary judgment" with a more fully developed record. *Id.* at *6. The Court will take the same approach. While Guardian may ultimately be correct on the facts underlying Plaintiff's claims and the limits of Wisconsin law, this is an issue better addressed at summary judgment. Guardian's motion to dismiss Count XII is denied.

With respect to Count XIII, Guardian argues it cannot be held liable under Wis. Stat. §968.34 because the complaint does not allege that Guardian used a "pen register." (ECF No. 27 at 21.) The statute defines a "pen register" as "a device that records or decodes electronic or other impulses that identify the numbers dialed or otherwise transmitted on the telephone line to which the device is attached." Wis. Stat. §968.27(13). Guardian points out that Plaintiff's claims are premised on Guardian's alleged use of pixels to track website visits and a pixel is not a pen register as defined in the statute. (ECF No. 27 at 21.)

Plaintiff insists that the Court should construe the statutory language broadly to cover the tracking of his website activity as alleged in the Amended Complaint, citing *State v. Tate*, 849 N.W.2d 798 (Wis. 2014), and *Brahm*. (ECF No. 30 at 16–17.) But *Tate* involved an appeal from the denial of a suppression motion after law enforcement obtained a court order to track a suspect's cell phone using cell site information. 849 N.W.2d at 801–04. It says nothing about a criminal violation of Section 968.34 or the interpretation of the term pen register in this context; it merely references Section 968.34's existence in a footnote. *Id.* at 811, n.20 (referencing Wis. Stat. §968.34(2)(a) and discussing its potential relevance to a counterfactual proposition not at issue in the case). And *Brahm* does not address Section 968.34 or the definition of pen register *at all*. In *Brahm*, the court denied a motion to dismiss a violation of Section 986.31, but that is the claim in Count XII, not Count XII. 2024 WL 3226135 at *6. The decision is silent on Section 968.34 and does not help Plaintiff salvage this claim.

Because the Amended Complaint does not plausibly implicate a violation of Section 968.34, which is a criminal statute proscribing a specific type of conduct— the use of a pen register without a court order or outside of other permissible exceptions—Guardian's motion to dismiss Count XIII will be granted.

**VI. Plaintiff Has Adequately Pleaded His Federal Electronic Communications Privacy Act Claims (Counts XIV & XV) but His Claims Under 18 U.S.C. §2702 and 18 U.S.C. §1030 Fail as a Matter of Law (Counts XVI & XVII).**

Plaintiff's final four claims are based on alleged violations of federal statutes. In counts XIV and XV, Plaintiff asserts claims for violations of the federal Electronic Communications Privacy Act, 18 U.S.C. §2511, based on Guardian's having intercepted and disclosed his PFI. (ECF No. 19 ¶¶311–41.) Count XVI alleges that Guardian violated the federal Stored Communications Act, 18 U.S.C. §2702, by knowingly divulging his PFI. (*Id.* ¶¶342–57.) Finally, in Count XVII, Plaintiff contends Guardian violated the Computer Fraud and Abuse Act, 18 U.S.C. §1030, by intentionally accessing his computer in excess of its authority. (*Id.* ¶¶358–63.) Guardian argues for dismissal of all four counts on statute of limitations and other claim-specific grounds.

With respect to the statute of limitations, Guardian claims Plaintiff's February 4, 2025 complaint was filed too late. (ECF No. 27 at 26.) It points to provisions in the Electronic Communications Privacy Act and the Stored Communications Act requiring that claims be brought within two years of the discovery of a violation. (*Id.* (citing 18 U.S.C. §§2520, 2702(f)). Guardian also cites to 18 U.S.C. §1030(g), which requires a claim under the Computer Fraud and Abuse Act to be brought within two years "of the date of the act complained or of the date of the discovery of the damage." (*Id.*) Guardian then proceeds to argue that because Plaintiff alleges he was denied a credit card that he applied for on its website "sometime in 2022," he should have discovered his claims more than two years before he filed this lawsuit. (*Id.*) But Plaintiff does not affirmatively allege when he actually discovered the allegedly improper tracking, and this is a factual issue that cannot be resolved on the pleadings. Guardian can raise this as a defense with the benefit of a factual record at summary judgment. Guardian's attempt to dismiss these claims on statute of limitations grounds therefore fails.

The federal statutory requirements for Plaintiff's claims in Counts XIV and XV largely overlap with the state law requirements for Counts XII and XIII. Guardian seeks dismissal of the federal claims in Counts XIV and XV for the same reasons it contends Count XII should be dismissed. In Count XIV, Plaintiff alleges that Guardian violated 18 U.S.C. 2511(1) and 2511(3) which, like Wis. Stat. §968.31, prohibit the intentional interception, disclosure, and use of any wire, oral or electronic communication. Like its state law counterpart, Sections 2511(1) and

2511(3) exclude from liability anyone who is party to the underlying communication, subject to a crime/tort exception. While the ECPA's crime-tort exception does differ from its Wisconsin equivalent, as discussed above, the non-binding authorities Guardian cites do not support resolving this question at the motion to dismiss either. As with Guardian's challenge to Count XII, this argument may well have merit but is better resolved at summary judgment.

Guardian argues for dismissal of Count XVI on grounds that 18 U.S.C. §2702 applies only to persons or entities that provide an "electronic communication service." (ECF No. 27 at 23.) Guardian insists that it merely operates a website, it does not provide an electronic communication service and thus cannot be held liable under the statute. (*Id*.) It further argues that even if it could be such a service provider, it is only alleged to have divulged "data," not "communications." (*Id*. at 24.) The statute defines an electronic communication service as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. §2510(15).

Guardian appears correct that courts have generally interpreted this statute to apply to "providers of a communication service such as telephone companies, Internet or e-mail service providers, and bulletin board services." *El Paso Disposal, LP v. Ecube Labs Co.*, 766 F.Supp.3d 692, 709 (W.D. Tex. 2025) (quoting *Garcia v. City of Laredo, Tex.*, 702 F.3d 788, 792 (5th Cir. 2012)); *see also* S. Rep. 99-541, at 14 (1996) ("Existing telephone companies and electronic mail companies are providers of electronic communication services."). Courts have generally only applied this statute outside the context of conventional communication service providers, like internet service providers or email platforms, when the internet platform provides some capability for actually transmitting electronic communication to third parties. *El Paso Disposal*, 766 F.Supp.3d at 709. Merely providing services, or the ability to communicate internally with the company, to an online user does not transform a website into a facility under the statute. *Id.* at 710 (citing *Kaufman v. Nest Seekers, LLC,* No. 05-cv-6782, 2006 WL 2807177, at *6 (S.D.N.Y. Sep. 26, 2006); *Crowley v. CyberSource Corp.*, 166 F.Supp.2d 1263, 1270 (N.D. Cal. 2001)). Accordingly, Guardian's motion to dismiss Count XVI will be granted.

Guardian argues for dismissal of Count XVII because it maintains that Plaintiff does not plausibly allege that Guardian ever "accessed" Plaintiff's computer, within the meaning of 18 U.S.C. §1030. (ECF No. 27 at 25.) It points to Plaintiff's own allegations that he voluntarily accessed Guardian's website and provided information on forms that Guardian is alleged to have

tracked and then transferred to third parties. (*Id*. (citing ECF No. 19 ¶¶129–30, 134–35.)) In response, Plaintiff insists that when Guardian tracked and shared information about his visits to Guardian's website, Guardian exceeded any authority he gave it to access to his computer when he visited the website. (ECF No. 30 at 22.)

Plaintiff's argument makes little sense. His own affirmative act in accessing Guardian's website is simply not the same as Guardian accessing Plaintiff's computer. And he cites no authority that would equate these two very different scenarios. Because the underlying premise of the Amended Complaint simply does not implicate 18 U.S.C. §1030, Count XVII will also be dismissed.

## CONCLUSION

For the reasons discussed above, Guardian's motion to dismiss will be granted in part, and denied in part. While further development of the record may show that some or all of Guardian's factual contentions are true, and that Plaintiff's claims cannot survive summary judgment, Plaintiff's allegations are sufficient for at least some of his claims to survive past the pleading stage.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, ECF No. 24, is **GRANTED in part and DENIED in part**. Counts II, III, IV, V, IX, XIII, XVI, and XVII of Plaintiff's Amended Complaint, ECF No. 19, are **DISMISSED**.

Dated at Milwaukee, Wisconsin on March 31, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge