DAVID GASSMAN, individually and on behalf of all others similarly situated,

Plaintiff

v.

GUARDIAN CREDIT UNION

Defendant.

Civil Action No. 2:25-cv-176-BHL

## ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED CLASS ACTION COMPLAINT

Defendant, Guardian Credit Union ("Guardian"), by its undersigned counsel, hereby submits its Answer and Affirmative Defenses to the Amended Class Action Complaint.

## INTRODUCTION

1. Plaintiff brings this class action to address Defendant's outrageous, illegal, and widespread practice of disclosing—without consent—the Nonpublic Personal Information[1] and Personally Identifiable Financial Information[2] (together, "Personal and Financial Information") of Plaintiff and the proposed Class Members to third parties, including Google, LLC ("Google"), Google Tag Manager, Google Analytics, LinkedIn, Qualtrics, Adnxs, DoubleClick, and possibly others (collectively the "Third Parties") (in short, "the Disclosure").

---

[1] The United States Congress defines "nonpublic personal information" as "personally identifiable financial information-- (i) provided by a consumer to a financial institution; (ii) resulting from any transaction with the consumer or any service performed for the consumer; or (iii) otherwise obtained by the financial institution." The Gramm-Leach-Bliley Act, 15 U.S.C.A. § 6809(4)(A) ("GLBA").

[2] "Personally identifiable financial information means any information: (i) A consumer provides to [a financial institution] to obtain a financial product or service from [the financial institution]; (ii) About a consumer resulting from any transaction involving a financial product or service between [a financial institution] and a consumer; or (iii) [a financial institution] otherwise obtain[s] about a consumer in connection with providing a financial product or service to that consumer." 16 C.F.R. § 313.3(o)(1).

**ANSWER:** Defendant admits that Plaintiff has filed this lawsuit containing the allegations in the Amended Complaint, but denies the remaining allegations in paragraph 1.

2. Guardian is "one of the largest and most trusted financial resources in the community," offering the ability to "manage your money anywhere" to customers across the United States, including in Wisconsin.[3] To provide these services, Guardian operates and encourages its customers to use its website, https://www.guardiancu.org/ (the "Website"), on which customers can access their account information, access Guardian's financial services, and apply for financial products like credit cards.

**ANSWER:** Defendant's website is a document that speaks for itself, and Defendant denies the allegations in paragraph 2 to the extent they are inconsistent with or are an improper characterization of that document. Defendant admits that it provides a website for use by its customers, and that the website allows customers to access their account information, certain services offered by Guardian, and apply for financial products. Defendant denies the remaining allegations in paragraph 2.

3. Despite its unique position as a trusted credit union, Guardian used its Website to blatantly collect and disclose Consumers'[4] and Customers'[5] (collectively, "Customers") Personal and Financial Information to Third Parties uninvolved in the provision of financial services—entirely without their knowledge or authorization. Guardian did so by knowingly and secretly configuring and implementing code-based tracking devices ("trackers" or "tracking technologies") into its Website.

**ANSWER:** Denied.

---

[3] *About Us - Guardian Credit Union*, https://www.guardiancu.org/about-us/ (last visited Apr. 23, 2025) ("*About Us*").

[4] The term "consumer" means "an individual who obtains or has obtained a financial product or service from [a financial institution] that is to be used primarily for personal, family, or household purposes, or that individual's legal representative." 16 C.F.R. § 313.3; 15 U.S.C.A. § 6809(9).

[5] "Customer means a consumer who has a customer relationship with [a financial institution]." 16 C.F.R. § 313.3. The term "time of establishing a customer relationship" shall . . . in the case of a financial institution engaged in extending credit directly to consumers to finance purchases of goods or services, mean the time of establishing the credit relationship with the consumer." 15 U.S.C.A. § 6809.

2

4. Through these trackers, Guardian disclosed and continues to disclose Personal and Financial Information that Customers input into and accessed on Guardian's Website. This information includes, without limitation: details from Customers membership applications like Customers' status as new members, details about the banking products that Customers select, features they choose for their accounts, Customers' agreement to the application pre-disclosures, beneficiary information, co-applicant information, and how customers decide to fund their new accounts; banking portal and portal registration information, like when Customers access the banking portal and when Customers register for new portal accounts; and credit card application details like Customers' purpose of application, the specific credit cards that Customers select, co-applicant information, and whether Customers agree with disclosures required for the application.

**ANSWER:** Denied.

5. Upon information and belief, Guardian utilized data from trackers to improve and to save costs on its marketing campaigns, improve its data analytics, attract new customers, and generate sales. Guardian benefited from use of Customers' Personal and Financial Information. Guardian further allowed the Third Parties, who are uninvolved in Guardian's provision of financial services, to profit from its Disclosure of Customers' Personal and Financial information. And the Third Parties used Customers' Personal and Financial Information for themselves and disclosed to fourth parties who also profited off of it. Google, for example, will use the data collected from Customers of Guardian to sell ads to fourth parties who will further profit off of the use of that information.

**ANSWER:** Defendant admits that it has utilized pixel tracking technology for data analytics purposes on an anonymous basis, but denies that those trackers collect PII, PFI, or customer identities, and denies that there was any disclosure of PII or PFI to any third party. Defendant denies the remaining allegations in paragraph 5.

LEGAL\115310660\1

6.     Customers, like Plaintiff and Class Members, simply do not and cannot anticipate that a trusted financial institution will send their Personal and Financial Information to hidden Third Parties (who in turn share with fourth parties), all of whom profit off of it; likewise, when Plaintiff and Class Members used Defendant's Website, they thought they were communicating exclusively with a trusted financial institution.

**ANSWER:**   Defendant lacks knowledge sufficient to admit or deny what Plaintiff or putative class members anticipated or thought, and therefore denies the same. Defendant denies the remaining allegations in paragraph 6.

7.     At no time did Guardian disclose to Plaintiff or Class Members that it was sharing their Personal and Financial Information with the Third Parties for third- and fourth-party use. Plaintiff and Class Members never signed a written authorization permitting Defendant to send their Personal and Financial Information to the Third Parties who were uninvolved in the provision of financial services. And Guardian never allowed Plaintiff or Class Members a real opportunity to opt-out of its Disclosure.

**ANSWER:**   Denied.

8.     Defendant owed a variety of duties, including common law, statutory, contractual, and regulatory duties, to keep Plaintiff's and Class Members' Personal and Financial Information safe, secure, and confidential.

**ANSWER:**   Paragraph 8 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

9.     Furthermore, by obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Personal and Financial Information, Defendant assumed legal and equitable duties to those individuals to protect and safeguard their information from unauthorized disclosure.

**ANSWER:**   Paragraph 9 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

4

10.     The statutory and regulatory duties Guardian owed Customers include its obligations under federal law. For example, the GLBA requires that "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C.A. § 6801. Under this federal law, financial institutions like Guardian are explicitly prohibited from disclosing a Customer's Personal and Financial Information without sufficient advance notification and opt-out opportunity. 15 U.S.C.A. § 6801, *et seq*.

**ANSWER:**     Paragraph 10 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied. Further answering, the statutes referenced are written documents that speak for themselves, and Defendant denies the allegations in paragraph 10 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 10.

11.     Guardian ignored all its duties and obligations, including the GLBA's prohibition, by disclosing Customers' Personal and Financial Information without proper advance notification and opt-out rights as required under the GLBA.

**ANSWER:**     Denied.

12.     Examples of "Personal and Financial Information" included in the GLBA are indistinguishable from the types of information Guardian disclosed to Third Parties, including, among other things: (a) "[i]nformation a consumer provides to [Guardian] on an application to obtain a loan, credit card, or other financial product or service"; (b) "[t]he fact that an individual is or has been one of [Guardian's] customers or has obtained a financial product or service from [Guardian]"; (c) "information about [Guardian's] consumer . . . disclosed in a manner that indicates that the individual is or has been [Guardian's] consumer"; (d) "information that a consumer provides to [Guardian] or that [Guardian] or [its] agent otherwise obtain[s] in connection with collecting on, or servicing, a credit account"; "[a]ny information that a consumer provides to [Guardian] or that [Guardian] or [its] agent otherwise obtain[s] in

LEGAL\115310660\1

connection with collecting on, or servicing, a credit account; and (e) "any information [Guardian] collect[s] through an Internet 'cookie' (an information collecting device from a web server)." 16 C.F.R. 313.3(o)(2)(i).

**ANSWER:** The statutes referenced are written documents that speak for themselves, and Defendant denies the allegations in paragraph 12 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 12.

13. Guardian breached common law, statutory, and contractual obligations to Plaintiff and Class Members by, *inter alia*, (i) failing to adequately review its marketing programs and web based technology to ensure its Website was safe and secure; (ii) failing to remove or disengage technology that was known and designed to share Personal and Financial Information; (iii) aiding, agreeing, and conspiring with the Third Parties to intercept communications sent and received by Plaintiff and Class Members; (iv) failing to obtain the written consent of Plaintiff and Class Members to disclose their Personal and Financial Information to Third Parties for Third Party and fourth party use; (v) failing to protect Personal and Financial Information and take steps to block the transmission of Plaintiff's and Class Members' Personal and Financial Information through the use of tracking technology; (vi) failing to warn Plaintiff and Class Members; and (vii) otherwise failing to design and monitor its Website to maintain the confidentiality and integrity of its customers' Personal and Financial Information.

**ANSWER:** Denied.

14. Plaintiff seeks to remedy these harms and brings causes of action of Negligence (Count I); Negligence *per se* (Count II); Invasion of Privacy – Disclosure of Private Facts, Wis. Stat. § 995.50 (Count III); Conversion (Count IV); Trespass to Chattel (Count V); Breach of Express Contract (Count VI); Breach of Implied Contract (Count VII); Unjust Enrichment (Count VIII); Bailment (Count IX); Violation of the Wisconsin Deceptive Trade Practices Act,

6

Wis. Stat. § 100.18(1) ("DTPA") (Count X); Violation of the Wisconsin Consumer Protection

Act, Wis. Stat. § 423.301 (Count XI); Violation of Wisconsin's Electronic Surveillance Control

Law, Wis. Stat. § 968.27 ("ESCL") (Count XII); Violation of Wisconsin's Electronic

Surveillance Control Law, Wis. Stat. § 968.34 (Count XIII); Violation of the Electronic

Communications Privacy Act ("ECPA") 18 U.S.C. § 2511(1) (Count XIV); Violation of the

Electronic Communications Privacy Act 18 U.S.C. § 2511(3)(A), Unauthorized Divulgence by

Electronic Communications Service (Count XV); Violation of Title II of the Electronic

Communications Privacy Act ("Stored Communications Act") 18 U.S.C. § 2702 (Count XVI);

and Violation of the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. § 1030 (Count XVII).

**ANSWER:** Defendant admits that Plaintiff filed this lawsuit and asserted the stated claims, but denies that Plaintiff is entitled to any relief. Defendant denies the remaining allegations in paragraph 14.

15. Plaintiff brings this action, individually and on behalf of all others similarly

situated, for damages and equitable relief.

**ANSWER:** Defendant admits that Plaintiff filed this lawsuit both individually and on behalf of all others similarly situated and seeks damages and equitable relief, but denies that Plaintiff is entitled to any relief. Defendant denies the remaining allegations in paragraph 15.

## PARTIES

16. Plaintiff David Gassman is a natural person and citizen of Wisconsin, where he

intends to remain. Plaintiff Gassman is Guardian's Customer and is a victim of Defendant's

unauthorized Disclosure of Personal and Financial Information.

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the first sentence of paragraph 16, and therefore denies the same. Defendant admits that Gassman is a Guardian customer but denies the remaining allegations in paragraph 16.

7

17. Defendant Guardian is a non-federal credit union organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 7801 S Howell Ave., Oak Creek, WI 53154.[6]

**ANSWER:** Admitted.

18. Guardian's Registered Agent for Service of Process is Kevin Nitka.[7]

**ANSWER:** Admitted.

19. Guardian is a financial institution, as that term is defined by Section 509(3)(A) of the GLBA, 15 U.S.C. § 6809(3)(A).

**ANSWER:** Paragraph 19 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, admitted.

20. Guardian has corporate offices in Wisconsin, and maintains physical locations in the state of Wisconsin.[8]

**ANSWER:** Admitted.

### JURISDICTION AND VENUE

21. This Court has personal jurisdiction over Defendant because Defendant operates, conducts, engages in, or carries on a business in this State; it maintains corporate offices in this state; and committed tortious acts in this State.

**ANSWER:** Paragraph 21 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, admitted

22. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000,

---

[6] *See Guardian Credit Union*, National Credit Union Service Organization Search, available at https://ncuso.org/credit-union/66638/ (last visited Apr. 23, 2025).
[7] *Id.*
[8] *Id.*; *see generally* the Website.

8

exclusive of interest and costs, there are more than one hundred (100) members in the proposed

Classes, and at least one member of the Classes is a citizen of a state different from Defendant.

**ANSWER:** Paragraph 22 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

23. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 because it

arises under the laws of the United States. The Court has supplemental jurisdiction over

Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367.

**ANSWER:** Paragraph 23 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

24. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the

events and omissions giving rise to Plaintiff's claims occurred in this District and continue to

occur in this District.

**ANSWER:** Paragraph 24 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, admitted.

<u>**COMMON FACTUAL ALLEGATIONS**</u>

**A.    Guardian Collects Personal and Financial Information Under the Guise of Protecting it**

25. Guardian services its customers through its Mobile and Online Banking, which

allows Customers to "manage [thei]r money anywhere."[9] "Guardian Credit Union is committed

to providing a website that is as accessible as our branches."[10]

**ANSWER:** Defendant admits that it offers Online and Mobile Banking to its customers. Further answering, Defendant's website is a document that speaks for itself, and Defendant denies the allegations in paragraph 25 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 25.

---

[9] *See About Us*; *Online & Mobile Banking*, https://www.guardiancu.org/online-mobile-banking/ (last visited Jan. 23, 2025) ("*Online & Mobile Banking*").
[10] *Privacy Policy*, https://www.guardiancu.org/privacy-policy/ (last visited Jan. 23, 2025) ("*Privacy Policy*") (attached as Exhibit A).

LEGAL\115310660\1

26. Guardian assures Customers that it "Maintain[s] the confidentiality of member information which you provide to us."[11]

**ANSWER:** Defendant's website is a document that speaks for itself, and Defendant denies the allegations in paragraph 26 to the extent they are inconsistent with or are an improper characterization of that document.

27. Guardian portrays its commitment to privacy to its Customers:[12]

**ANSWER:** Defendant's website is a document that speaks for itself, and Defendant denies the allegations in paragraph 27 to the extent they are inconsistent with or are an improper characterization of that document.

28. Defendant serves its Customers via its "online and mobile banking," encourages customers to use its Website to, for example, learn about Guardian and its services,[13] view financial and educational resources,[14] join Guardian Credit Union,[15] apply for and access savings and checking accounts,[16] apply for and access checking accounts and debit cards[17] compare Guardian's credit card offers,[18] apply for credit cards,[19] apply for loans including mortgages, personal loans, and student loans,[20] enroll in online banking,[21] access online banking,[22] and much more.[23]

**ANSWER:** Defendant admits that it offers Online and Mobile Banking to its customers and offers a website to its customers for various purposes. Further answering, Defendant's website is a document that speaks for itself, and Defendant denies the allegations in paragraph 28 to the

---

[11] *Id.*

[12] *Id.*

[13] *See generally*, *Online & Mobile Banking* and *About Us*.

[14] *See Financial Resources*, https://www.guardiancu.org/resources/ (last visited Apr. 23,2025).

[15] *See generally,* the Website; *Membership & Services*, https://www.guardiancu.org/membership-and-services/ (last visited Apr. 23, 2025).

[16] *See Savings Accounts*, https://www.guardiancu.org/savings-and-checking/savings-accounts/ (last visited Apr. 23, 2025).

[17] *See Guardian Visa Debit Card*, https://www.guardiancu.org/debit/ (last visited Apr. 23, 2025).

[18] *See Guardian Visa Credit Cards*, https://www.guardiancu.org/loans/credit-cards/ (last visited Apr. 23, 2025) ("*Credit Cards*").

[19] *Id*

[20] *See Loans*, https://www.guardiancu.org/loans/ (last visited Apr. 23, 2025).

[21] *Online & Mobile Banking*.

[22] *Id.*

[23] *See generally* the Website.

10

extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 28.

29. In short, Defendant encourages customers to use its Website to "manage your money anywhere."[24]

**ANSWER:** Defendant admits that it offers a website to its customers for various purposes. Further answering, Defendant's website is a document that speaks for itself, and Defendant denies the allegations in paragraph 29 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 29.

30. Defendant promotes the comprehensive functionality and use of its Website in service of its own goal of increasing profitability. In furtherance of that goal, Defendant purposely and secretly installed the Third Parties' online tracking technology onto its Website to gather information about Customers.

**ANSWER:** Defendant admits that it offers a website for purposes of servicing its customers. Defendant denies the remaining allegations in paragraph 30.

31. Guardian utilized the information it collected to market its services and bolster its profits by surreptitiously diverting the information to Third Parties like Google.

**ANSWER:** Denied.

32. But Defendant did not only collect information for its own use; Guardian also shared—and continues to share—Customers' information, including Personal and Financial Information, with the unauthorized Third Parties who then use it for their own benefit and to benefit fourth parties who are even further removed from the Customers.

**ANSWER:** Denied.

**B. Third Parties and Trackers: Collectors and Profiteers of Personal and Financial Information**

---

[24] *See About Us*.

LEGAL\115310660\1

33.     The invisible Third Party online tracking technologies installed by Guardian on its Website gathers a vast assortment of Customer data. The installation of these trackers—and thus their transmission of data—is in Guardian's exclusive control.

**ANSWER:**    Denied.

34.     When an individual accesses a webpage containing online tracking technology from a Third Party, the trackers instantaneously and surreptitiously duplicate communications with that webpage and send them to the Third Party. The information travels directly from both the Customer's browser and the webpage owner's server and then on to the Third Party's server, based off instructions from the Third Party's tracker. The communications and information transmitted via these trackers are entirely in Defendant's control; Customers trust Guardian with the information they input on Guardian's Website, and Guardian is in complete and exclusive control of its Website and the data input therein. The transmission of Customers' data <u>only</u> occurs on webpages that contain tracking technology.

**ANSWER:**    Denied.

35.     Online tracking technologies may not be deleted from an individual's device; they are built into a webpage, and a webpage Customer has no control or warning over their presence or data collection. Third party trackers cause information to flow directly from the website Customer's browser and the website owner's server to the Third Party itself. A webpage Customer cannot prevent or even detect this transmission of data.

**ANSWER:**    Defendant admits that pixel technology is built into a website and cannot be deleted by a user. Defendant denies the remaining allegations in paragraph 35.

36.     Accordingly, without any knowledge, authorization, or action by a Customer, a website owner who has installed Third Party trackers is utilizing website source code to

commandeer its Customers' computing devices and web browsers, causing them to invisibly re-direct the Customers' communications to Third Parties.

**ANSWER:** Denied.

37. In this case, Defendant employed the Third Party trackers to intercept, duplicate, and re-direct Plaintiff's and Class Members' Personal and Financial Information to the Third Parties contemporaneously, invisibly, and without the customer's knowledge.

**ANSWER:** Denied.

38. Consequently, when Plaintiff and Class Members visited Defendant's Websites and communicated their Personal and Financial Information, that information was simultaneously intercepted and transmitted to the Third Parties.

**ANSWER:** Denied.

39. The Third Party trackers do not provide any substantive content on Guardian's Website. Rather, their only purpose is to collect information to be used for the Third Party and fourth parties' marketing and sales purposes.

**ANSWER:** Denied.

40. The Google trackers allow Defendant to track and share with Google (1) who uses Guardian's Website; (2) what is performed on the Website; (3) when Customers visit the Website; (4) where on the Website Customers perform these actions; and (5) how Customers navigate through the Website to perform these actions. The Google trackers also record events that include data such as users' IP addresses, cookies, and "browser fingerprints,"[25] all of which

---

[25] "Browser fingerprinting happens when websites use special scripts to collect enough information about you — such as your browser, timezone, default language, and more — that they can uniquely identify you out of the sea of other internet users." *What is Browser Fingerprinting and How Can You Prevent It?*, AVAST, https://www.avast.com/c-what-is-browser-fingerprinting#:~:text=Browser%20fingerprinting%20happens%20when%20websites,sea%20of %20other%20internet%20users. (last visited Apr. 23, 2025). Because browser fingerprints differ from cookies, "even when cookies are disabled, fingerprints can be used to fully or partially identify users or devices." Pau, Kiu

LEGAL\115310660\1

can be used to identify the user. Google gathers this information using trackers embedded on Guardian's Website and generates corresponding reports.[26] Google Tag Manager, Google Analytics, and DoubleClick are part of the suite Google uses to collect all of this.[27] Google's collection of this data "enables advertisers to more effectively create, manage and grow high-impact digital marketing campaigns."[28]

**ANSWER:** Denied.

41. Furthermore, on information and belief, Defendant utilized LinkedIn trackers. "LinkedIn analytics is a collection of metrics that measure the effectiveness of your posts, updates and strategy on the platform. It's statistical data that enhances your LinkedIn marketing efforts."[29] Like the Google trackers, the LinkedIn trackers record events that include data such as users' IP addresses, cookies, and browser fingerprints, which include information such as the browser version, screen resolution, device type, processor architecture, and other identifying characteristics, which information can be used to identify specific users.

**ANSWER:** Defendant admits that it has used LinkedIn pixel tracking technology. Further answering, the articles referenced are written documents that speak for themselves, and Defendant denies the allegations in paragraph 41 to the extent they are inconsistent with or are an improper characterization of those articles. Defendant denies the remaining allegations in paragraph 42.

---

Nai, *et al.*, *The Development of Data Collection and Browser FingerprintingSystem*, NAT. LIBRARYOFMEDICINE(Mar. 13, 2023), https://pmc.ncbi.nlm.nih.gov/articles/PMC10057587/#:~:text=A%20browser%20fingerprint%20 is%20described,system%2C%20and%20other%20current%20settings.

[26] *See generally*, *A big list of what Google Analytics can & cannot do*, MarketLyrics, avail. at https://marketlytics.com/blog/list-of-things-google-analytics-can-and-cannot-do/.

[27] 27 See the DoubleClick Digital marketing Suite, Google Developers, https://developers.google.com/app-conversion-tracking/third-party-trackers/doubleclick (last visited Apr. 23, 2025).

[28] See DoubleClick DigitalMarketing, Google Help, https://support.google.com/faqs/answer/2727482?hl=en (last visited Apr. 23, 2025).

[29] SproutSocial, Rana Bano, March 5, 2024, LinkedIn analytics: The complete guide for tracking metrics in 2024, avail. at https://sproutsocial.com/insights/linkedin-analytics/ (last acc. Aug. 8, 2024).

LEGAL\115310660\1

42.	Qualtrics is another tracker Defendant uses. Qualtrics collects "mountains of data" and analyzes it using Artificial Intelligence.[30]

**ANSWER:**	Defendant admits that it has used Qualtrics pixel tracking technology. Further answering, the website referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 42 to the extent they are inconsistent with or are an improper characterization of that website. Defendant denies the remaining allegations in paragraph 42.

43.	And Defendant utilizes Adnxs, which is a cookie that tracks online activity and displays targeted ads. It can operate as a virus or malicious program, redirecting the browser to unwanted and unintended pages, programs, malware, or other intrusive and potentially harmful content.[31]

**ANSWER:**	Defendant admits that it has used Adnxs pixel tracking technology. Further answering, the website referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 43 to the extent they are inconsistent with or are an improper characterization of that website. Defendant denies the remaining allegations in paragraph 43.

44.	Each tracker installed on Defendant's website also sets its own cookies to help identify users on Defendant's Website.

**ANSWER:**	Denied.

45.	And, in addition to using its own cookies, Google Analytics also integrates with DoubleClick, meaning DoubleClick's cookies can be linked to a user's Google account, enabling cross-site and cross-device tracking.

**ANSWER:**	Denied.

**C.	Guardian Used Trackers to Unauthorizedly Disclose Personal and Financial Information**

46.	On information and belief, Guardian installed each of these trackers, through which Guardian transmitted Customers' communications with Guardian's website and thus their

---

[30] *See Qualtrics*, https://www.qualtrics.com/ (last visited Apr. 23, 2025).
[31] *See How To Remove Adnxs.com Redirect [Virus Removal Guide]*, https://malwaretips.com/blogs/ib-adnxs-popup-virus/ (last visited Apr. 23, 2025).

Personal and Financial Information to the Third Parties without Customers' knowledge or authorization. Guardian reports information to the Third Parties when Customers apply for (i) a Guardian membership, (ii) portal accounts, and (iii) credit cards, informing third parties about Customers' progression through the applications, and specific details including personally identifiable information that Customers provide to Guardian as part of the application processes.

**ANSWER:** Denied.

47. On information and belief, the trackers installed on Guardian's website also collect and share user data and information when the users access Guardian's online banking portal.

**ANSWER:** Denied.

48. On information and belief, since at least September 6, 2017, and at least as recently as November 6, 2024, Guardian has tracking technologies installed on its Website.

**ANSWER:** Guardian admits that it has had at least one pixel tracking technology used on its website since September 6, 2017. Guardian denies the remaining allegations in paragraph 48.

49. Accordingly, Guardian disclosed its Customers'—including Plaintiff's and the Class Members'—data and Personal and Financial Information to the Third Parties, like Google, beginning at or before September 6, 2017, and at least up to November 6, 2024.

**ANSWER:** Denied.

50. By way of example, as configured as of November 6, 2024, Defendant's Google trackers and/or its other tracking technologies, disclosed significant information to Third Parties including Google, including information such as IP addresses, browser fingerprints, and cookies that can link to the user's Google account and can otherwise be used to identify and track specific users.

**ANSWER:** Denied.

*i.*      *Guardian Installed Google Trackers to Track Guardian's Membership Application Information.*

51.      Guardian shares with third parties, Customers' status as new members and details from Customers' membership applications, including (i) details about the banking products that Customers select and features that Customers choose for their accounts; (ii) Customers' agreement to the application pre-disclosures; (iii) whether Customers have beneficiaries or co-applicants; and (iv) how Customers decide to fund their new accounts.

**ANSWER:**      Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 51.

52.      When a Customer fills out a membership application, Guardian sends events to the following third parties, indicating that the Customer is a new member:

     a.      LinkedIn, providing that the Customer selected for "New Member Account":

17



b. Google, providing that the Customer is on the page for Guardian's "membership-and-services/membership," through an "Open and Apply" event, or that the Customer is on a page for "New Membership" through pageview events:



**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Further answering, Defendant states that the website screenshots provided are written documents that speak for themselves, and Defendant denies the allegations in paragraph 52 to the extent they are inconsistent with or are an improper characterization of those website screenshots. Defendant denies the remaining allegations in paragraph 52.

53. Additionally, Guardian shares information with third parties about Customer' choices from their new membership applications.

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 53.

54. For example, Guardian reports the type of banking product that Customers select. If a Customer chooses regular savings for their desired banking product, Guardian reports to LinkedIn and Google that the Customer selected "REGSAV."

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 54.

55. Similarly, Guardian discloses features that Customers choose for their account. For instance, when a Customer chooses to add eStatements as a feature to their account, Guardian reports to LinkedIn that the Customer selected "eStatements."

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 55.

56. Moreover, when a Customer agrees to Guardian's pre-disclosures, Guardian reports the Customer's agreement to LinkedIn, providing that the Customer selected "I agree to the Pre-Disclosure."

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Further answering, Defendant states that the website screenshots provided are written documents that speak for themselves, and Defendant denies the allegations in paragraph 56 to the extent they are inconsistent with or are an improper characterization of those website screenshots. Defendant denies the remaining allegations in paragraph 56.

LEGAL\115310660\1



57.     Guardian also discloses whether Customers have any beneficiaries or co-applicants.

**ANSWER:**   Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 57.

58.     To illustrate, when a Customer indicates that they do not have a beneficiary, Guardian transmits an event to LinkedIn, reporting that the Customer selected "No," in response to whether the Customer "has-beneficiary."

LEGAL\115310660\1

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 58.

59.     When a Customer selects that they do not have any co-applicants, Guardian

would likewise send an event to LinkedIn, indicating that the Customer selected

"idHasCoApplicantNo."

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 59.

60.     Guardian also reports to LinkedIn and Google the method by which Customers



choose to fund their new accounts.

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Further answering, Defendant states that the website screenshots provided are written documents that speak for themselves, and Defendant denies the allegations in paragraph 60 to the extent they are inconsistent with or are an improper characterization of those website screenshots. Defendant denies the remaining allegations in paragraph 60.

61. For example, if a Customer chooses to fund their new account by credit card, Guardian first sends an event to LinkedIn indicating that the Customer selected "I agree to fund the account(s) with the method selected," as well as another event indicating that the Customer selected the option, "Credit Card," from the "funding-option-lst."

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 61.

62. Once the Customer arrives on the page to input their credit card information in order to fund their new account, Guardian sends events to LinkedIn, providing that the Customer is on a page which collects information from the Customer for "fundingCreditcard."

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 62.

63. Guardian also sends two events to Google, informing it about the Customer's choice to fund their new account via credit card, with one event indicating that the Customer selected "Credit Card" on a page titled "Funding," and another event indicating that the Customer chose to "Fund via Credit Card."

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 63.

64. If the Customer instead choses to fund an account by check, Guardian would inform LinkedIn and Google about the Customer's selection, indicating to LinkedIn that the

LEGAL\115310660\1

Customer selected "Mail a Check," from the "funding-option-lst," and to Google that the Customer selected "Mail A Check."

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 64.

65. Upon information and belief, every page in the application flow on Defendant's website includes both LinkedIn and Google trackers that collected and shared events that include the user's IP addresses, browser fingerprints, and cookies.

**ANSWER:** Denied.

   *ii. Guardian Installed Google Trackers to Track Guardian's Banking Portal and Portal Registration Information.*

66. Guardian informs third parties when users access the banking portal and when users register for new portal accounts.

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 66.

67. To start, Guardian reports when users load the banking portal page. As a user arrives on the banking portal authentication page, Guardian sends events reporting that the user is viewing the page, "onlinebanking.guardiancu.org/authentication," to LinkedIn and Google. Upon information and belief, these events include data such as the user's IP addresses, browser fingerprints, and cookies.

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Further answering, Defendant states that the website screenshots provided are written documents that speak for themselves, and Defendant denies the allegations in paragraph 67 to the extent they are inconsistent with or are an improper characterization of those website screenshots. Defendant denies the remaining allegations in paragraph 67.

.

LEGAL\115310660\1



68.     Guardian additionally informs LinkedIn when a user selects the option for the site

to remember their login information.

**ANSWER:**    Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Further answering, Defendant states that the website screenshots provided are written documents that speak for themselves, and Defendant denies the allegations in paragraph 68 to the extent they are inconsistent with or are an improper characterization of those website screenshots. Defendant denies the remaining allegations in paragraph 68.



69. Users who do not have an existing banking portal account could register for a new account from the banking portal page. When a user does so, Guardian informs third parties about the user's registration, sending events to:

      a.     LinkedIn, reporting that that the user clicked to "Register a New Account" while they are on the "onlinebanking.guardiancu.org" site; and

LEGAL\115310660\1



b.    Google, reporting that the user is on the  page

"onlinebanking.guardiancu.org/registration."

LEGAL\115310660\1



**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Further answering, Defendant states that the website screenshots provided are written documents that speak for themselves, and Defendant denies the allegations in paragraph 69 to the extent they are inconsistent with or are an improper characterization of those website screenshots. Defendant denies the remaining allegations in paragraph 69.

70. As a condition to a user's new registration, Guardian requires that the user accepts

a set of disclosures. When a user selects that they agree to the disclosures, Guardian informs

LinkedIn that the user selected "accept-disclosure—checkbox" for the "registration-disclosure."



ANSWER:    Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Further answering, Defendant states that the website screenshots provided are written documents that speak for themselves, and Defendant denies the allegations in paragraph 70 to the extent they are inconsistent with or are an improper characterization of those website screenshots. Defendant denies the remaining allegations in paragraph 70.

71.    Guardian also shares with LinkedIn the type of information that users provide during the application.

ANSWER:    Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 71.

LEGAL\115310660\1

72. For example, a user completing the portal registration must confirm their identity by providing their Guardian account number and zip code. As a user provides their account number, Guardian informs LinkedIn that the user is completing a registration form to "confirm-identity" and that the user selected the portion of the form to input their "Account Number."



**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Further answering, Defendant states that the website screenshots provided are written documents that speak for themselves, and Defendant denies the allegations in paragraph 72 to the extent they are inconsistent with or are an improper characterization of those website screenshots. Defendant denies the remaining allegations in paragraph 72.

30

73.     Likewise, when a user clicks on the application field to provide their zip code,

Guardian informs LinkedIn that the user selected the "UserIdentifyingField_ZipCode," while

they are on the "onlinebanking.guardiancu.org" website.



**ANSWER:**     Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Further answering, Defendant states that the website screenshots provided are written documents that speak for themselves, and Defendant denies the allegations in paragraph 73 to the extent they are inconsistent with or are an improper characterization of those website screenshots. Defendant denies the remaining allegations in paragraph 73.

LEGAL\115310660\1

74. Next, as the user clicks to proceed to their identity confirmation page, Guardian continues to keep LinkedIn apprised, revealing that the user "CLICK[ed]" a button to "submitConfirmIdentity," while they are on the "onlinebanking.guardiancu.org."

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 74.

75. Upon information and belief, every page in the online banking registration flow on Defendant's website includes both LinkedIn and Google trackers that collected and shared events that include the user's IP addresses, browser fingerprints, and cookies.

**ANSWER:** Denied.

> *iii.* *Guardian Installed Google Trackers to Track Guardian's Credit Card Application Information.*

76. Finally, Guardian reports details from users' credit card applications to third parties, sharing: (i) users' purpose of application; (ii) the specific credit cards that users select; (iii) whether users have co-applicants; and (iv) whether users agree with disclosures required for the application.

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 76.

77. When a user begins their credit card application, Guardian prompts them to select whether they would like a new credit card or a line increase. Guardian reports users' selections to LinkedIn and Google.

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 77.

LEGAL\115310660\1

78. For instance, if a user is applying for a new credit card, Guardian sends an event to LinkedIn reporting that the user clicked for a "NEW CARD" as their "loan-purpose" while they are on a page called "Credit Card Information."

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 78.

79. Likewise, Guardian informs Google that the user selected the link for "NEW CARD" on the page, "Credit Card Information."



**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or

disclosed. Further answering, Defendant states that the website screenshots provided are written documents that speak for themselves, and Defendant denies the allegations in paragraph 79 to the extent they are inconsistent with or are an improper characterization of those website screenshots. Defendant denies the remaining allegations in paragraph 79.

80. As users progress through the form, Guardian reports additional details from users' applications to LinkedIn, including the type of credit cards that users choose, whether they have co-applicants, and whether they agree to Guardian's disclosures.

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 80.

81. Users who apply for a new card are required by Guardian to choose the type of credit card that they would like. When a user selects their desired credit card, Guardian reports the user's selection to LinkedIn. For example, if a user applies for a Visa Platinum Rewards card, Guardian would send an event to LinkedIn disclosing that the user selected "Visa_Platinum_Rewards," from the "cc-options."

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 81.

82. Additionally, when users indicate whether they have co-applicants for their credit card application, Guardian reports users' answers to LinkedIn. For instance, if a user who does not have a co-applicant were applying for a credit card, Guardian would send an event to LinkedIn disclosing that Guardian tagged the user with "idHasCoApplicantNo."

LEGAL\115310660\1



**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Further answering, Defendant states that the website screenshots provided are written documents that speak for themselves, and Defendant denies the allegations in paragraph 82 to the extent they are inconsistent with or are an improper characterization of those website screenshots. Defendant denies the remaining allegations in paragraph 82.

83. After users complete their credit card applications, Guardian prompts them to review their application and agree to a set of disclosures before submitting the application. If a user disagrees with the disclosures, Guardian reports this to LinkedIn, provided that the user selected "I disagree."

LEGAL\115310660\1



ANSWER:  Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Further answering, Defendant states that the website screenshots provided are written documents that speak for themselves, and Defendant denies the allegations in paragraph 83 to the extent they are inconsistent with or are an improper characterization of those website screenshots. Defendant denies the remaining allegations in paragraph 83.

84.  Upon information and belief, every page in the credit card application flow on Defendant's website includes both LinkedIn and Google trackers that collected and shared events that include the user's IP addresses, browser fingerprints, and cookies.

ANSWER:  Denied.

LEGAL\115310660\1

>    iv.    *Third-Parties Further Share the Data and Information Collected from Trackers Installed on Guardian's Website with Fourth Parties.*

85.    In addition to using the data for their own purposes, the third parties that obtain Customer data and information from trackers installed on Guardian's website further profit from Guardian's improper sharing practices by selling Customers' data to fourth parties.

**ANSWER:**    Denied.

86.    As one study found, "on average, companies that allow external sharing of [] data assets have data that has been exposed to 42 4th-party domains."[32]

**ANSWER:**    Defendant lacks knowledge sufficient to admit or deny the allegations in paragraph 86, and therefore denies the same. Further answering, Defendant states that referenced article is a written document that speaks for itself, and Defendant denies the allegations in paragraph 86 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 86.

87.    Consequently, a fourth party that did not have a tracker directly installed on the Guardian's website may obtain and use information collected via third-party trackers to provide direct advertisements to Customers on the fourth party's platform.

**ANSWER:**    Denied.

88.    One common recipient of Customers' collected data is Facebook.

**ANSWER:**    Denied.

89.    For example, Facebook and Google have engaged in practices that allowed for the sharing or accessibility of user data between their platforms.[33] Because of this, advertisements on

---

[32] Adam Gavish, *Your 3rd Party Collaborators Share Your Company's Data with 4th Parties*, DOCONTROL (Feb. 27, 2025), https://www.docontrol.io/blog/your-3rd-party-collaborators-share-your-company-data-with-4th-parties#:~:text=What%20is%204th%2DParty%20Data,side%20effect%20of%20SaaS%20collab oration.

[33] *See* Steven Musil, *Facebook gave tech giants more access to users data than it said*, CBSNEWS (Dec. 19, 2018), https://www.cbsnews.com/news/facebook-gave-tech-giants-more-access-to-users-data-than-it-said-new-york-times/ (last visited Apr. 24, 2025); Steven Musil, *Facebook acknowledges it shared user data with dozens of companies* (Jul. 1, 2018), https://www.cnet.com/tech/tech-industry/facebook-acknowledges-it-shared-user-data-with-dozens-of-companies/ (last visited Apr. 24. 2025); Paresh Dave and Katie Paul, *Google secretly gave Facebook perks,dat in addeal*(Dec. 17, 2020), https://www.reuters.com/article/technology/google-secretly-gave-facebook-perks-data-in-ad-deal-us-states-allege-idUSK BN28Q37G/ (last visited Apr. 24, 2025).

LEGAL\115310660\1

Facebook may reflect information collected via a Google tracker, either because of information shared directly or indirectly between the companies.

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the allegations in paragraph 89, and therefore denies the same. Further answering, Defendant states that referenced article is a written document that speaks for itself, and Defendant denies the allegations in paragraph 89 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 89.

90. Facebook and Google both act as data brokers, meaning they collect data, compile it into datasets, and sell it to third parties.[34] Two other popular data brokers are Acxiom and Oracle Data Cloud ("Oracle"). Facebook and Google have been known to buy information from, and sell information to, such data brokers.[35]

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the allegations in paragraph 90, and therefore denies the same. Further answering, Defendant states that referenced articles are a written documents that speak for themselves, and Defendant denies the allegations in paragraph 90 to the extent they are inconsistent with or are an improper characterization of those documents. Defendant denies the remaining allegations in paragraph 90.

91. Because of this, one company's tracker (e.g., Google Analytics) may collect information, compile it into a dataset (owned by Google), and act as a data broker to sell it to a third-party (e.g., Facebook), which uses the information to advertise for various parties (like other financial institutions) on its own platform.[36] Alternatively, one company's tracker (e.g., Google Analytics) may collect information, compile it into a dataset (owned by Google), and act as a data broker to sell it to a fourth-party advertiser (e.g., another financial institution), which

---

[34] See Jessie G Taft, Facebook and Google Are the New Data Brokers (Dec. 18, 2018, updated Jan. 5, 2021), https://dli.tech.cornell.edu/post/facebook-and-google-are-the-new-data-brokers (last visited Apr. 24. 2025).

[35] See Kalev Leetaru, The Data Brokers So Powerful Even Facebook Bought Their Data (Apr. 05, 2018), https://www.forbes.com/sites/kalevleetaru/2018/04/05/the-data-brokers-so-powerful-even-facebook-bought-their-data-but-they-got-me-wildly-wrong/ (last visited Apr. 24. 2025).

[36] See Don Marti, et. al., Who Shares Your Information With Facebook? (Jan. 2024), https://innovation.consumerreports.org/wp-content/uploads/2024/01/CR_Who-Shares-Your-Information-With-Facebook.pdf, p. 16 (last visited Apr. 24. 2025). (explaining how Facebook uses aggregated data from external data brokers to target users on its platform).

LEGAL\115310660\1

uses the information to advertise for on other platforms (e.g., Facebook).[37] Or, one company's

tracker (e.g., Google Analytics) may collect information, sell either the raw data or a compiled

dataset to a third-party data broker (e.g., Acxiom or Oracle), which third party data broker sells

the information to a fourth party (e.g., Facebook), which uses the information for still other

parties' targeted advertising.[38] In any event, the basic idea and results are the same. Google

Analytics tracks and discloses information to fourth parties that use that data and information to

advertise a variety of products on a variety of platforms.

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the allegations in
paragraph 91, and therefore denies the same. Further answering, Defendant states that referenced
articles are a written documents that speak for themselves, and Defendant denies the allegations
in paragraph 91 to the extent they are inconsistent with or are an improper characterization of
those documents. Defendant denies the remaining allegations in paragraph 91.

92. The information that data brokers like Acxiom and Oracle buy and compile from

trackers (like Facebook's and Google's tackers) is inherently sensitive.

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the allegations in
paragraph 92, and therefore denies the same.

**D. Guardian Maintains Ambiguous, Disingenuous, and Deceptive Privacy
Policies That Fail to Sufficiently Disclose, Notify, Or Provide Opportunity to
Opt-Out of the Disclosure**

93. Customers never consented, agreed, authorized, or otherwise permitted Defendant

to intercept their Personal and Financial Information or to use or disclose it for third-party

marketing and profit purposes. Customers were never provided with any written notice that

Defendant disclosed their Personal and Financial Information to Third Parties (who then allowed

---

[37] See Don Marti, et. al., Who Shares Your Information With Facebook? (Jan. 2024),
https://innovation.consumerreports.org/wp-content/uploads/2024/01/CR_Who-Shares-Your-Information-With-
Facebook.pdf, p. 16 (last visited Apr. 24. 2025).
[38] See Kalev Leetaru, The Data Brokers So Powerful Even Facebook Bought Their Data (Apr. 05, 2018),
https://www.forbes.com/sites/kalevleetaru/2018/04/05/the-data-brokers-so-powerful-even-facebook-bought-their-
data-but-they-got-me-wildly-wrong/ (last visited Apr. 24. 2025).

LEGAL\115310660\1

fourth parties to use it for profit), nor were they provided means of opting out of such disclosures.

**ANSWER:** Denied.

94. Customers relied on Defendant to keep their Personal and Financial Information confidential and securely maintained and to use this information only for the purpose of providing legitimate financial services. Customers relied on Defendant to make only authorized disclosures of this information.

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the allegations in paragraph 94, and therefore denies the same.

95. Furthermore, Defendant actively misrepresented it would preserve the security and privacy of Customers' Personal and Financial Information.

**ANSWER:** Denied.

96. The contracts that Guardian has with its Customers include Guardian's "Privacy Policy" which describes its "Online privacy policy,"[39] and "Full Privacy Policy"[40] on its Website (collectively, "Privacy Policies").

**ANSWER:** Defendant states that the contracts and privacy policies referenced are written documents that speak for themselves, and Defendant denies the allegations in paragraph 96 to the extent they are inconsistent with or are an improper characterization of those documents. Defendant denies the remaining allegations in paragraph 96.

97. In its Privacy Policy, Guardian represents that it "respects your right to privacy," "[s]afeguard[s] members' and site users' information from unauthorized access, and [m]aintain[s] the confidentiality of member information which you provide to us."[41] But Guardian fails to "respect" Customers' privacy and private information, 'safeguard' Customers'

---

[39] Privacy Policy (Exhibit A).
[40] Full Privacy Policy, https://www.guardiancu.org/wp-content/uploads/2019/10/PrivacyPolicy_0919.pdf (last visited Jan. 23, 2025) ("Full Privacy Policy" (Exhibit B).
[41] *Privacy Policy.*

information, or "[m]aintain the confidentiality of member information," instead disclosing it to Third Parties (and eventually fourth parties) uninvolved in providing financial services to Plaintiff and Class Members and without Customers' authorization or consent.

**ANSWER:** Defendant states that the privacy policy referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 97 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 97.

98. Guardian explains that "[f]ederal law gives consumers the right to limit . . . sharing."[42] Guardian's Privacy Policy represents:

> Federal law also requires us to tell you how we collect, share, and protect your personal information . . . The types of personal information we collect and share depend on the product or service you have with us. . . . . This information can include:
>
> - Social Security number and account balances
>
> - Account transactions and credit card and other debt transactions
>
> - Payment history and transaction history[43]

**ANSWER:** Defendant states that the privacy policy referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 98 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 98.

99. But the types of personal information that Guardian collects and shares does ***not*** depend on the product or service a Customer has with it. Instead, Guardian indiscriminately collects and shares Customer information without regard to the product or service a Customer has with Guardian.

**ANSWER:** Denied.

100. Guardian lists the "[r]easons we can share your personal information," which includes whether Guardian shares, "reasons" Guardian chooses to share, and whether Customers

---

[42] Full Privacy Policy.
[43] *Id.*

LEGAL\115310660\1

can "limit this sharing."[44] Those reasons include "our everyday business purposes-such as to process your transactions, maintain your accounts(s), respond to court orders and legal investigations, or report to credit bureaus"; "For our marketing purposes – to offer our products and services to you"; "For joint marketing with other financial companies"; "For our affiliates' everyday business purposes – information about your transactions and experiences"; "For our affiliates' everyday business purposes – information about your creditworthiness"; "For our affiliates to market to you"; and "For our nonaffiliates to market to you."[45]

**ANSWER:** Defendant states that the privacy policy referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 100 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 100.

101.    Guardian defines an Affiliate as "Companies related by common ownership or control. They can be financial and nonfinancial companies."[46] Third Parties like Google, which do not have a Guardian name, are not Guardian's affiliates.

**ANSWER:** Defendant states that the privacy policy referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 101 to the extent they are inconsistent with or are an improper characterization of that document. Defendant admits that Google is not an affiliate. Defendant denies the remaining allegations in paragraph 101.

102.    Joint marketing is "A formal agreement between nonaffiliated financial companies that together market financial products or services to [Customers]."[47] Guardian's "joint marketing partners include insurance companies, credit card companies, and investment companies."[48] Certainly, Third Parties like Google do not meet this definition.

**ANSWER:** Defendant states that the privacy policy referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 102 to the extent they are inconsistent with or are an improper characterization of that document. Defendant admits that

---

[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*

LEGAL\115310660\1

Google is not a joint marketing partner. Defendant denies the remaining allegations in paragraph 102.

103. Guardian finally defines "nonaffiliates," which are "[c]ompanies not related by common ownership or control."[49] "They can be financial and nonfinancial companies."[50] Guardian represents that Customers can "limit this sharing."[51]

**ANSWER:** Defendant states that the privacy policy referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 103 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 103.

104. "Guardian Credit Union would like to assure [Customers] that [it] do[es] not: Collect personal information from you unless you provide it to us, or Sell the names and addresses of our members and site users to outside parties."[52]

**ANSWER:** Defendant states that the privacy policy referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 104 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 104.

105. With respect to its online policies, Guardian represents that it collects only "anonymous statistics to monitor our site's performance and inform our marketing efforts."[53] "We may use non-personally identifiable information such as cookies and IP addresses to provide targeted marketing[;] While we gather this information, none of it is associated with you as an individual."[54]

**ANSWER:** Defendant states that the privacy policy referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 105 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 105.

---

[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Privacy Policy*.
[53] *Id.*
[54] *Id.*

LEGAL\115310660\1

106.    Guardian further represents:

you may be asked to give us personal information in order to apply for membership, a loan, or other services. Our application forms securely collect personal and financial information. The information that we collect on our applications is used only to process your request quickly and accurately.[55]

**ANSWER:**    Defendant states that the privacy policy referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 106 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 106.

107.    Customers reasonably understand that Guardian will securely maintain the Personal and Financial Information they entrusted to it and protect that information from being shared or utilized by Third Parties (and fourth parties) that have nothing to do with Guardian or its services. Guardian's Privacy Policies only reinforced this reasonable understanding.

**ANSWER:**    Defendant states that the privacy policy referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 107 to the extent they are inconsistent with or are an improper characterization of that document. Defendant lacks knowledge sufficient to admit or deny what customers understand or think, and therefore denies the same. Defendant denies the remaining allegations in paragraph 107.

108.    Nowhere in the policies does Guardian disclose its use of Customer Personal and Financial Information for Third Party and fourth party marketing, nor does Guardian disclose that it will collect and share data that ***can*** be used to identify the user, such as the user's IP address or browser fingerprint.

**ANSWER:**    Defendant states that the policies referenced are written documents that speak for themselves, and Defendant denies the allegations in paragraph 108 to the extent they are inconsistent with or are an improper characterization of those documents. Defendant denies that it discloses PII or PII or any information that can be used to identify a user. Defendant denies the remaining allegations in paragraph 108.

---

[55] *Id.*

LEGAL\115310660\1

109.    Nowhere in the policies does Guardian disclose that it has installed third-party trackers that collect and share information, or that the trackers can link the data collected via Guardian's Website to the user's Google account, enabling cross-site and cross-device tracking.

**ANSWER:**    Defendant states that the policies referenced are written documents that speak for themselves, and Defendant denies the allegations in paragraph 109 to the extent they are inconsistent with or are an improper characterization of those documents. Defendant denies that it discloses PII or PII or any information that can be used to identify a user. Defendant denies the remaining allegations in paragraph 109.

110.    While Guardian offers Customers a Mail-in Form to "limit" Guardian's sharing of Customers' information,[56] the form in no way limits the way Guardian shares information through trackers.

**ANSWER:**    Defendant states that the privacy policy referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 110 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 110.

111.    Moreover, because Guardian fails to disclose the extent of its data sharing practices, users like Plaintiff and Class Members are unable to make an informed decision as to whether to limit Guardian's information sharing.

**ANSWER:**    Denied.

112.    Guardian's failure to safeguard the privacy of Customers' Personal and Financial Information as agreed in its Privacy Policies is even more egregious here, as Guardian also fails to provide Customers with sufficient opportunity to opt out of disclosure to nonaffiliates (or any other party, for that matter). This is because, as described above, while the Privacy Policies state that Customers may "limit this sharing," as described above, the Third Party trackers will still instantaneously send data from Customers that visit Guardian's Website even if a Customer calls

---

[56] *Id.*

45

LEGAL\115310660\1

Case 2:25-cv-00176-BHL    Filed 05/19/26    Page 45 of 101    Document 40

the provided number or "go[es] to guardiancu.org"[57] and specifically requests that Guardian stop or otherwise limit the sharing of their Personal and Financial Information (i.e., after the Customer has 'opted out'). The trackers are active on Guardian's Website indiscriminately, regardless of what an individual Customer requests. Any opt-out request a Customer makes is thus entirely ineffective against Third Party trackers.

**ANSWER:** Denied.

### E. Guardian Violated the GLBA, FTC Standards, and Related Regulations

113. As a financial institution, Guardian is subject to the GLBA. 15 U.S.C. § 6809(3)(A) (a "financial institution" is "any institution the business of which is engaging in financial activities...").

**ANSWER:** Paragraph 113 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, admitted.

114. Pursuant to the GLBA, "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a).

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 114 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 114.

115. The FTC has interpreted Section 5 of the FTC Act, 15 U.S.C. § 45, to include compliance with the GLBA Privacy Rule, 16 C.F.R. § 313.1 *et seq*. The FTC consistently enforces the GLBA Privacy Rule, as failure to comply with the GLBA Privacy Rule is an unfair act or practice prohibited by Section 5 of the FTC Act.[58]

---

[57] *Privacy Policy* (Exhibit A).
[58] *See How to Comply with the Privacy Rule*, https://www.ftc.gov/business-guidance/resources/how-comply-privacy-consumer-financial-information-rule-gramm-leach-bliley-act (last visited Apr. 22, 2025) ("The FTC may bring enforcement actions for violations of the Privacy Rule.").

**ANSWER:** Defendant states that the statutes referenced are written documents that speak for themselves, and Defendant denies the allegations in paragraph 116 to the extent they are inconsistent with or are an improper characterization of those documents. Defendant denies the remaining allegations in paragraph 115.

116. The GLBA Privacy Rule is a regulation that "governs the treatment of nonpublic personal information about consumers by the financial institutions." 16 C.F.R. § 313.1 *et seq.*

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 116 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 116.

117. Pursuant to the GLBA Privacy Rule, "[a] financial institution must provide a notice of its privacy policies and practices with respect to both affiliated and nonaffiliated third parties, and allow the consumer to opt out of the disclosure of the consumer's nonpublic personal information to a nonaffiliated third party if the disclosure is outside of the exceptions."[59] Guardian consistently fails to do this.

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 117 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 117.

118. The GLBA Privacy Rule, defines sensitive information that should not be indiscriminately disclosed:

(n) (1) Nonpublic personal information means:

(i) Personally identifiable financial information; and

(ii) Any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any personally identifiable financial information that is not publicly available.…

(3) Examples of lists—

---

[59] *See* FTC, *Financial Privacy Rule*, https://www.ftc.gov/legal-library/browse/rules/ financial-privacy-rule (last visited Apr. 23, 2025).

LEGAL\115310660\1

(i) Nonpublic personal information includes any list of individuals' names and street addresses that is derived in whole or in part using personally identifiable financial information (that is not publicly available), such as account numbers.…

(o)    (1) Personally identifiable financial information means any information:

(i)    A consumer provides to you to obtain a financial product or service from you;

(ii)   About a consumer resulting from any transaction involving a financial product or service between you and a consumer; or

(iii)  You otherwise obtain about a consumer in connection with providing a financial product or service to that consumer.

(2) Examples—

(i)    Information included.    Personally identifiable financial information:

(A)    Information a consumer provides to you on an application to obtain a loan, credit card, or other financial product or service;

(B)    Account balance information, payment history, overdraft history, and credit or debit card purchase information;

(C)    The fact that an individual is or has been one of your customers or has obtained a financial product or service from you;

(D)    Any information about your consumer if it is disclosed in a manner that indicates that the individual is or has been your consumer;

(E)    Any information that a consumer provides to you or that you or your agent otherwise obtain in connection with collecting on, or servicing, a credit account;

(F)    Any information you collect through an Internet "cookie" (an information collecting device from a web server); and

(G)    Information from a consumer report.

16 C.F.R. § 313.3

**ANSWER:**    Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 118 to the extent they are inconsistent

LEGAL\115310660\1

with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 118.

119. The information that Guardian disclosed to Third Parties via trackers—including *e.g.*, information when users apply or register for (i) a Guardian membership, (ii) banking portal, and (iii) credit cards, informing third parties about users' progression through the applications, and specific details including personally identifiable information that users provide to Guardian as part of the application processes—is "nonpublic personal information" under the GLBA and related regulations. 16 C.F.R. § 313.3.

**ANSWER:** Denied.

120. Guardian has utterly failed to meet its privacy obligations under the GLBA: it has explicitly disclosed Customers' nonpublic personal information and Personal and Financial Information to Third Parties for marketing and advertisement, including for Third Party and fourth party advertising use, and refused to allow customers to meaningfully limit this sharing.

**ANSWER:** Denied.

121. Guardian fails to meet its notice obligations under the GLBA. "[A] financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 6803 of this title." 15 U.S.C.A. § 6802. As outlined at length above, Guardian's Privacy Policies fail to put Customers on notice as required here and actually promise that Customers' Personal and Financial Information will not be shared with Third Parties (and fourth parties) for targeted advertising purposes.

**ANSWER:** Denied.

122. For example, by stating in its Privacy Policies that Guardian maintains the confidentiality of Customers' Personal and Financial Information and **does not** inform

49

Customers that it sells their Personal and Financial Information to Third Parties for their use in their own advertising and marketing, the Privacy Policies fail to properly disclose:

> (1) the policies and practices of the institution with respect to disclosing nonpublic personal information to nonaffiliated third parties . . . including []the categories of persons to whom the information is or may be disclosed, other than the persons to whom the information may be provided [and] the policies and practices of the institution with respect to disclosing of nonpublic personal information of persons who have ceased to be customers of the financial institution . . .
>
> (2) the categories of nonpublic personal information that are collected by the financial institution; [and]
>
> (3) the policies that the institution maintains to protect the confidentiality and security of nonpublic personal information

15. U.S.C.A. § 6803.

**ANSWER:** Denied.

123. As detailed above, Guardian also fails to meet its opt out obligations under the GLBA. The GLBA Privacy Rule requires financial institutions to, for example, "provide an opt out notice" to Customers, which notice "must state…[t]hat the consumer has the right to opt out of that disclosure [and] [a] reasonable means by which the consumer may exercise the opt out right." 16 C.F.R. § 313.7. Under the GLBA, Guardian

> may not disclose nonpublic personal information to a nonaffiliated third party unless—
>
> (A) [it] clearly and conspicuously discloses to the consumer. . . that such information may be disclosed to such third party;
>
> (B) *the consumer is given the opportunity*, before the time that such information is initially disclosed, *to direct that such information not be disclosed to such third party*; and
>
> (C) the consumer is given an explanation of how the consumer can exercise that nondisclosure option.

15 U.S.C.A. § 6802 (emphasis added).

**ANSWER:** Denied.

LEGAL\115310660\1

124. Guardian fails to meet its opt out obligations because Customers are not provided an opportunity before disclosure to direct the nondisclosure of their information—as described above, Guardian instantaneously discloses information when Customers visit its Website.

**ANSWER:** Denied.

125. Guardian further fails to meet its opt out obligations because it does not provide Customers with an explanation of how they can exercise a nondisclosure option.

**ANSWER:** Denied.

126. Guardian still further fails to meet its opt out obligations because it fails to provide Customers with reasonable means of opting out. The GLBA Privacy Rule provides "examples of reasonable opportunity to opt out":

> (i) By mail. You mail the notices required in paragraph (a)(1) of this section to the consumer and allow the consumer to opt out by mailing a form, calling a toll-free telephone number, or any other reasonable means within 30 days from the date you mailed the notices.

> (ii) By electronic means. A customer opens an on-line account with you and agrees to receive the notices required in paragraph (a)(1) of this section electronically, and you allow the customer to opt out by any reasonable means within 30 days after the date that the customer acknowledges receipt of the notices in conjunction with opening the account.

> (iii) Isolated transaction with consumer. For an isolated transaction, such as the purchase of a money order by a consumer, you provide the consumer with a reasonable opportunity to opt out if you provide the notices required in paragraph (a)(1) of this section at the time of the transaction and request that the consumer decide, as a necessary part of the transaction, whether to opt out before completing the transaction.

16 C.F.R. § 313.10.

**ANSWER:** Denied.

127. Guardian's only opt out procedure provides Customers with no real way to "opt-out"; and were a Customer to attempt to opt out, Guardian fails to comply with its opt out obligations because it fails to fully abide by its Customers' opt out. Calling the number or

visiting Guardian's website does not actually opt a Customer out of sharing their information. This is not a "reasonable" means of opting out as outlined in the GLBA Privacy Rule. And anyway, Third Party trackers will continue to instantaneously send data from Customers visiting Guardian's Website. Customers have **no** option to fully opt out of Disclosures to Third Parties or targeted advertising. This both fails to provide Customers with actual opportunity to opt out, and fails to abide by the opt out request, since Third Party trackers will continue to instantaneously send data from Customers visiting Guardian's Website. Customers have **no** option to fully opt out.

**ANSWER:** Denied.

128. By perpetually disclosing its customers' Personal and Financial Information to third parties without consent, Guardian failed and continues to fail to meet its obligations under the GLBA, FTC standards, and related regulations, to establish appropriate standards and safeguards relative to Customers' Personal and Financial Information.

**ANSWER:** Denied.

**F. Plaintiff's Experiences**

129. Plaintiff David Gassman has a Guardian debit card, has an online banking portal login, and has used Guardian's website for the last three years.

**ANSWER:** Guardian admits that Plaintiff has a Guardian debit card and an online banking portal account. Defendant lacks knowledge sufficient to admit or deny the remaining allegations in paragraph 129, and therefore denies the same. Defendant denies the remaining allegations in paragraph 129.

130. Plaintiff regularly uses Defendant's Website and online banking portal to facilitate his financial services with Defendant and inputted Personal and Financial Information into Defendant's Website at Defendant's direction and encouragement.

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the allegations in paragraph 130, and therefore denies the same.

131. Plaintiff is a LinkedIn user.

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the allegations in paragraph 131, and therefore denies the same.

132. Plaintiff has received multiple targeted advertisements on LinkedIn for debit card offers. Upon information and belief, such advertisements include promotions for debit cards offered by Chase Bank.

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the allegations in paragraph 132, and therefore denies the same.

133. Plaintiff is a Facebook user.

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the allegations in paragraph 133, and therefore denies the same.

134. Plaintiff applied for Defendant's services sometime in 2022, when he applied for a Guardian credit card. Guardian denied his application.

**ANSWER:** Admitted.

135. Shortly after Plaintiff used Defendant's Website to apply for a Guardian credit card, he received advertising on Facebook for different banks and applying for cards.

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the allegations in paragraph 135, and therefore denies the same.

136. At no point did Customers like Plaintiff sign any written authorization permitting Defendant to send their Personal and Financial Information to Third Parties (or fourth parties) uninvolved in providing them with Defendant's financial services.

**ANSWER:** Denied.

137. Plaintiff reasonably expected that his communications with Guardian were confidential, solely between Plaintiff and Guardian, and that, as such, those communications and any Personal and Financial Information submitted would not be transmitted to or intercepted by a third party (or used by a fourth party).

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the allegations in paragraph 137, and therefore denies the same.

138. Plaintiff provided his Personal and Financial Information to Defendant and trusted that the information would be safeguarded according to Guardian's promises and the law.

**ANSWER:** Defendant admits that Plaintiff provided certain PII and PFI to Guardian in applying for a credit card. Defendant lacks knowledge sufficient to admit or deny the allegations in paragraph 138, and therefore denies the same.

139. Plaintiff never intended to sell his Personal and Financial Information, nor would he have permitted it to be made available for sale on the resale market.

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the allegations in paragraph 139, and therefore denies the same.

140. Plaintiff never intended to let Guardian benefit from his Personal and Financial Information.

**ANSWER:** Defendant denies that Guardian benefited from Plaintiff's PII or PFI. Defendant lacks knowledge sufficient to admit or deny the remaining allegations in paragraph 140, and therefore denies the same.

141. Through the systematic data sharing process described in this complaint, Plaintiff's interactions with Guardian's Website were disclosed to Third Parties, including Facebook and Google. Plaintiff did not consent to those disclosures.

**ANSWER:** Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 141.

142. On information and belief, through its use of Third Party trackers on its Website, Defendant disclosed to Third Parties information Plaintiff provided to Guardian as a financial institution and resulting from a transaction for Plaintiff to obtain Defendant's credit card as well as information collected via Plaintiff's use of Guardian's online banking portal, including Plaintiff's:

      a.     Credit card application information;

b.      Existing membership, or Customer status;

c.      Purpose for applying for a credit card;

d.      The specific credit card Plaintiff applied for;

e.      Whether Plaintiff agreed with the disclosures;

f.      Co-applicant information;

g.      Election to remember his online banking portal login information;

h.      IP address;

i.      Browser fingerprint; and

j.      Individual user cookies.

**ANSWER:**    Defendant admits that certain anonymous information is shared with third parties via the pixel tracking technology, but denies that PII, PFI, and customer identities are tracked or disclosed. Defendant denies the remaining allegations in paragraph 142.

143.    By failing to receive the requisite consent, Guardian breached confidentiality and unlawfully disclosed Plaintiff's Personal and Financial Information.

**ANSWER:**    Denied.

144.    Plaintiff would not have submitted his information to Guardian if he had known it would be shared with Third Parties and fourth parties.

**ANSWER:**    Defendant denies that Guardian shared his personal information with third or fourth parties. Defendant lacks knowledge sufficient to admit or deny the remaining allegations in paragraph 144, and therefore denies the same.

145.    As a result of Guardian's Disclosure of Plaintiff's Personal and Financial Information via the Google trackers and other tracking technologies to Third Parties (and fourth parties) without authorization, Plaintiff suffered the following injuries:

a.  Loss of privacy; unauthorized disclosure of his Personal and Financial Information; unauthorized access of his Personal and Financial Information by Third Parties;

55

b. Guardian benefited from the use of Plaintiff's Personal and Financial Information without sharing that benefit with Plaintiff;

c. Plaintiff now receives targeted advertisements from Third and Fourth Parties on social media, reflecting his Personal and Financial Information that was improperly disclosed and used;

d. Plaintiff paid Guardian for financial services, and the services he paid for included reasonable privacy and data security protections for his Personal and Financial Information, but due to Defendant's Disclosure, Plaintiff did not receive the privacy and security protections for which he paid;

e. The portion of Guardian's revenues and profits attributable to collecting Plaintiff's Personal and Financial Information without authorization and sharing it with Third Parties (and fourth parties);

f. The portion of Guardian's savings in marketing costs attributable to collecting Plaintiff's Personal and Financial Information without authorization and sharing it with Third Parties (and fourth parties);

g. The portion of Guardian's revenues and profits attributable to serving and monetizing advertisements directed to Plaintiff as a result of collecting Plaintiff's Personal and Financial Information without authorization and sharing it with Third Parties (and fourth parties);

h. Value to Plaintiff of surrendering his choice to keep his Personal and Financial Information private and allowing Guardian to track his data;

i. Embarrassment, humiliation, frustration, and emotional distress;

j. Decreased value of Plaintiff's Personal and Financial Information;

LEGAL\115310660\1

      k.  Lost benefit of the bargain;

      l.  Increased risk of future harm resulting from future use and disclosure of his

          Personal and Financial Information; and

      m.  Statutory damages.

**ANSWER:**    Denied, including subparts a. through m.

**TOLLING, CONCEALMENT, AND ESTOPPEL**

146.    The applicable statutes of limitation have been tolled as a result of Guardian's knowing and active concealment and denial of the facts alleged herein.

**ANSWER:**    Denied.

147.    Guardian seamlessly incorporated trackers into its Website while providing Customers using those platforms with no indication that its Website usage was being tracked and transmitted to Third Parties. Guardian knew that its Website incorporated trackers, yet it failed to disclose to Plaintiff and Class Members that their sensitive Personal and Financial Information would be intercepted, collected, used by, and disclosed to Third Parties.

**ANSWER:**    Denied.

148.    Plaintiff and Class Members could not with due diligence have discovered the full scope of Guardian's conduct, because there were no disclosures or other indication that they were interacting with websites employing tracking technology to unauthorizedly disclose their Personal and Financial Information.

**ANSWER:**    Denied.

149.    All applicable statutes of limitation have also been tolled by operation of the discovery rule and the doctrine of continuing tort. Guardian's illegal interception and disclosure of Plaintiff's and the Class's Personal and Financial Information has continued unabated. What is more, Guardian was under a duty to disclose the nature and significance of its data collection

57

practices but did not do so. Guardian is therefore estopped from relying on any statute of limitations defenses.

**ANSWER:** Denied.

## CLASS ACTION ALLEGATIONS

150. Plaintiff brings this nationwide class action on behalf of himself and on behalf of all other similarly situated persons pursuant to Fed. R. Civ. P. 23.

**ANSWER:** Defendant admits that Plaintiff filed this lawsuit as a nationwide class action. Defendant denies that Plaintiff is entitled to any of the relief sought herein. Defendant denies the remaining allegations in paragraph 150.

151. Plaintiff seeks to represent the following classes:

**Nationwide Class**: All individuals in the United States whose Personal and Financial Information was disclosed by Defendant to Third Parties through Defendant's Website's tracking technology without authorization.

**Wisconsin Subclass**: All individuals in Wisconsin whose Personal and Financial Information was disclosed by Defendant to Third Parties through Defendant's Website's tracking technology without authorization.

**ANSWER:** Defendant admits that Plaintiff seeks to represent the stated class, but denies that any class should be certified. Defendant denies that the stated classes are appropriately tailored. Defendant denies the remaining allegations in paragraph 151.

152. Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

**ANSWER:** Defendant admits that Plaintiff seeks to represent the stated class, but denies that any class should be certified. Defendant denies the remaining allegations in paragraph 152.

153. Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

58

**ANSWER:** Defendant admits that Plaintiff alleges that he reserves the right to modify or amend the class definition. Defendant denies the remaining allegations in paragraph 153.

154. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23(a)(1)-(4).

**ANSWER:** Paragraph 154 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied

155. <u>Numerosity</u>: Class Members are so numerous and geographically dispersed that joinder of all members is impracticable. Upon information and belief, there likely thousands of individuals throughout the United States whose Personal and Financial Information has been improperly used or disclosed by Defendant, and the Classes are identifiable within Defendant's records.

**ANSWER:** Paragraph 155 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

156. <u>Ascertainability</u>. Class Members are readily identifiable from information in Defendant's possession, custody, and control.

**ANSWER:** Paragraph 156 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

157. <u>Commonality and Predominance</u>: Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

    a. Whether Defendant disclosed Class Members' Personal and Financial Information to Third Parties;

    b. Whether Class Members consented to Defendant's disclosure of their Personal and Financial Information;

    c. Whether Defendant owed duties to Plaintiff and Class Members to protect their Personal and Financial Information;

59

d.    Whether Defendant breached its duty to protect Plaintiff's and Class Members' Personal and Financial Information;

e.    Whether Defendant's disclosure of Plaintiff's and Class Members' Personal and Financial Information to Third Parties violated federal, state and local laws, or industry standards;

f.    Whether Defendant's failure to allow Customers a meaningful opportunity to opt out of sharing with Third Parties violated federal, state and local laws, or industry standards;

g.    Whether Defendant's conduct resulted in or was the actual cause of the disclosure of Plaintiff's and Class Members' and Personal and Financial Information;

h.    Whether Defendant's conduct resulted in or was the proximate cause of the disclosure of Plaintiff's and Class Members' Personal and Financial Information;

i.    Whether Defendant has a contractual obligation to protect Plaintiff's and Class Members' Personal and Financial Information and whether it complied with such contractual obligation;

j.    Whether Defendant has a statutory and/or common law duty to protect Plaintiff's and Class Members' Personal and Financial Information and whether it complied with such obligation;

k.    Whether Defendant's conduct amounted to violations of state consumer protection statutes;

l.    Whether Defendant's conduct amounted to violations of state and federal wiretap statutes;

m.    Whether Defendant's conduct amounted to violations of other Wisconsin state laws;

n.    Whether Defendant should retain Plaintiff's and Class Members' valuable Personal and Financial Information; and

o.    Whether, as a result of Defendant's conduct, Plaintiff and Class Members are entitled to injunctive, equitable, declaratory and/or other relief, and, if so, the nature of such relief.

**ANSWER:**    Paragraph 157 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

158.    Defendant has engaged in a common course of conduct toward Plaintiff and the

Class Members, in that the Plaintiff's and Class Members' data was stored on the same computer

system and unlawfully disclosed and accessed in the same way. As set forth above, the common issues arising from Defendant's conduct affecting Class Members predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

**ANSWER:** Denied.

159. Typicality: Plaintiff's claims are typical of those of other Class Members because all had their Personal and Financial Information compromised as a result of Defendant's use and incorporation of Google trackers and other tracking technology.

**ANSWER:** Paragraph 159 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

160. Policies Generally Applicable to the Classes: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

**ANSWER:** Paragraph 160 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

161. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages Plaintiff has suffered is typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

LEGAL\115310660\1

**ANSWER:** Paragraph 161 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

162. <u>Superiority and Manageability</u>: Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

**ANSWER:** Paragraph 162 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

163. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged. If the class action device were not used, Defendant would necessarily gain an unconscionable advantage because it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources. Moreover, the costs of individual suits could unreasonably consume the amounts that would be recovered, whereas proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged. Finally, individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

62

**ANSWER:** Denied.

164. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

**ANSWER:** Denied.

165. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

**ANSWER:** Denied.

166. Unless a Class-wide injunction is issued, Defendant may continue in its unlawful use and disclosure and failure to properly secure the Personal and Financial Information of Plaintiff and the Class Members, Defendant may continue to refuse to provide proper notification to and obtain proper consent from Class Member, and Defendant may continue to act unlawfully as set forth in this Complaint.

**ANSWER:** Denied.

167. Moreover, Defendant has acted or refused to act on grounds generally applicable to the Classes, and, accordingly, final injunctive or corresponding declaratory relief regarding the whole of the Classes is appropriate.

**ANSWER:** Denied.

168. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to the following:

a. Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Personal and Financial Information;

b. Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Personal and Financial Information;

c. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to the disclosure of customer information;

d. Whether Defendant was negligent and/or negligent *per se*;

e. Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that contract;

f. Whether Defendant breached the contract;

g. In the alternate, whether Defendant was unjustly enriched;

h. Whether a bailment existed between Defendant on the one hand, and Plaintiff and Class Members on the other;

i. Whether Defendant breached its bailment duty;

j. Whether Defendant adequately and accurately informed Plaintiff and Class Members that their Personal and Financial Information had been used and disclosed to Third Parties and used for Third Party and fourth party benefit;

k. Whether Defendant adequately provided opt-out measures;

64

l. Whether Defendant abided by Plaintiff's and Class Members' opt-out requests;

m. Whether Defendant failed to implement and maintain reasonable security procedures and practices;

n. Whether Defendant invaded Plaintiff and the Class Members' privacy;

o. Whether Defendant breached its implied duty of confidentiality; and,

p. Whether Plaintiff and the Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

**ANSWER:** Paragraph 168 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Classes)**

169. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

**ANSWER:** Defendant reasserts and incorporates the above answers as if fully set forth herein.

170. Plaintiff and Class Members submitted sensitive nonpublic personal information, including Personal and Financial Information, when accessing Guardian's Website.

**ANSWER:** Defendant admits that customers may in certain circumstance provide Guardian with PII and/or PII. Defendant denies the remaining allegations in paragraph 170.

171. Defendant owed to Plaintiff and Class Members a duty to exercise reasonable care in handling and using Plaintiff's and Class Members' Personal and Financial Information in its care and custody, including implementing industry-standard privacy procedures sufficient to reasonably protect the information from the disclosure and unauthorized transmittal and use of Personal and Financial Information that occurred.

65

**ANSWER:** Paragraph 171 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

172. Defendant's duties to keep the nonpublic personal information, including Personal and Financial Information, confidential also arose under the GLBA, which imposes "an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a).

**ANSWER:** Paragraph 172 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

173. Defendant's duties to keep the nonpublic personal information, including Personal and Financial Information, confidential also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including the unfair practice of failing to keep the nonpublic personal information confidential.

**ANSWER:** Paragraph 173 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

174. Defendant acted with wanton and reckless disregard for the privacy and confidentiality of Plaintiff's and Class Members' Personal and Financial Information by disclosing and providing access to this information to the Third Parties for the financial benefit of the Third Parties (and fourth parties) and Defendant.

**ANSWER:** Denied.

175. Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's disclosure of their Personal and Financial Information to benefit Third Parties (and fourth parties) and Defendant.

Defendant actively sought and obtained Plaintiff's and Class Members' Personal and Financial Information. And Defendant knew or should have known that by integrating tracking technology on its Website that Plaintiff's and Class Members' nonpublic personal information, including Personal and Financial Information, would be disclosed to the Third Parties (and used by the fourth parties).

**ANSWER:** Denied.

176. Personal and Financial Information is highly valuable, and Defendant knew, or should have known, the harm that would be inflicted on Plaintiff and Class Members by disclosing their Personal and Financial Information to the Third Parties. This disclosure was of benefit to the Third Parties (and fourth parties) and Defendant by way of data harvesting, advertising, and increased sales.

**ANSWER:** Denied.

177. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers in the handling and securing of Personal and Financial Information of Plaintiff and Class Members. This failure actually and proximately caused Plaintiff's and Class Members' injuries.

**ANSWER:** Denied.

178. As a direct, proximate, and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class Members have suffered or imminently will suffer injury and damages, including monetary damages, inappropriate advertisements and use of their Personal and Financial Information for advertising purposes, and increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

**ANSWER:** Denied.

179. Defendant's breach of its common-law duties to exercise reasonable care and negligence, directly and proximately caused Plaintiff's and Class Members' actual, tangible, injury-in-fact and damages, including, without limitation: the unauthorized access of their Personal and Financial Information by Third Parties (and fourth parties); improper disclosure of their Personal and Financial Information; receipt of targeted advertisements reflecting private financial information; lost benefit of their bargain; lost value of their Personal and Financial Information and diminution in value; embarrassment, humiliation, frustration, and emotional distress; lost time and money incurred to mitigate and remediate the effects of use of their information, as to targeted advertisements that resulted from and were caused by Defendant's negligence; value to Plaintiff and the Class Members of surrendering their choices to keep their Personal and Financial Information private and allowing Defendant to track their data; increased risk of future harm resulting from future use and disclosure of Plaintiff's and the Class Members' Personal and Financial Information; and other injuries and damages as set forth herein. These injuries are ongoing, imminent, immediate, and continuing.

**ANSWER:** Denied.

180. Defendant's negligence directly and proximately caused the unauthorized access and Disclosure of Plaintiff's and Class Members' Personal and Financial Information, and as a result, Plaintiff and Class Members have suffered and will continue to suffer damages as a result of Defendant's conduct. Plaintiff and Class Members seek actual and compensatory damages, and all other relief they may be entitled to as a proximate result of Defendant's negligence.

**ANSWER:** Denied.

181. Plaintiff and Class Members seek to recover the value of the unauthorized access to their Personal and Financial Information resulting from Defendant's wrongful conduct. This measure of damages is analogous to the remedies for unauthorized use of intellectual property.

68

LEGAL\115310660\1

Like a technology covered by a trade secret or patent, use or access to a person's personal information is non-rivalrous—the unauthorized use by another does not diminish the rights-holder's ability to practice the patented invention or use the trade-secret protected technology. Nevertheless, a Plaintiff may generally recover the reasonable use value of the intellectual property—i.e., a "reasonable royalty" from an infringer. This is true even though the infringer's use did not interfere with the owner's own use (as in the case of a non-practicing patentee) and even though the owner would not have otherwise licensed such intellectual property to the infringer. A similar royalty or license measure of damages is appropriate here under common law damages principles authorizing recovery of rental or use value. This measure is appropriate because (a) Plaintiff and Class Members have a protectible property interest in their Personal and Financial Information; (b) the minimum damages measure for the unauthorized use of personal property is its rental value; and (c) rental value is established with reference to market value, i.e., evidence regarding the value of similar transactions

**ANSWER:** Denied.

182. Plaintiff and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendant's actions, directed at injuring Plaintiff and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendant from engaging in such conduct in the future.

**ANSWER:** Denied.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Classes)**

183-194. Dismissed pursuant to Court Order.

LEGAL\115310660\1

**COUNT III**
**INVASION OF PRIVACY – DISCLOSURE OF PRIVATE FACTS WIS. STAT. 995.50**
**(On Behalf of Plaintiff and the Wisconsin Subclass)**

195-209.    Dismissed pursuant to Court Order.

**COUNT IV**
**CONVERSION**
**(On Behalf of Plaintiff and the Classes)**

210-218.    Dismissed pursuant to Court Order.

**COUNT V**
**TRESPASS TO CHATTEL**
**(On Behalf of Plaintiff and the Classes)**

219-227.    Dismissed pursuant to Cout Order.

**COUNT VI**
**BREACH OF EXPRESS CONTRACT**
**(On Behalf of Plaintiff and the Classes)**

228.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

**ANSWER:**    Defendant reasserts and incorporates the above answers as if fully set forth herein.

229.    Plaintiff and Class Members also entered into an express contract with Guardian when he obtained financial services from Guardian, or otherwise provided nonpublic personal information, including Personal and Financial Information, to Guardian.

**ANSWER:**    Paragraph 229 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

230.    As part of these transactions, Guardian explicitly agreed to safeguard and protect Plaintiff's and Class Members' Personal and Financial Information.

**ANSWER:**    Defendant states that its written policies are written documents that speak for themselves, and Defendant denies the allegations in paragraph 230 to the extent they are inconsistent with or are an improper characterization of those documents. Defendant denies the remaining allegations in paragraph 230.

70

231. Plaintiff and Class Members entered into express contracts with the reasonable expectation (based on Guardian's own express promises) that Guardian would keep their nonpublic personal information, including Personal and Financial Information, confidential. Plaintiff and Class Members believed that Guardian would use part of the monies paid to Guardian under the express contracts to keep their nonpublic personal information, including Personal and Financial Information, confidential.

**ANSWER:** Paragraph 229 seeks a legal conclusion as to whether Plaintiff and the Class Members entered into express contracts to which no answer is required. To the extent an answer is deemed required, denied. Further answering, Defendant lacks knowledge sufficient to admit or deny the remaining allegations in paragraph 231, and therefore denies the same.

232. Plaintiff and Class Members would not have provided and entrusted their nonpublic personal information, including Personal and Financial Information, would not have used Guardian's financial services, and/or would have paid less for Guardian's services in the absence of the express contract terms between them and Guardian.

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the remaining allegations in paragraph 232, and therefore denies the same.

233. As detailed above, Guardian breached its express contracts with Plaintiff and Class Members to protect their nonpublic personal information, including Personal and Financial Information, when it disclosed that information to Third Parties.

**ANSWER:** Denied.

234. As a direct and proximate result of Guardian's breach of express contract, Plaintiff and Class Members sustained actual losses and damages as described in detail above.

**ANSWER:** Denied.

71

**COUNT VII**
**BREACH OF IMPLIED CONTRACT**
**(IN THE ALTERNATIVE TO EXPRESS CONTRACT CLAIM)**
**(On Behalf of Plaintiff and the Classes)**

235. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

**ANSWER:** Defendant reasserts and incorporates the above answers as if fully set forth herein.

236. Plaintiff pleads this claim separately as well as in the alternative to his claim for breach of express contract and only if the parties' express contract is deemed unconscionable or otherwise unenforceable for any reason. Plaintiff makes the following allegations in this count only hypothetically and as an alternative to any contrary allegations in his other causes of action, in the event that such causes of action do not succeed.

**ANSWER:** Defendant admits that Plaintiff pleads Count VII in the alternative. Defendant denies the remaining allegations in paragraph 236.

237. Plaintiff and Class Members were required to provide their Personal and Financial Information to Guardian as a condition of their application and/or receipt of financial services.

**ANSWER:** Defendant admits that in certain circumstances, customers provide Defendant with PII and/or PFI. Defendant admits that Plaintiff provided Defendant with PII and PFI in connection with his credit card application. Defendant denies the remaining allegations in paragraph 237.

238. Plaintiff and Class Members also entered into an implied contract with Guardian when they obtained financial services from Guardian, or otherwise provided nonpublic personal information, including Personal and Financial Information, to Guardian.

**ANSWER:** Paragraph 238 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

239. Implicit in the agreement between Guardian and Plaintiff and the Class was the obligation that both parties would maintain the confidentiality and security of Plaintiff's and Class Members' Personal and Financial Information.

72

**ANSWER:** Paragraph 239 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

240. Plaintiff and Class Members, through their course of conduct, mutually agreed and entered into implied contracts with the reasonable expectation (based on Guardian's own express and implied policy representations) that Guardian would keep their nonpublic personal information, including Personal and Financial Information, confidential. Plaintiff and Class Members believed that Guardian would use part of the monies paid to Guardian under the implied contracts to keep their nonpublic personal information, including Personal and Financial Information, confidential.

**ANSWER:** Paragraph 240 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

241. Guardian had an implied duty of good faith to ensure that the Personal and Financial Information of Plaintiff and Class Members in its possession was only used and shared only as authorized, such as the application for or provision of financial services.

**ANSWER:** Paragraph 241 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

242. Plaintiff and Class Members would not have provided and entrusted their nonpublic personal information, including Personal and Financial Information, would not have used Guardian's financial services, and/or would have paid less for Guardian's services in the absence of the implied contract and implied terms between them and Guardian. The safeguarding of the nonpublic personal information, including Personal and Financial Information, of Plaintiff and Class Members was critical to realize the intent of the parties.

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the remaining allegations in paragraph 242, and therefore denies the same.

243. Guardian had an implied duty to reasonably safeguard and protect the Personal and Financial Information of Plaintiff and Class members from unauthorized disclosure or uses.

73

**ANSWER:** Paragraph 243 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

244. Additionally, Guardian implicitly promised to retain this Personal and Financial Information only under conditions that kept such information secure and confidential.

**ANSWER:** Paragraph 244 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

245. As detailed above, Guardian breached its implied contracts with Plaintiff and Class Members to protect their nonpublic personal information, including Personal and Financial Information, when it disclosed that information to Third Parties.

**ANSWER:** Denied.

246. Guardian's acts and omissions have materially affected the intended purpose of the implied contacts requiring Plaintiff and Class members to provide their Personal and Financial Information in exchange for financial services.

**ANSWER:** Paragraph 246 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

247. As a direct and proximate result of Guardian's breach of implied contract, Plaintiff and Class Members sustained actual losses and damages as described in detail above.

**ANSWER:** Denied.

**COUNT VIII**
**UNJUST ENRICHMENT**
**(IN THE ALTERNATIVE TO CONTRACT CLAIMS)**
**(On Behalf of Plaintiff and the Classes)**

248. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

**ANSWER:** Defendant reasserts and incorporates the above answers as if fully set forth herein.

74

249. Plaintiff and Class Members have an equitable, legal, and financial interest in their Personal and Financial Information that was conferred upon, collected by, and maintained by Defendant and that was ultimately disclosed without their consent.

**ANSWER:** Denied.

250. Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of valuable, sensitive, personal, and financial information—Personal and Financial Information—that Defendant collected from Plaintiff and Class Members under the guise of keeping this information private. Defendant collected, used, and disclosed this information for its own gain, for marketing purposes, and for sale or trade with Third Parties. Defendant did not share this benefit with Plaintiff and Class Members.

**ANSWER:** Denied.

251. Plaintiff and Class Members would not have used Defendant's services, or would have paid less for those services, if they had known that Defendant would collect, use, and disclose their Personal and Financial Information to Third Parties or allow Third Parties (and fourth parties) to use their Personal and Financial Information.

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the remaining allegations in paragraph 251, and therefore denies the same.

252. Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and Class Members.

**ANSWER:** Denied.

253. The benefits that Defendant derived from Plaintiff and Class Members rightly belong to Plaintiff and Class Members themselves. Under unjust enrichment principles, it would be inequitable for Defendant to retain the profit and/or other benefits it derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

**ANSWER:** Denied.

254. Defendant continues to benefit and profit from its retention and use of Plaintiff's and Class Members' Personal and Financial Information, while its value to Plaintiff and Class Members has been diminished.

**ANSWER:** Denied.

255. Plaintiff pleads this claim separately as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiff's claims for damages or enters judgment on them in favor of the Defendant, Plaintiff's will have no adequate legal remedy. Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in his other causes of action, in the event that such causes of action do not succeed. Plaintiff and the Class Members may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action, and, if so, will lack an adequate remedy at law.

**ANSWER:** Defendant admits that Plaintiff pleads this claim in the alternative. Defendant denies the remaining allegations in paragraph 255.

256. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds it received as a result of the conduct and the unauthorized Disclosure alleged herein.

**ANSWER:** Denied.

**COUNT IX**
**BAILMENT**
**(On Behalf of Plaintiff and the Classes)**

257-263. Dismissed pursuant to Court Order.

**COUNT X**
**VIOLATION OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT,**
**WIS. STAT. § 100.18(1)**
**(On Behalf of Plaintiff and the Wisconsin Subclass)**

76

264. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

**ANSWER:** Defendant re-asserts and incorporates the above answers as if fully set forth herein.

265. The DTPA provides, in pertinent part:

No person, firm, corporation or association, or agent or employee thereof ... with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any ... merchandise ... shall make ... an advertisement, announcement, statement or representation of any kind to the public ... which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

Wis. Stat. § 100.18(1).

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 265 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 265.

266. By representing that it would protect its Customers' Personal and Financial Information, Defendant made statements and representations that were untrue, deceptive, and/or misleading, as Defendant did not protect its Customers' Personal and Financial Information, and instead Disclosed it to Third Parties like Google. Defendant's deceptive acts include but are not limited to:

      a. Encouraging patients to use Guardian's Website while failing to disclose the material fact that it discloses patients' Personal and Financial Information to Third Parties (and fourth parties), without authorization or permission. information relating to Plaintiff's and Class Members' financial services, without their knowledge, consent, or authorization, as part of a scheme, artifice or device with the intent to mislead patients.

LEGAL\115310660\1

b.  Encouraging patients to use Guardian's Website while omitting the material fact that it uses patients' Personal and Financial Information, without their authorization for marketing purposes and to increase its revenue.

c.  Marketing itself as a trusted financial services provider while failing to adhere to data privacy standards that govern financial services providers, including federal law and regulations, industry standards, and the fiduciary duties that apply to financial services providers.

d.  By installing and implementing trackers from Third Parties, Defendant knew or reasonably should have known it intercepted and transmitted Plaintiff's and Class Member's communications from Plaintiff's and Class Members' browsers directly to the Third Party creators of those trackers.

**ANSWER:**   Denied, including subparts a. through d.

267.   Guardian's violations were willful and were done as part of a scheme, artifice, or device with intent to defraud or mislead, and therefore are incurable deceptive acts under the DTPA.

**ANSWER:**   Denied.

268.   The DTPA provides a private cause of action for persons suffering a pecuniary loss as a result of a violation of the statute:

> Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees.

Wis. Stat. § 100.18(11)(b).

**ANSWER:**   Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 268 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 268.

78

269.     Had Plaintiff and members of the Wisconsin subclass been aware that their Personal and Financial Information would be transmitted to unauthorized third parties, they would not have entered into such transactions and would not have provided payment or confidential financial information to Defendant.

**ANSWER:**     Defendant lacks knowledge sufficient to admit or deny the remaining allegations in paragraph 269, and therefore denies the same.

270.     As a direct and proximate result of Defendant's unfair and deceptive acts and practices in violation of the DTPA, Plaintiff and Class Members have suffered damages for which Defendant is liable.

**ANSWER:**     Denied.

271.     Plaintiff and Class Members seek actual damages plus interest on damages at the legal rate, as well as all other just and proper relief afforded by the DTPA. As redress for Defendant's repeated and ongoing violations, Plaintiff and Class Members are entitled to, inter alia, actual damages, treble damages, attorneys' fees, and injunctive relief.

**ANSWER:**     Denied.

### COUNT XI
### VIOLATION OF THE WISCONSIN CONSUMER PROTECTION ACT, WIS. STAT. § 423.301
### (On Behalf of Plaintiff and the Wisconsin Subclass)

272.     Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

**ANSWER:**     Defendant re-asserts and incorporates the above answers as if fully set forth herein.

273.     The WCPA § 423.301 was designed to impede false, misleading, and deceptive statements relating to the extension of consumer credit. The act provides, in pertinent part:

> No merchant shall advertise, print, display, publish, distribute or broadcast or cause to be advertised, printed, displayed, published, distributed or broadcast, in any manner any

79

statement or representation with regard to the extension of consumer credit including the rates, terms or conditions for the extension of such credit, which is false, misleading, or deceptive, or which omits to state material information with respect to the extension of credit that is necessary to make the statements therein not false, misleading or deceptive.

Wis. Stat. § 423.301.

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 273 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 273.

274. By representing that it would protect its Customers' Personal and Financial Information, Defendant made statements and representations that were untrue, deceptive, and/or misleading, as Defendant did not protect its Customers' Personal and Financial Information, and instead Disclosed it to Third Parties like Google. Defendant made these representations with regard to the extension of consumer credit, specifically with respect to the terms or conditions for the extension of that credit. Defendant's deceptive acts include but are not limited to:

  a.  Encouraging patients to use Guardian's Website while failing to disclose the material fact that it discloses patients' Personal and Financial Information to Third Parties (and fourth parties), without authorization or permission. information relating to Plaintiff's and Class Members' financial services, without their knowledge, consent, or authorization, as part of a scheme, artifice or device with the intent to mislead patients.

  b.  Encouraging patients to use Guardian's Website while omitting the material fact that it uses patients' Personal and Financial Information, without their authorization for marketing purposes and to increase its revenue.

  c.  Marketing itself as a trusted financial services provider while failing to adhere to data privacy standards that govern financial services providers,

80

including federal law and regulations, industry standards, and the fiduciary duties that apply to financial services providers.

      d.     By installing and implementing trackers from Third Parties, Defendant knew or reasonably should have known it intercepted and transmitted Plaintiff's and Class Member's communications from Plaintiff's and Class Members' browsers directly to the Third Party creators of those trackers.

**ANSWER:**    Denied, including subparts a. through d.

275.    Guardian's violations were willful and were done as part of a scheme, artifice, or device with intent to defraud or mislead, and therefore are incurable deceptive acts under the WCPA.

**ANSWER:**    Denied.

276.    Had Plaintiff and members of the Wisconsin subclass been aware that their Personal and Financial Information would be transmitted to unauthorized third parties, they would not have entered into such transactions and would not have provided payment or confidential financial information to Defendant.

**ANSWER:**    Defendant lacks knowledge sufficient to admit or deny the remaining allegations in paragraph 276, and therefore denies the same.

277.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices in violation of the WCPA, Plaintiff and Class Members have suffered damages for which Defendant is liable.

**ANSWER:**    Denied.

278.    Plaintiff and Class Members seek actual damages plus interest on damages at the legal rate, as well as all other just and proper relief afforded by the WCPA. As redress for

LEGAL\115310660\1

Defendant's repeated and ongoing violations, Plaintiff and Class Members are entitled to, inter alia, actual damages, treble damages, attorneys' fees, and injunctive relief.

**ANSWER:** Denied.

**COUNT XII**
**VIOLATION OF WISCONSIN'S ELECTRONIC SURVEILLANCE CONTROL LAW,**
**WIS. STAT. § 968.27, *ET SEQ.***
**(On Behalf of Plaintiff and the Wisconsin Subclass)**

279. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

**ANSWER:** Defendant re-asserts and incorporates the above answers as if fully set forth herein.

280. Under Wisconsin's Electronic Surveillance Control Law ("ESCL"):

whoever commits any of the acts enumerated in this section is guilty of a Class H felony:

(a) Intentionally intercepts, attempts to intercept or procures any other person to intercept or attempt to intercept, any wire, electronic or oral communication.

(b) Intentionally uses, attempts to use or procures any other person to use or attempt to use any electronic, mechanical or other device to intercept any oral communication.

(c) Discloses, or attempts to disclose, to any other person the contents of any wire, electronic or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication in violation of this section or under circumstances constituting violation of this section.

(d) Uses, or attempts to use, the contents of any wire, electronic or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication in violation of this section or under circumstances constituting violation of this section.

(e) Intentionally discloses the contents of any oral, electronic or wire communication obtained by authority of ss. 968.28, 968.29 and 968.30, except as therein provided.

82

> (f) Intentionally alters any wire, electronic or oral communication intercepted on tape, wire or other device.

Wis. Stat. Ann. § 968.31.

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 280 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 280.

281. For purposes of the ESCL, "'Electronic communication' means any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature wholly or partially transmitted by a wire, radio, electromagnetic, photoelectronic or photooptical system." Wis. Stat. Ann. § 968.27 (4).

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 281 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 281.

282. "'Electronic, mechanical or other device' means any device or apparatus which can be used to intercept a wire, electronic or oral communication." Wis. Stat. Ann. § 968.27(7).

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 282 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 282.

283. "'Intercept' means the aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." Wis. Stat. Ann. § 968.27(9).

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 283 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 283.

284. "It is not unlawful … For a person not acting under color of law to intercept a wire, electronic or oral communication where the person is a party to the communication or

LEGAL\115310660\1

where one of the parties to the communication has given prior consent to the interception **unless the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the constitution or laws of the United States or of any state or for the purpose of committing any other injurious act**." Wis. Stat. Ann. § 968.31(2)(c) (emphasis added)

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 284 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 284.

285. Defendant intentionally recorded and/or acquired Plaintiff's and Class Members' private electronic communications, without the consent of Plaintiff and Class Members, using Google Trackers and similar tracking technologies on its Website.

**ANSWER:** Denied.

286. Defendant intentionally recorded and/or acquired Plaintiff's and Class Members' private electronic communications for the purpose of disclosing those communications to Third Parties (and Fourth Parties), including Google, without the knowledge, consent, or written authorization of Plaintiff or Class Members.

**ANSWER:** Denied.

287. Plaintiff's and Class Members' communications with Defendant constitute private conversations, communications, and information.

**ANSWER:** Denied.

288. Plaintiff and Class Members had a reasonable expectation of privacy in their communications with Defendant via its Website.

**ANSWER:** Paragraph 288 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

289. Plaintiff and Class Members communicated sensitive Personal and Financial Information that they intended for only Defendant to receive and that they understood Defendant would keep private.

**ANSWER:** Defendant admits that in certain circumstances, customers provide Defendant with PII and/or PFI. Defendant admits that Plaintiff provided Defendant with PII and PFI in connection with his credit card application. Defendant lacks knowledge sufficient to admit or deny the remaining allegations in paragraph 289, and therefore denies the same.

290. Plaintiff and Class Members have a reasonable expectation that Defendant would not disclose Personal and Financial Information and confidential communications to Third Parties (and Fourth Parties) without Plaintiff's or Class Members' authorization, consent, or knowledge.

**ANSWER:** Paragraph 290 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

291. Plaintiff and Class Members had a reasonable expectation of privacy given Defendant's representations, Privacy Policies, and state and federal law. Moreover, Plaintiff and Class Members have a general expectation that their communications regarding financial services with their financial services providers will be kept confidential.

**ANSWER:** Paragraph 291 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

292. Plaintiff and Class Members were unaware that their Personal and Financial Information was being surreptitiously recorded and transmitted to third parties as they communicated with Defendant through its Online Platforms.

**ANSWER:** Defendant denies that any PII or PFI was surreptitiously recorded or transmitted. Defendant lacks knowledge sufficient to admit or deny the remaining allegations in paragraph 292, and therefore denies the same.

293. Without Plaintiff's or Class Members' knowledge, authorization, or consent, Defendant used the Google tracker imbedded and concealed into the source code of its Website

to secretly record and transmit Plaintiff's and Class Members' private communications to hidden Third Parties, such as Google, as described in the preceding paragraphs.

**ANSWER:** Denied.

294. Defendant's Disclosure of Plaintiff's and Class Members' Personal and Financial Information was for the purpose of committing a criminal or tortious act in violation of a variety of laws, as set forth throughout this complaint.

**ANSWER:** Denied.

295. Under the ESCL:

> Any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of ss. 968.28 to 968.37 shall have a civil cause of action against any person who intercepts, discloses or uses, or procures any other person to intercept, disclose, or use, the communication, and shall be entitled to recover from any such person:
>
> (a) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;
>
> (b) Punitive damages; and
>
> (c) A reasonable attorney's fee and other litigation costs reasonably incurred

Wis. Stat. Ann. § 968.31(2m).

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 295 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 295.

296. The eavesdropping devices used in this case include, but are not limited to:

> a. Plaintiff's and Class Members' personal computing devices;
>
> b. Plaintiff's and Class Members' web browsers;
>
> c. Plaintiff's and Class Members' browser-managed files;
>
> d. Google's trackers;

e. Internet cookies;

f. Other tracking technology including LinkedIn, Qualtrics, and Adnxs;

g. Defendant's computing servers;

h. Third-party source code utilized by Defendant; and

i. Computer servers of third-parties (including Google) to which Plaintiff's and Class Members' communications were disclosed.

**ANSWER:** Denied.

297. Defendant aided in the interception of communications between Plaintiff and Class Members and Defendant that were redirected to and recorded by third parties without Plaintiff's or Class Members' consent.

**ANSWER:** Denied.

298. Under the ESCL, Plaintiff and the Class Members are entitled to injunctive relief prohibiting further eavesdropping by Defendant, actual damages, and punitive damages.

**ANSWER:** Denied.

299. Defendant's violation of the ESCL caused Plaintiff and Class Members the following damages:

a. Sensitive and confidential information that Plaintiff and Class Members intended to remain private is no longer private;

b. Defendant eroded the essential confidential nature of the relationship a Customer has with their financial institution;

c. Defendant took something of value from Plaintiff and Class Members and derived benefit therefrom without Plaintiff's and Class Members' knowledge or informed consent and without sharing the benefit of such value;

87

d.	Plaintiff and Class Members did not get the full value of the financial services for which they paid, which included Defendant's duty to maintain confidentiality; and

e.	Defendant's actions diminished the value of Plaintiff's and Class Members' Personal and Financial Information.

**ANSWER:**	Denied, including subparts a. through e.

300.	Plaintiff and Class Members also seek such other relief as the Court may deem equitable, legal, and proper.

**ANSWER:**	Defendant admits that Plaintiff seeks other relief, but denies that Plaintiff or the putative class is entitled to any relief.

**COUNT XIII**
**VIOLATION OF WISCONSIN'S ELECTRONIC SURVEILLANCE CONTROL LAW, WIS. STAT. § 968.34, ET SEQ.**
**(On Behalf of Plaintiff and the Wisconsin Subclass)**

301-310.	Dismissed pursuant to Court Order.

**COUNT XIV**
**VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT 18 U.S.C. §§ 2511(1), ET SEQ.**
**(On Behalf of Plaintiff and the Classes)**

311.	Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

**ANSWER:**	Defendant re-asserts and incorporates the above answers as if fully set forth herein.

312.	The ECPA protects both sending and receipt of communications. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

**ANSWER:**	Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 312 to the extent they are inconsistent

88

with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 312.

313. The transmissions of Plaintiff's and Class Members' Personal and Financial Information to Defendant's Website qualifies as a "communication" under the ECPA's definition of 18 U.S.C. § 2510(12).

**ANSWER:** Paragraph 313 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

314. **Electronic Communications**. The transmission of Personal and Financial Information between Plaintiff and Class Members and Defendant's Website with which they chose to exchange communications are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo optical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

**ANSWER:** Paragraph 314 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

315. **Content**. The ECPA defines content, when used with respect to electronic communications, to "include [] any information concerning the substance, purport, or meaning of that communication." *See* 18 U.S.C. § 2510(8).

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 315 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 315.

316. **Interception**. The ECPA defines the interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device" and "contents…include any information concerning the substance, purport, or meaning of that communication." See 18 U.S.C. § 2510(4), (8).

LEGAL\115310660\1

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 316 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 316.

317. **Electronic, Mechanical or Other Device**. The ECPA defines "electronic, mechanical, or other device" as "any device…which can be used to intercept a[n]…electronic communication[.]" 18 U.S.C. § 2510(5). The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

    a.    Plaintiff's and Class Members' browsers;

    b.    Plaintiff's and Class Members' computing devices;

    c.    Defendant's web-servers;

    d.    Defendant's Website; and

    e.    The tracking technology deployed by Defendant effectuated the sending and acquisition of customer communications.

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 317 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 317.

318. By utilizing and embedding the tracking technology on its Website, Defendant intentionally intercepted, endeavored to intercept and procured another person to intercept the electronic communications of Plaintiff and Class Members, in violation of 18 U.S.C. § 2511(1)(a).

**ANSWER:** Denied.

319. Specifically, Defendant intercepted Plaintiff's and Class Members' electronic communications via the tracking technology which tracked, stored, and unlawfully disclosed Plaintiff's and Class Members' Personal and Financial Information to Third Parties.

**ANSWER:** Denied.

320. Defendant's intercepted communications include, but are not limited to, communications to/from Plaintiff and Class Members regarding Personal and Financial Information.

**ANSWER:** Denied.

321. By intentionally disclosing or endeavoring to disclose the electronic communications of Plaintiff and Class Members to Third Parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(c).

**ANSWER:** Denied.

322. By intentionally using, or endeavoring to use, the contents of the electronic communications of Plaintiff and Class Members, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(d).

**ANSWER:** Denied.

323. **Unauthorized Purpose.** Defendant intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State – namely, invasion of privacy, among others.

**ANSWER:** Denied.

324. Defendant intentionally used the wire or electronic communications to increase its profit margins and save on marketing costs.

**ANSWER:** Denied.

LEGAL\115310660\1

325. Defendant specifically used tracking technology to track and to utilize Plaintiff's and Class Members' Personal and Financial Information for financial gain.

**ANSWER:** Denied.

326. Defendant was not acting under color of law to intercept Plaintiff's and Class Members' wire or electronic communication.

**ANSWER:** Denied.

327. Plaintiff and Class Members did not authorize Defendant to acquire the content of their communications for purposes of invading Plaintiff's and Class Members' privacy via the tracking technology.

**ANSWER:** Denied.

328. In sending and in acquiring the content of Plaintiff's and Class Members' communications relating to the browsing of its Website, Defendant's purpose was tortious, criminal and designed to violate federal and state legal provisions, including as described above the following: (i) a knowing intrusion into a private, place, conversation or matter that would be highly offensive to a reasonable person; and (ii) violation of GLBA, the FTC Act, invading Plaintiff's and Class Members' privacy, and in breach of its fiduciary duty of confidentiality.

**ANSWER:** Denied.

**COUNT XV**
**VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT 18 U.S.C. § 2511(3)(A)**
**UNAUTHORIZED DIVULGENCE BY ELECTRONIC COMMUNICATIONS SERVICE**
**(On Behalf of Plaintiff and the Classes)**

329. Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

**ANSWER:** Defendant re-asserts and incorporates the above answers as if fully set forth herein.

330. The ECPA provides that "a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient." 18 U.S.C. § 2511(3)(a).

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 330 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 330.

331. **Electronic Communication Service**. An "electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Defendant's Website is an electronic communication service which provides to users thereof, customers of Defendant, the ability to send or receive electronic communications; in the absence of Defendant's Website, internet users could not send or receive communications regarding Plaintiff's and Class Members' Personal and Financial Information.

**ANSWER:** Paragraph 331 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

332. **Intentional Divulgence**. Defendant intentionally designed the tracking technology and was or should have been aware that, if so configured, it could divulge Plaintiff's and Class Members' Personal and Financial Information. Upon information and belief, Defendant's divulgence of the contents of Plaintiff's and Class Members' communications was contemporaneous with their exchange with Defendant's Website, to which they directed their communications.

LEGAL\115310660\1

**ANSWER:** Paragraph 332 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

333. Defendant divulged the contents of Plaintiff's and Class Members' electronic communications without authorization and/or consent.

**ANSWER:** Denied.

334. **Exceptions do not apply**. In addition to the exception for communications directly to an electronic communications service ("ECS")[60] or an agent of an ECS, the ECPA states that

> A person or entity providing electronic communication service to the public may divulge the contents of any such communication—
>
> (i) as otherwise authorized in section 2511(2)(a) or 2517 of this title;
>
> (ii) with the lawful consent of the originator or any addressee or intended recipient of such communication;
>
> (iii) to a person employed or authorized, or whose facilities are used, to forward such communication to its destination; or
>
> (iv) which were inadvertently obtained by the service provider and which appear to pertain to the commission of a crime, if such divulgence is made to a law enforcement agency.

U.S.C. § 2511(3)(b).

**ANSWER:** Paragraph 334 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

335. Section 2511(2)(a)(i) provides:

> It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication

---

[60] An ECS is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

LEGAL\115310660\1

service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

**ANSWER:** Defendant states that the statute referenced is a written document that speaks for itself, and Defendant denies the allegations in paragraph 335 to the extent they are inconsistent with or are an improper characterization of that document. Defendant denies the remaining allegations in paragraph 335.

336. Defendant's divulgence of the contents of Plaintiff's and Class Members' communications to Third Parties was not authorized by 18 U.S.C. § 2511(2)(a)(i) in that it was neither: (i) a necessary incident to the rendition of Defendant's service nor (ii) necessary to the protection of the rights or property of Defendant.

**ANSWER:** Denied.

337. Section 2517 of the ECPA relates to investigations by government officials and has no relevance here.

**ANSWER:** Paragraph 334 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

338. Defendant's divulgence of the contents of Plaintiff's and the Class Members' communications on its Website through the tracking technology was not done "with the lawful consent of the originator or any addresses or intended recipient of such communication[s]." 18 U.S.C.A. § 2511(3)(b)(ii). As alleged above: (i) Plaintiff and Class Members did not authorize Defendant to divulge the contents of their communications and (ii) Defendant did not procure the "lawful consent" from the websites or apps with which Plaintiff and Class Members were exchanging information.

**ANSWER:** Paragraph 338 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

339. Moreover, Defendant divulged the contents of Plaintiff's and Class Members' communications through tracking technology to individuals who are not "person[s] employed or whose facilities are used to forward such communication to its destination."

LEGAL\115310660\1

**ANSWER:** Paragraph 339 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, denied.

340. The contents of Plaintiff's and Class Members' communications did not appear to pertain to the commission of a crime and Defendant did not divulge the contents of their communications to a law enforcement agency.

**ANSWER:** Paragraph 340 seeks a legal conclusion to which no answer is required. To the extent an answer is deemed required, admitted.

341. As a result of the above actions and pursuant to 18 U.S.C. § 2520, the Court may assess statutory damages, preliminary and other equitable or declaratory relief as may be appropriate, punitive damages in an amount to be determined by a jury and a reasonable attorney's fee and other litigation costs reasonably incurred.

**ANSWER:** Denied.

## COUNT XVI
## VIOLATION OF TITLE II OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT ("STORED COMMUNICATIONS ACT")
## 18 U.S.C. § 2702, ET SEQ.
### (On Behalf of Plaintiff and the Classes)

342-357. Dismissed pursuant to Court Order.

## COUNT XVII
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT ("CFAA")
## 18 U.S.C. § 1030, ET SEQ.
### (On Behalf of Plaintiff and the Classes)

358-363. Dismissed pursuant to Court Order.

**WHEREFORE**, Defendant, Guardian Credit Union, respectfully prays that this Court deny any and all relief sought in the Amended Complaint, dismiss the Amended Complaint, and grant Guardian any other relief that this Court deems appropriate.

96

## AFFIRMATIVE DEFENSES

Without waiving the foregoing denials, Defendant asserts the following affirmative defenses without assuming the burden of proof on any issue that would otherwise rest with Plaintiff.

### First Affirmative Defense

The Amended Complaint and each purported cause of action alleged therein is barred in whole or in part because Guardian does not improperly collect, record, store, capture, or otherwise obtain and disclose any PII or PFI.

### Second Affirmative Defense

Plaintiff and/or the putative class members were aware of and consented to Guardian's use of tools on its website as described in its applicable privacy policies.

### Third Affirmative Defense

Plaintiff and/or putative class members' claims are barred, in whole or in part, by the economic loss doctrine.

### Fourth Affirmative Defense

Plaintiff and/or putative class members fail to state a claim of breach of express contract against Guardian upon which relief can be granted based, in part, because Plaintiff and putative class members seek to advance both a breach of express contract claim and breach of implied contract claim based upon the same subject matter.

### Fifth Affirmative Defense

Plaintiff and/or putative class members fail to state a claim of unjust enrichment against Guardian upon which relief can be granted because they reference the existence of an implied contract, thereby preventing a claim for unjust enrichment, and because unjust enrichment is not an independent cause of action that alone justifies recovery.

97

### Sixth Affirmative Defense

Plaintiff and/or putative class members fail to state a claim of violation of wiretapping statutes against Guardian upon which relief can be granted to the extent they are criminal statutes and the "rule of lenity" bars advancing a civil claim against Guardian.

### Seventh Affirmative Defense

The Amended Complaint is barred in whole or in part because Plaintiff's and/or the putative class members' claims are barred by the applicable statute(s) of limitations.

### Eighth Affirmative Defense

The claims of Plaintiff and/or any putative class member are barred, in whole or in part, by their own conduct, actions, and inactions, which amount to and constitute estoppel and/or waiver of all claims and relief sought.

### Ninth Affirmative Defense

Plaintiff and/or the putative class members failed to mitigate their alleged damages. To the extent that Plaintiff and/or the putative class members failed to mitigate their damages, any damages are barred or should be limited or reduced accordingly.

### Tenth Affirmative Defense

Certification of a class, based upon the facts and circumstances of this case, would constitute a denial of Guardian's right to due process under the Fourteenth Amendment to the United States Constitution and under Wisconsin law.

### Eleventh Affirmative Defense

To the extent that the Amended Complaint seeks putative class damages, the aggregate statutory damages, if any, may constitute excessive fines in violation of the First, Eighth and Fourteenth Amendments to the U.S. Constitution. Further, Plaintiff and/or putative class members

98

may not seek punitive damages on the face of any complaint based, even in part, on a negligence theory.

## Twelfth Affirmative Defense

The claims of Plaintiff and/or any putative class member are barred, in whole or in part, by Guardian's good faith and/or good faith legal defense and the absence of negligent, reckless, or intentional conduct.

## Thirteenth Affirmative Defense

The Amended Complaint is barred in whole or in part under the doctrine of unclean hands.

## Fourteenth Affirmative Defense

Plaintiff and/or putative class members' claims are barred, in whole or in part, under the doctrines of release and/or accord and satisfaction to the extent that Plaintiff or any putative class member has executed, or executes, an effective release.

## Fifteenth Affirmative Defense

The Amended Complaint is barred, in whole or in part, under the doctrine of comparative negligence or contributory negligence. Plaintiff and/or the putative class members were aware of and voluntarily undertook any risks associated with voluntarily utilizing Guardian's website.

## Sixteenth Affirmative Defense

The Amended Complaint is barred, in whole or in part because, through Guardian's privacy policy, cookie policy, and other website disclosures, Plaintiff and/or the putative class members consented to the disclosure of the information at issue.

## Seventeenth Affirmative Defense

Plaintiff's wiretapping claims are barred, in whole or in part, on the grounds that Plaintiff was a party to the communications at issue.

LEGAL\115310660\1

## **Reservation of Right to Amend**

Guardian reserves the right to amend their Answer, Affirmative Defenses, and/or assert additional defenses, as they may become known throughout this litigation or may become available under applicable law.

**WHEREFORE**, Defendant, Guardian Credit Union, respectfully prays that this Court deny any and all relief sought in the Amended Complaint, dismiss the Amended Complaint, and grant Guardian any other relief that this Court deems appropriate.

Respectfully submitted,

By: _/s/_     _Corey T. Hickman_
Corey T. Hickman

*One of the Attorneys for Defendant*
*Guardian Credit Union*

Amber C. Coisman (Wis. Bar. No. 1102371)
Melissa Siebert
Erin Bolan Hines
Corey T. Hickman
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
T: (312) 474-4490
F: (312) 300-5645
acoisman@cozen.com
msiebert@cozen.com
ebolanhines@cozen.com
chickman@cozen.com

100

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on May 19, 2026, I will electronically file the foregoing **Answer and Affirmative Defenses to Amended Complaint** with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

Respectfully submitted,

By: */s/      Corey T. Hickman*
Corey T. Hickman
*One of the Attorneys for Defendant*
*Guardian Credit Union*

Amber C. Coisman (Wis. Bar. No. 1102371)
Melissa Siebert
Erin Bolan Hines
Corey T. Hickman
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
T: (312) 474-4490
F: (312) 300-5645
acoisman@cozen.com
msiebert@cozen.com
ebolanhines@cozen.com
chickman@cozen.com

LEGAL\115310660\1